EXHIBIT "F"
DEBTOR'S FOURTH AMENDED PLAN OF
REORGANIZATION (AS IMMATERIALLY
MODIFIED ON FEBRUARY 20, 2017)

## ESCROW AGREEMENT

This ESCROW AGREEMENT (this "Agreement"), dated as of **August \_\_\_\_, 2016** ("Effective Date") is entered into by and between Christopher Martin Ridgeway, in his capacity as debtor, debtor-in-possession, and reorganized debtor pursuant confirmation of any bankruptcy plan ("Debtor"), Whale Capital, LP, a Texas limited partnership, as secured party ("Secured Party"), Stryker Corporation, a Michigan corporation, Howmedica Osteonics Corp., a New Jersey corporation (Stryker Corporation and Howmedica Osteonics Corp., are collectively referred to as "Stryker"), and Regions Bank, an Alabama banking corporation as escrow agent ("Escrow Agent" and collectively with Stryker, Debtor, and Secured Party the "Parties" and each a "Party").  The duly authorized representatives of the Parties are shown on **Exhibit "A"** hereto, as amended from time to time.

## RECITALS

A.     Debtor, a person of the full age of majority and a resident of and domiciled in the Parish of Jefferson, State of Louisiana, filed a voluntary petition for relief under Chapter 11, Title 11 of the United States Code in the United States Bankruptcy Court for the Eastern District of Louisiana ("Bankruptcy Court") on March 23, 2016; Case No. 16-10643 (the "Reorganization Proceedings").

B.     Debtor has filed a disclosure statement ("Disclosure Statement") and plan of reorganization ("Plan") with the Bankruptcy Court dated as of August 4, 2016, (Dkt. Nos. 135, 136) including all supplements appendices and schedules thereto, either in their present form or as any of them may be amended, restated or modified from time to time, as permitted therein, as modified and corrected or as later revised, supplemented and modified.  Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to such terms in the Plan.

C.      The Secured Party is a party in interest to the Reorganization Proceedings having provided Four Million Two Hundred Fifty Thousand and no/100 ($4,250,000.00) Dollars ("Plan Contribution") in funding to facilitate confirmation of the Plan;

D.      Debtor and Secured Party have, or will, enter into that certain Promissory Note, Assignment and Pledge, and Security Agreement (collectively the "Loan Documents") providing for the funding and securitization of the Plan Contribution.

E.      The Plan Contribution is integral to funding Debtor's Plan;

F.      The Plan contemplates the establishment of one or more escrow accounts as a mechanism to for distribution of the payments proposed under the Plan to the various classes of creditors as more particularly provided for in the Plan;

G.      This Agreement governs the terms and conditions upon which the Escrow Agent will hold and disburse the Plan Contribution.

**AGREEMENT**

NOW, THEREFORE, for good and valuable consideration, the receipt and adequacy of which are hereby acknowledged, the Parties hereto, intending to be legally bound, do hereby agree as follows:

**Section 1.    Appointment of Escrow Agent.**  Debtor, Secured Party, and Stryker hereby appoint the Escrow Agent as "escrow agent" in accordance with the terms and conditions set forth herein, and the Escrow Agent hereby accepts such appointment. Escrow Agent shall have all of the rights, powers, duties and obligations provided herein.

2

**Section 2.** **Designation of Escrow Account.** For purposes of this Agreement, Escrow Agent hereby designates the following account as the escrow account hereunder ("Ridgeway Plan Escrow Account"):

**REGIONS BANK.**

**ACCOUNT NUMBER: TBD**

**Section 3.** **Transfers into the Escrow Account.** Simultaneously with the execution and delivery of this Agreement, Secured Party will cause the Plan Contribution to be transferred to the Ridgeway Plan Escrow Account by wire transfer of immediately available funds. All such sums deposited into the Ridgeway Plan Escrow Account, whether on the Effective Date or thereafter shall be referred to as "Escrowed Proceeds." The Escrowed Proceeds shall be held by the Escrow Agent upon the terms and conditions hereinafter set forth. The Escrowed Proceeds, plus all interest, dividends and other distributions and payments thereon (collectively, the "Distributions") received by the Escrow Agent, less any funds distributed or paid in accordance with this Escrow Agreement, are collectively referred to herein as the "Escrow Property."

**Section 4.** **Treatment of Escrow Property.** During the term of this Agreement, the Escrow Property shall be held in a segregated, interest-bearing account at Regions Bank. The Escrow Agent shall have no responsibility for any investment losses resulting from the investment, reinvestment or liquidation of the Escrow Property. Any interest or other income received on such investment and reinvestment of the Escrow Property shall become part of the Escrow Property and any losses incurred on such investment and reinvestment of the Escrow Property shall be debited against the Escrow Property.

**Section 5.** **Distributions of Escrow Property.** The Escrow Agent shall hold the Escrow Property in its possession until notified in writing executed by the Parties specified herein to disburse the

Escrow Property or any specified portion thereof solely in accordance with this Section 5. Whenever this Section 5 requires disbursement, Escrow Agent shall disburse the appropriate amount of Escrow Property to the appropriate party by wire transfer of immediately available funds. Instructions regarding disbursement of any Escrow Property received after 11:00 a.m. (E.S.T.) will be treated as if received on the following Business Day. Any recipient of a transfer of Escrow Property shall be responsible for providing written wiring instructions to Escrow Agent. Escrow Agent shall disburse Escrow Property only in accordance with the following:

(a) <u>Distributions to creditors other than Stryker</u>: The Debtor and Secured Party shall serve Escrow Agent with written requests ("<u>Distribution Request</u>"), substantially in the form of **Exhibit "B,"** executed by both Debtor and Secured Party, for all proposed disbursements ("<u>Proposed Distribution</u>") of Escrow Property to creditors other than Stryker. The Escrow Agent shall not issue any Proposed Distribution unless and until: (i) the Plan is confirmed by the Bankruptcy Court pursuant to entry of a final, non-appealable order, judgment, or decree; and (ii) the Bankruptcy Court or such other court possessing jurisdiction enters one or more final, non-appealable orders, judgments, or decrees fixing the amount of such Proposed Distribution and permitting Escrow Agent to issue such Proposed Distribution. All Distribution Requests shall cite to the Plan provision authorizing such Proposed Distribution and shall cite to and attach file-stamped copies of all such other relevant final, non-appealable orders, judgments, or decrees: (I) confirming the Plan; (II) fixing the amount of such Proposed Distribution; and (III) permitting the Escrow Agent to issue such Proposed Distribution. Escrow Agent shall issue all Proposed Distributions in accordance with the terms of such orders.

(b) <u>Distributions to Stryker</u>. The Debtor, Secured Party, and Stryker shall serve Escrow Agent with written requests ("<u>Stryker Distribution Requests</u>"), substantially in the form of **Exhibit "C,"** executed by each of Debtor, Secured Party, and Stryker for all proposed disbursements

of Escrow Property to Stryker ("Stryker Distribution(s)").  The Escrow Agent shall not issue any Stryker Distribution unless and until:  (i) the Plan is confirmed by the Bankruptcy Court pursuant to entry of a final, non-appealable order, judgment, or decree; or (ii) the Bankruptcy Court or such other court possessing jurisdiction enters one or more final, non-appealable orders, judgments, or decrees fixing the amount of such Stryker Distribution and permitting Escrow Agent to issue such Stryker Distribution.  All Stryker Distribution Requests shall, as applicable:  (i) cite to the Plan provision authorizing the Stryker Distribution or to such other order of the Bankruptcy Court permitting such Stryker Distribution; (ii) cite to any other relevant order entered by the Bankruptcy Court or such other court possessing jurisdiction to adjudicate Stryker's claim which fixes the amount of such Stryker Distribution; and (iii) include file-stamped copies of such orders entered by the Bankruptcy Court or such other court.  If the Parties are unable to reach agreement regarding the terms of any Stryker Distribution Request, then any Party to this Agreement may seek entry of a Bankruptcy Court order resolving such dispute.  Escrow Agent shall issue the Stryker Distributions from the Escrow Property within two (2) Business Days of receipt of the corresponding Stryker Distribution Request or a final non-appealable order, judgment, or decree from the Bankruptcy Court or such other court possessing jurisdiction to adjudicate Stryker's claim which resolves such dispute regarding such Stryker Distribution, in which case Escrow Agent shall issue the proposed distribution in accordance with the terms of such order.

(c)  Distributions to Secured Party.  Escrow Agent shall issue distributions of Escrow Property to Secured Party within two (2) Business Days upon receipt of:  (i) a written agreement executed by Debtor, Secured Party, and Stryker substantially in the form of **Exhibit "D,"** permitting same ("Secured Party Distribution Request"); provided however, that if Stryker's claim against Debtor in the Restructuring Proceedings has been paid in full after entry of a final, non-

appealable order, judgment, or decree by the Bankruptcy Court or such other court possessing jurisdiction to adjudicate Stryker's claim, then Debtor and Secured Party shall provide Escrow Agent with file-stamped copies of such order(s) and evidence of payment of Stryker's claim in lieu of obtaining Stryker's signature on the Secured Party Distribution Request, in which case Debtor and Secured Party shall provide Stryker with notice of issuance of such Secured Party Distribution Request via email and overnight mail; or (ii) a file-stamped copy of a final, non-appealable order, judgment, or decree order entered by the Bankruptcy Court or such other court possessing jurisdiction over the Plan Contribution permitting same. Debtor and/or Secured Party may file a motion with the Bankruptcy Court seeking entry of an order permitting Escrow Agent to release any or all of the Escrow Property to Secured Party in the event that: (I) Debtor withdraws the Plan; (II) Debtor amends the Plan to delete the Plan Contribution; (III) Debtor's Reorganization Proceeding is dismissed or converted to a case under Chapter 7 of the Bankruptcy Code; (IV) Debtor and Secured Party fail to reach agreement as to the proposed form of the Loan Documents within forty-five (45) days of the date of execution of this Agreement; or (V) the Bankruptcy Court fails to enter a final, non-appealable order, judgment, or decree approving confirmation of the Plan within one-hundred and eighty (180) days of the date of execution of this Agreement.

**Section 6.**     **Termination.**   This Agreement shall terminate upon the distribution of all Escrow Property from the Ridgeway Plan Escrow Account. The provisions of Sections 8 and 9 shall survive the termination of this Agreement and the earlier resignation of the Escrow Agent.

**Section 7.**     **Resignation of Escrow Agent.**   The Escrow Agent may resign and be discharged from its duties hereunder at any time by giving thirty (30) days' prior written notice of such resignation to Debtor, Secured Party, and Stryker. Upon such notice, a successor escrow agent shall be

appointed by Debtor, Secured Party, and Stryker who shall provide written notice of such to the resigning Escrow Agent. Such successor escrow agent shall become the Escrow Agent hereunder upon the resignation or removal date specified in such notice. If Debtor, Secured Party, and Stryker are unable to agree upon a successor escrow agent within thirty (30) days after such notice, the Escrow Agent may, in its sole discretion, apply to a court of competent jurisdiction for the appointment of a successor escrow agent or for other appropriate relief. The costs and expenses (including its attorneys' fees and expenses) incurred by the Escrow Agent in connection with such proceeding shall be paid by Debtor. Upon receipt of the identity of the successor escrow agent, the Escrow Agent shall either deliver the Escrow Property then held hereunder to the successor Escrow Agent, less the Escrow Agent's costs and expenses or other obligations owed to the Escrow Agent to be paid from any interest earned in respect of the Escrow Property, or hold any interest earned in respect of the. Escrow Property (or any portion thereof), pending distribution, until all such costs and expenses or other obligations are paid. Upon its resignation and delivery of the Escrow Property as set forth in this Section 7, the Escrow Agent shall be discharged of and from any and all further obligations arising in connection with the Escrow Property or this Agreement.

Section 8. **Indemnity of the Escrow Agent.** Debtor shall indemnify, defend and hold harmless and reimburse the Escrow Agent and its officers, directors, employees, representatives, attorneys and agents, from and against stamp or other similar taxes- of whatever kind or nature regardless of their merit, demanded, asserted or claimed against the Escrow Agent directly or indirectly relating to, or arising from, any claims against the Escrow Agent including without limitation all reasonable attorneys' and consultants' fees and expenses and court costs. The provisions of this Section 8 shall survive the termination of this Agreement or the earlier resignation or removal of the Escrow Agent.

### Section 9.  The Escrow Agent.

(a)  The duties, responsibilities and obligations of Escrow Agent shall be limited to those expressly set forth herein and no duties, responsibilities or obligations shall be inferred or implied against the Escrow Agent.  The Escrow Agent shall not be subject to, nor required to comply with, any other agreement to which Debtor, Secured Party, and/or Stryker are a party, even though reference thereto may be made herein, or to comply with any direction or instruction (other than those contained herein or delivered in accordance with this Agreement) from Debtor, Secured Party, and/or Stryker.  The Escrow Agent shall not be required to expend or risk any of its own funds or otherwise incur any liability, financial or otherwise, in the performance of any of its duties hereunder.

(b)  If at any time the Escrow Agent is served with any judicial or administrative order, judgment, decree, writ or other form of judicial or administrative process which in any way affects the Escrow Property (including but not limited to orders of attachment or garnishment or other forms of levies or injunctions or stays relating to the transfer of the Escrow Property), the Escrow Agent is authorized to comply therewith in any manner it or legal counsel of its own choosing deems appropriate; and if the Escrow Agent complies with any such judicial or administrative order, judgment, decree, writ or other form of judicial or administrative process, Escrow Agent shall not be liable to any of the Parties hereto or to any other person or entity even though such order, judgment, decree, writ or process may be subsequently modified or vacated or otherwise determined to have been without legal force or effect.

(c)  In no event shall the Escrow Agent be liable to Debtor (i) for any indirect; consequential, punitive or special damages, regardless of the form of action and whether or not any such damages were foreseeable or contemplated, (ii) for the investment or reinvestment of any cash held by it hereunder, in each case in good faith, in accordance with the terms hereof, including without limitation any liability for any delays (not resulting from its gross negligence or willful misconduct) in

the investment or reinvestment of the Escrow Property, or any loss of interest or income incident to any such delays, or (iii) for an amount in excess of the value of the Escrow Property, valued as of the date of deposit, but only to the extent of direct money damages.

(d) The Debtor shall be obligated to pay all of Escrow Agent's fees and costs under this Agreement. Escrow Agent shall be entitled to payment of fees in accordance with **Exhibit "E."** If any fees, expenses or costs incurred by, or any obligations owed to, the Escrow Agent or its counsel hereunder are not promptly paid when due, the Escrow Agent may after five (5) Business Days written notice to Debtor to reimburse itself therefor from the Escrow Property and may sell, liquidate, convey or otherwise dispose of any investment in respect of the Escrow Property for such purpose; the Escrow Agent may in its sole discretion withhold from any distribution of any interest earned in respect of the Escrow Property an amount it believes would, upon sale or liquidation, produce proceeds equal to any unpaid amounts to which the Escrow Agent is entitled to hereunder.

(e) The Escrow Agent may reasonably consult with legal counsel of its own choosing, at its own expense, as to any matter relating to this Agreement, including review for any request for disbursement hereunder or review of monthly reports or invoices.

(f) The Escrow Agent shall not incur any liability for not performing any act or fulfilling any duty, obligation or responsibility hereunder by reason of any occurrence beyond the control of the Escrow Agent (including but not limited to any act or provision of any present or future law or regulation or governmental authority, any act of God or war, civil unrest, local or national disturbance or disaster, any act of terrorism, or the unavailability of the Federal Reserve Bank wire or facsimile or other wire or communication facility).

(g) The Escrow Agent shall be entitled to conclusively rely upon any order, judgment, certification, demand, notice, instrument or other writing delivered to it hereunder without being required

to determine the authenticity or the correctness of any fact stated therein or the propriety or validity or the service thereof. The Escrow Agent may act in conclusive reliance upon any instrument or signature believed by it to be genuine and may assume that any person purporting to give receipt or advice to make any statement or execute any document in connection with the provisions hereof has been duly authorized to do so.

(h)    The Escrow Agent shall not be responsible in any respect for the form, execution, validity, value or genuineness of documents or securities deposited hereunder, or for any description therein, or for the identity, authority or rights of persons executing or delivering or purporting to execute or deliver any such document, security or endorsement.  The Escrow Agent shall not be called upon to advise any Party as to the wisdom in selling or retaining or taking or refraining from any action with respect to Escrow Property deposited hereunder.

(i)    The Escrow Agent shall not be under any duty to give the Escrow Property held by it hereunder any greater degree of care than it gives its own similar property and shall not be required to invest any funds held hereunder except as directed in this Agreement.  Un-invested funds held hereunder shall not earn or accrue interest.

(j)    At any time the Escrow Agent may request an instruction in writing from Debtor, Secured Party, and Stryker and may, at its own option, include in such request the course of action it proposes to take and the date on which it proposes to act, regarding any matter arising in connection with its duties and obligations hereunder.  The Escrow Agent shall not be liable for acting in accordance with such a proposal on or after the date specified therein, provided that the specified date shall be at least seven (7) days after Debtor, Secured Party, and Stryker receive the Escrow Agent's request for instructions and its proposed course of action, and provided further that, prior to so acting, the Escrow Agent has not received objections to the proposed course of action or the written instructions requested.

(k)    In the event of any ambiguity or uncertainty hereunder or in any notice, instruction or other communication received by the Escrow Agent hereunder, the Escrow Agent may, in its sole discretion, refrain from taking any action other than to retain possession of the Escrow Property, unless the Escrow Agent receives written instructions, signed by Debtor, Secured Party and Stryker which eliminates such ambiguity or uncertainty.

(m) In the event of any dispute between or conflicting claims among Debtor, Secured Party, and/or Stryker or any other person or entity with respect to any Escrow Property, the Escrow Agent shall be entitled, in its sole discretion, to refuse to comply with any and all claims, demands or instructions with respect to such Escrow Property so long as such dispute or conflict shall continue, and the Escrow Agent shall not be or become liable in any way for failure or refusal to comply with such conflicting claims, demands or instructions. The Escrow Agent shall be entitled to refuse to act until, in its sole discretion, either (i) such conflicting or adverse claims or demands shall have been determined by a final order, judgment or decree of a court of competent jurisdiction, which order, judgment or decree is not subject to appeal, or settled by agreement between the conflicting Parties as evidenced in a writing satisfactory to the Escrow Agent or (ii) the Escrow Agent shall have received security or an indemnity satisfactory to it sufficient to hold it harmless from and against any and all losses which it may incur by reason of so acting. The Escrow Agent may, in addition, elect, in its sole discretion, to commence an interpleader action or seek other judicial relief or orders as it may deem, in its sole discretion, necessary. The costs and expenses (including reasonable attorneys' fees and expenses) incurred in connection with such interpleader proceeding shall be paid by, and shall be deemed an obligation of Debtor.

(o)    Debtor shall pay or reimburse the Escrow Agent upon request for any transfer taxes or other taxes relating to the Escrow Property incurred in connection herewith and shall indemnify and hold

harmless the Escrow Agent from any amounts that it is obligated to pay in the way of such taxes. Any payments of income from the Ridgeway Plan Escrow Account shall be subject to withholding regulations then in force with respect to United States taxes. Debtor and Secured Party will provide the Escrow Agent with appropriate W-9 form for tax identification number certifications. It is understood that the Escrow Agent shall be responsible for income reporting only with respect to income earned on the Escrow Property and will not be responsible for any other reporting. This paragraph shall survive notwithstanding any termination of this Escrow Agreement or the resignation or removal of the Escrow Agent.

(q)   The Escrow Agent shall provide to Debtor, Secured Party, and Stryker monthly statements identifying transactions, transfers or holdings of Escrow Property.

**Section 10.   Investment and Maintenance of Escrow Fund.**  The Escrow Agent shall invest and reinvest the Escrow Funds in the investment(s) set forth in **Exhibit "F"** hereto or any other investment which shall be requested in writing by Secured Party, Debtor, and Stryker (until such time as Stryker's claim is paid in full) and which shall be considered acceptable in the sole discretion of Escrow Agent.  Escrow Agent shall have sole discretion to select brokers, dealers or other traders of securities in connection with the investment of the Escrow Funds.

**Section 11.   USA PATRIOT ACT.**  None of Secured Party, Debtor, or Stryker is (or will be) a person with whom Escrow Agent is restricted from doing business with under regulations of the Office of Foreign Asset Control ("OFAC") of the Department of the Treasury of the United States of America (including, those persons named on OFAC's Specially Designated and Blocked Persons list) or under any statute, executive order (including, the September 24, 2001 Executive Order Blocking Property and Prohibiting Transactions With Persons Who Commit, Threaten to Commit, or Support Terrorism), or other governmental action

and is not and shall not engage in any dealings or transactions or otherwise be associated with such persons.  In addition, Secured Party, Debtor, and, as applicable, Stryker hereby agree to provide Escrow Agent with any additional information that Escrow Agent deems necessary from time to time in order to ensure compliance with all applicable laws concerning money laundering and similar activities. The following notification is provided to Secured Party, Debtor, and Stryker pursuant to Section 326 of the USA Patriot Act of 2001, 31 U.S.C. Section 5318 ("Patriot Act"):  IMPORTANT INFORMATION ABOUT PROCEDURES FOR OPENING A NEW ACCOUNT.  To help the government fight the funding of terrorism and money laundering activities, Federal law requires all financial institutions to obtain, verify, and record information that identifies each person or entity that opens an account, including any deposit account, treasury management account, loan, other extension of credit, or other financial services product. What this means for depositors:  When a depositor opens an account, if such depositor is an individual, a lender (including Escrow Agent) will ask for such depositor's name, taxpayer identification number, residential address,  date of birth, and other information that will allow the lender to identify such depositor, and, if such depositor is not an individual, Escrow Agent will ask for such depositor's name, taxpayer identification number, business address, and other information that will allow the lender to identify such depositor.  Escrow Agent may also ask, if such depositor is an individual, to see depositor's driver's license or other identifying documents, and, if such depositor is not an individual, to see such depositor's legal organizational documents or other identifying documents.  In the event Secured Party, Debtor, or Stryker violates any of the provisions of the USA Patriot Act and the regulations thereunder, such event shall constitute a default hereunder and shall entitle Escrow Agent to exercise all of its rights and remedies at law or in equity, including but not limited to terminating this Agreement.

Section 12. **Miscellaneous.** . During the term of this Agreement Escrow Agent shall provide Secured Party and Debtor with written monthly statements containing the beginning balance of the Escrow Funds, as well as all principal and income transactions for the statement period. Escrow Agent is authorized and directed to liquidate any and all investments in whole or in part making up the Escrow Funds as it deems necessary to make any and all payments or distributions required under this Agreement. All investment earnings shall become part of the Escrow Funds and investment losses shall be charged against the Escrow Funds. Escrow Agent shall not be liable or responsible for loss in the value of any investment made pursuant to this Agreement, or for any loss, cost or penalty resulting from any sale or liquidation of the Escrow Funds. With respect to any Escrow Funds received by Escrow Agent after ten o'clock, a.m., Birmingham, Alabama, time, Escrow Agent shall not be required to invest such funds or to effect any investment instruction until the next day upon which banks in Birmingham, Alabama are open for business. In the event that any or all of the Escrow Funds is of the type which cannot be invested, or Secured Party and Debtor expressly request in writing that the Escrow Funds not be invested, Escrow Agent shall hold and maintain the Escrow Funds in the Escrow Account.

(a) This Agreement embodies the entire agreement and understanding among the Parties relating to the subject matter hereof.

(b) This Agreement shall be governed by and construed in accordance with the laws of the State of Louisiana without reference to the principles of conflict of laws.

(c) Each of the Parties hereto hereby irrevocably consents to the jurisdiction of the Bankruptcy Court in connection with any action, suit or other proceeding arising out of or relating to this Agreement or any action taken or omitted hereunder, and waives any claim of forum non conveniens and any objections as to laying of venue. Each Party further waives personal service of any

summons, complaint or other process and agrees that service thereof may be made by certified or registered mail directed to such person at such person's address for purposes of notices hereunder.

      (d) <u>Notices</u>.  All notices and other communications under this Agreement shall be in writing in English and shall be deemed given: (i) when delivered personally; (ii) on the next Business Day after delivery to a recognized overnight courier or when sent by email or facsimile to the Parties at the following addresses (or to such other address as a Party may have specified by notice given to the other Parties pursuant to this provision) and (iii) on the second Business Day after being mailed via First Class U.S. Mail:

**If to Escrow Agent:**

Regions Bank
Corporate Trust Department
1900 Fifth Avenue North
Birmingham, AL. 35203
Attn: Amanda Wesley
Telephone: 205-264-5394
Email:  amanda.wesley@regions.com

**If to Secured Party:**

Whale Capital, L.P.
c/o Toby B. Fullmer, L.L.C.
P.O. Box 22355
Houston, Texas 77227
Telephone: 713-355-4357
Fax:  713-961-0384
Email:  toby@fullmerlegal.com

**If to Debtor:**

Christopher Martin Ridgeway
c/o Robin B. Cheatham
Adams and Reese LLP
4500 One Shell Square
New Orleans, Louisiana 70139
Telephone: 504-585-0411
Fax: 504-566-0210
Email: robin.cheatham@arlaw.com

**If to Stryker:**

Stryker Corporation
Howmedica Osteonics Corp.
c/o James B. Sowka & Michael Wexler
Seyfarth Shaw LLP
131 South Dearborn Street, Suite 2400
Chicago, IL 60603
Telephone: 312-460-5325
Fax:  312-460-7000
Email:  jsowka@seyfarth.com
Email:  mwexler@seyfarth.com

      (e)    In the event Escrow Agent shall receive such written instructions and shall determine pursuant to its sole discretion that verification of such instructions shall be required, then Escrow Agent shall be permitted to seek confirmation of such instructions by way of telephone contact to the author of such written instructions.  Verification of the instructions by

the purported author of the instructions called at the telephone number placed on the instructions shall serve to verify such instructions

(e)   The headings of the Sections of this Agreement have been inserted for convenience and shall not modify, define, limit or expand the express provisions of this Agreement.

(f)   This Agreement and the rights and obligations hereunder of Parties hereto may not be assigned except with the prior written consent of the other Parties hereto.  This Agreement shall be binding upon and inure to the benefit of each Party's respective successors and permitted assigns. Except as expressly provided herein, no other person shall acquire or have any rights under or by-virtue of this Agreement.

(g)   This Agreement may not be amended, supplemented or otherwise modified without the prior written consent of the Parties hereto.

(h)   This Agreement may be signed in counterparts via facsimile, email, or otherwise, and copies of the same bearing the signatures of the Parties shall be as effective as the original.

(i)   The rights and remedies conferred upon the Parties hereto shall be cumulative, and the exercise or waiver of any such right or remedy shall not preclude or inhibit the exercise of any additional rights or remedies. The waiver of any right or remedy hereunder shall not preclude the subsequent exercise of such right or remedy.

(j)   Debtor, Secured Party, and Stryker each for its own behalf hereby represents and warrants that: (i) that this Agreement has been duly authorized, executed and delivered on its behalf and constitutes its legal, valid and binding obligation; and (ii) that the execution, delivery

and performance of this Agreement by Debtor, Secured Party, and Stryker does not and will not violate any applicable law or regulation.

(k)  The invalidity, illegality or unenforceability of any provision of this Agreement shall in no way affect the validity, legality or enforceability of any other provision; and if any provision is held to be unenforceable as a matter of law, the other provisions shall not be affected thereby and shall remain in full force and effect.

(*l*)  For purposes of this Agreement, "Business Day" shall mean any day that is not a Saturday or Sunday or a day on which banks are required or permitted by law or executive order to be closed in the City of New Orleans, Louisiana.

(m)  For purposes of sending and receiving instructions or directions hereunder, all such instructions or directions shall be, and the Escrow Agent may conclusively rely upon such instructions or directions, delivered, and executed by representatives of Debtor, Secured Party, and Stryker designated on **Exhibit** "**A**" attached hereto and made a part hereof which such designation shall include specimen signatures of such representatives, as such **Exhibit** "**A**" may be updated from time to time.  Each representative of Party is authorized to act alone subject to compliance with the terms of this Agreement. All instructions or directions hereunder may be signed in counterparts via facsimile, email, or otherwise, and copies of the same bearing the signatures of the Parties shall be as effective as the original.  Each representative for each Party is authorized to act alone subject to compliance with the terms of this Agreement, including but not limited to any provisions under this Agreement requiring two or more Parties to authorize actions by the Escrow Agent.

[*Signatures on Following Page*]

IN WITNESS WHEREOF, the Parties hereto have executed this Agreement as of the day and year above written.

**REGIONS BANK**

By:_____
Name:
Title: Vice-President

**WHALE CAPITAL, LP, a Texas limited partnership**

By: Whale Capital Management, Inc.
    its General Partner

    By: _____
        Name:  Michael P. Whalen
        Title:  President

**CHRISTOPHER MARTIN RIDGEWAY**

By:_____
Name:
Title:

**STRYKER CORPORATION, a Michigan Corporation**

By: _____
Name: Michael G. Cartier
Title: Deputy General Counsel

**HOWMEDICA OSTEONICS, CORP. a New Jersey Corporation**

By: _____
Name: Michael G. Cartier
Title: Deputy General Counsel

18

IN WITNESS WHEREOF, the Parties hereto have executed this Agreement as of the

day and year above written.

**REGIONS BANK**

By:_____
Name:
Title: Vice-President

**WHALE CAPITAL, LP, a Texas limited partnership**

By: Whale Capital Management, Inc.
    its General Partner

  By: _____
      Name:  Michael P. Whalen
      Title:  President

**CHRISTOPHER MARTIN RIDGEWAY**

By:_____
Name:
Title:

**STRYKER CORPORATION, a Michigan Corporation**

By:_____
Name:
Title:

**HOWMEDICA OSTEONICS, CORP. a New Jersey Corporation**

By:_____
Name:
Title:

IN WITNESS WHEREOF, the Parties hereto have executed this Agreement as of the day and year above written.

**REGIONS BANK**

By:_____
Name:
Title: Vice-President

**WHALE CAPITAL, LP, a Texas limited partnership**

By: Whale Capital Management, Inc.
    its General Partner

  By: _____
      Name:  Michael P. Whalen
      Title:  President

**CHRISTOPHER MARTIN RIDGEWAY**

By: _____
Name:
Title: _Christopher Ridgeway_

**STRYKER CORPORATION, a Michigan Corporation**

By:_____
Name:
Title:

**HOWMEDICA OSTEONICS, CORP. a New Jersey Corporation**

By:_____
Name:
Title:

18

## Exhibit A

### Authorized Representatives

| Party | Name of Authorized Representative | Title | Signature Specimen |
|---|---|---|---|
| Christopher Martin Ridgeway | Robin B. Cheatham | Bankruptcy Counsel | |
| Whale Capital, LP, a Texas limited partnership | Toby B. Fullmer | General Counsel | |
| Stryker Corporation, a Michigan Corporation | Dari Craven Bargy | Legal Counsel | |
| | James B. Sowka | Outside Counsel | |
| Howmedica Osteonics Corp., a New Jersey Corporation | Dari Craven Bargy | Legal Counsel | |
| | James B. Sowka | Outside Counsel | |

19

**Exhibit A**

**Authorized Representatives**

| Party | Name of Authorized Representative | Title | Signature Specimen |
|---|---|---|---|
| Christopher Martin Ridgeway | Robin B. Cheatham | Bankruptcy Counsel | _(signature)_ |
| Whale Capital, LP, a Texas limited partnership | Toby B. Fullmer | General Counsel | |
| Stryker Corporation, a Michigan Corporation | Dari Craven Bargy | Legal Counsel | |
| | James B. Sowka | Outside Counsel | |
| Howmedica Osteonics Corp., a New Jersey Corporation | Dari Craven Bargy | Legal Counsel | |
| | James B. Sowka | Outside Counsel | |

**Exhibit B**
**Request For Release Of Escrow Funds - Distributions To Creditors Other Than Stryker**

Date: _____
To:     Regions Bank
Re:     Request for Release of Escrow Funds for Distribution to Creditor(s) Other than Stryker
Dear _____,

      In accordance with Section 5(a) of the Escrow Agreement dated August _____ 2016 ("Agreement") executed by and between Christopher Martin Ridgeway, in his capacity as debtor, debtor-in-possession, and reorganized debtor pursuant confirmation of any bankruptcy plan ("Debtor"), Whale Capital, LP, a Texas limited partnership, as secured party ("Secured Party"), Stryker Corporation, a Michigan corporation, Howmedica Osteonics Corp., a New Jersey corporation (Stryker Corporation and Howmedica Osteonics Corp., are collectively referred to as "Stryker"), and Regions Bank, an Alabama banking corporation as escrow agent ("Escrow Agent"), you are hereby advised, and the Debtor and Secured Party represent and warrant, that: (i) the Debtor's Plan was confirmed by the Bankruptcy Court pursuant to entry of a final, non-appealable order, judgment, or decree (collectively the "Final Plan Confirmation Order") which Final Plan Confirmation Order was entered by the Bankruptcy Court on _____. A file-stamped copy of such Final Plan Confirmation Order is attached hereto as **Exhibit 1**; (ii) the Proposed Distribution requested herein is authorized by Section _____ of the Plan; and (iii) on _____ the Bankruptcy Court or such other court possessing jurisdiction entered one or more final, non-appealable orders, judgments, or decrees fixing this Proposed Distribution in the amount of $_____ and permitting Escrow Agent to issue such Proposed Distribution in the requested amount. A file-stamped copy of such order(s) is attached hereto as **Exhibit 2**.

      Accordingly, Debtor and Secured Party hereby request and authorize Escrow Agent to issue the Proposed Distribution, in the amount set forth above, by check, from the Escrow Property to _____. Such Proposed Distribution should be paid directly to the following creditor at the address below.

CREDITOR:      _____
ATTN:           _____
ADDRESS:       _____
TELEPHONE:    _____
TAX I.D.:        _____


**WHALE CAPITAL, LP, a Texas limited partnership**

By: Whale Capital Management, Inc.
    its General Partner

   By: _____
      Name: Michael P. Whalen
      Title: President


**CHRISTOPHER MARTIN RIDGEWAY**

By:_____
Name:
Title:

## Exhibit C

## Request For Release Of Escrow Funds - Distributions To Stryker

Date: _____
To:     Regions Bank
Re:     Request for Release of Escrow Funds for Distribution to Stryker

Dear _____,

       In accordance with Section 5(b) of the Escrow Agreement dated August _____ 2016 ("Agreement") executed by and between Christopher Martin Ridgeway, in his capacity as debtor, debtor-in-possession, and reorganized debtor pursuant confirmation of any bankruptcy plan ("Debtor"), Whale Capital, LP, a Texas limited partnership, as secured party ("Secured Party"), Stryker Corporation, a Michigan corporation, Howmedica Osteonics Corp., a New Jersey corporation (Stryker Corporation and Howmedica Osteonics Corp., are collectively referred to as "Stryker"), and Regions Bank, an Alabama banking corporation as escrow agent ("Escrow Agent"), you are hereby advised, and the Debtor, Secured Party, and Stryker represent and warrant that:

       [*OPTION 1*  (i) the Stryker Distribution requested herein in the amount of $_____ is authorized by Section ____ of the Debtor's Plan was confirmed by the Bankruptcy Court pursuant to entry of a final, non-appealable order, judgment, or decree (collectively the "Final Plan Confirmation Order") which Final Plan Confirmation Order was entered by the Bankruptcy Court on _____; and (ii) a file-stamped copy of such Final Plan Confirmation Order is attached hereto as **Exhibit 1**;]

       [*OPTION 2* (i) on _____ the Bankruptcy Court or such other court possessing jurisdiction entered one or more final, non-appealable orders, judgments, or decrees fixing this Stryker Distribution in the amount of $_____ and permitting Escrow Agent to issue such Stryker Distribution in the requested amount; and (ii) a file-stamped copy of such order(s) is attached hereto as **Exhibit 1**.]

       Accordingly, Debtor, Secured Party, and Stryker hereby request and authorize Escrow Agent to issue the Stryker Distribution, in the amount set forth above, by wire, from the Escrow Property. Such Stryker Distribution should be paid to Stryker pursuant to the following wire instructions:

*[Wire instructions and signatures on following page]*

Wire to:                    _____    [*name of financial institution*]
                            _____    [*address of financial institution*]
                            _____
                            _____    [*ABA transit routing number*]

For credit to:              _____    [*As applicable*]

For benefit of:             _____    [*Styrker's account number*]
                            Stryker Corporation
                            _____    [*Address*]
                            _____

Tax I.D.:                   _____


**REGIONS BANK**                           **CHRISTOPHER MARTIN RIDGEWAY**

By:_____                 By:_____
Name:                                      Name:
Title: Vice-President                      Title:

**WHALE CAPITAL, LP, a Texas limited**     **STRYKER CORPORATION, a Michigan**
**partnership**                            **Corporation**

By:    By: Whale Capital Management, Inc.   By:_____
       its General Partner                 Name:
                                           Title:
   By: _____
       Name:  Michael P. Whalen
       Title:  President


                                           **HOWMEDICA OSTEONICS, CORP. a**
                                           **New Jersey Corporation**

                                           By:_____
                                           Name:
                                           Title:

## Exhibit D

### Distributions to Secured Party

### Request For Release Of Escrow Funds - Distributions To Secured Party

Date: _____
To:    Regions Bank
Re:    Request for Release of Escrow Funds for Distribution to Secured Party

Dear _____,

    In accordance with Section 5(c) of the Escrow Agreement dated August _____ 2016 ("Agreement") executed by and between Christopher Martin Ridgeway, in his capacity as debtor, debtor-in-possession, and reorganized debtor pursuant confirmation of any bankruptcy plan ("Debtor"), Whale Capital, LP, a Texas limited partnership, as secured party ("Secured Party"), Stryker Corporation, a Michigan corporation, Howmedica Osteonics Corp., a New Jersey corporation (Stryker Corporation and Howmedica Osteonics Corp., are collectively referred to as "Stryker"), and Regions Bank, an Alabama banking corporation as escrow agent ("Escrow Agent"),

    [**OPTION 1**  you are hereby advised, and the Debtor, Secured Party, and Stryker represent and warrant, that the Secured Party Distribution Request requested herein in the amount of $_____ is authorized by pursuant to the terms of this Agreement or otherwise consented to by Debtor, Secured Party, and Stryker. ]

    [**OPTION 2**  you are hereby advised, and the Debtor and Secured Party represent and warrant, that: (i) Stryker's claim against Debtor in the Restructuring Proceedings has been paid in full as indicated by the documents attached hereto as **Exhibit 1**; and (ii) the Secured Party Distribution Request requested herein in the amount of $_____ is authorized by pursuant to the terms of this Agreement or otherwise consented to by Debtor and Secured Party.]

    [**OPTION 3**  you are hereby advised, and the Debtor and Secured Party represent and warrant, that: (i) on _____ the Bankruptcy Court or such other court possessing jurisdiction entered one or more final, non-appealable orders, judgments, or decrees fixing the Secured Party Distribution in the amount of $_____ and permitting Escrow Agent to issue such Secured Party Distribution in the requested amount; and (ii) a file-stamped copy of such order(s) is attached hereto as **Exhibit 1**.]

    Accordingly, the undersigned parties hereby request and authorize Escrow Agent to issue the Secured Party Distribution, in the amount set forth above, by wire, from the Escrow Property. Such Secured Party Distribution should be paid to Secured Party pursuant to the following wire instructions:

[<em>Wire instructions and signatures on following page</em>]

Wire to: _____ [*name of financial institution*]
_____ [*address of financial institution*]
_____
_____ [*ABA transit routing number*]

For credit to: _____ [*As applicable*]

For benefit of: _____ [*Secured Party's account number*]
Whale Capital LP
_____ [*Address*]
_____

Tax I.D.: _____


**WHALE CAPITAL, LP, a Texas limited partnership**

By: Whale Capital Management, Inc.
its General Partner

By:_____
Name: Michael Whalen
Title:   President

**CHRISTOPHER MARTIN RIDGEWAY**

By:_____
Name:
Title:


[*As applicable*]
**STRYKER CORPORATION, a Michigan Corporation**

By:_____
Name:
Title:

[*As applicable*]
**HOWMEDICA OSTEONICS, CORP. a New Jersey Corporation**

By:_____
Name:
Title:

24

## Exhibit E

### Compensation Of The Escrow Agent

*These fees are based upon our current understanding of our duties under of the above-referenced agreement. Regions Bank reserves the rights to adjust its fees should its duties change under the agreement.*

ACCEPTANCE FEE:                                                             $ 500.00

ADVANCE ANNUAL ADMINISTRATION FEE                          $ 3000.00

TRANSACTION FEES:
Wire Fee:                                                                          $ Waived
Check Disbursement:                                                          $ Waived

LEGAL FEES:                                                                     If any, at cost

INVESTMENT:     An additional $500.00 fee will be added to the Annual Administration Fee of any account not using one of the investment vehicles used by Regions Trust Department for its short-term investments.

Charges for performing extraordinary or other services not contemplated at the time of the execution of the transaction or not specifically covered elsewhere in this schedule will be determined by appraisal in amounts commensurate with the service to be provided.  Services not included in this Fee Schedule, but deemed necessary or desirable by you, may be subject to additional charges based on a mutually agreed upon fee schedule.

Approved by: _____   Date: _____
                        Authorized Representative of Debtor

*The Acceptance Fee and the Advance Annual Administration Fee are payable upon execution of the escrow documents.  In the event the escrow is not funded, the Acceptance Fee and all related expenses, including attorneys' fees remain due and payable, and if paid, will not be refunded.  Annual fees cover a full year in advance, or any part thereof, and thus are not pro-rated in the year of termination. All other fees, if any, will be billed to the client in arrears.*

## Exhibit F

### Investment of Escrow Deposit

Funds will be invested in the Fidelity Institutional Money Market Government Portfolio Class III (Cusip #316175 60 3).  This fund is rated AAAm by Standard & Poor's, Aaa by Moody's, and AAA by Fitch.  The fund offers a high level of liquidity and will sweep available cash automatically.   All fees and expenses charged by the fund company are disclosed in the fund's prospectus, which is available at www.fidelity.com.   Also, from time to time, the fund company may elect to share a portion of its management fee with Regions Bank.  This revenue sharing will not affect your investment yield.

Money market funds (i) are investments that involve risk, including possible loss of principal, and which may fluctuate in value; (ii) are not guaranteed by Regions or its affiliates; and (iii) are not insured by the Federal Deposit Insurance Corporation ("FDIC").