UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF LOUISIANA

IN RE:

**CHRISTOPHER MARTIN RIDGEWAY**          **CASE NO. 16-10643**
                                         SECTION A – JUDGE DODD
DEBTOR                                   CHAPTER 11

### MEMORANDUM OPINION ON APPLICATIONS FOR COMPENSATION

Adams and Reese, LLP ("A&R") seeks $967,776.76 in fees and costs for representing the

debtor in his individual chapter 11 case as well as in an appeal before the United States Court of

Appeals for the Sixth Circuit.  Stryker Corporation and Howmedica Osteonics ("Stryker") object

to the application.  The court awarded A&R $282,811.02 on an interim basis[1] and after an

evidentiary hearing ordered the parties to file supplemental memoranda.

This memorandum opinion comprises the court's reasons for awarding A&R $552,238.00

total compensation and $21,070.39 in expenses on a final basis for the two applications.

## INTRODUCTION

Christopher Martin Ridgeway's contentious chapter 11 case concluded with a confirmed

plan of reorganization fully paying all but one allowed pre-bankruptcy claim.  Stryker, the

debtor's sole remaining unpaid creditor, holds an unliquidated unsecured claim based on a

---

[1]  Interim Order (P-547).  A&R filed two fee applications, P-431 (originally filed as P-397 and later amended by order P-426) and P-432 (originally filed as P-401 and later amended by order P-427).  The first application sought allowance on an interim basis of fees and costs from March 23, 2016 through November 30, 2016.  A&R styled the second application as a final application, encompassing final approval for fees sought in the earlier application and also approval of fees earned and expenses incurred from December 1, 2016 through April 13, 2017.  November 8, 2017 Interim Order Granting in Part the Amended First Interim, Amended Second Interim and Final Applications for Compensation on Behalf of Adams and Reese LLP as Counsel for Debtor From March 23, 2016 Through April 13, 2017 [P-547].  The November 2017 order awarded $190,273.00 in fees and $12,194.12 in expenses (for a total of $202,467.12) on the Amended First Interim Application and $75,048.50 in fees and $5,295.40 in expenses (for a total of $80,343.90) on the Amended Second Interim and Final Application.  This memorandum opinion rules on both applications on a final basis and takes into account the parties' arguments and admissible evidence, whether or not this opinion specifically mentions them.

federal trial court judgment against Ridgeway and his wholly owned business, Stone Surgical, LLC, for $745,195.00.[2]

## FACTS

Stryker sued Ridgeway in the United States District Court for the Western District of Michigan in September 2013 for misappropriating trade secrets and breaching a non-competition agreement. Two months later, Ridgeway and Stone Surgical sued Stryker and Howmedica in the Eastern District of Louisiana alleging violations of the Louisiana Unfair Trade Practices Act, fraud, unjust enrichment and tortious interference with a business relationship and contract. The Louisiana lawsuit was transferred to Michigan and, after consolidation with Stryker's lawsuit, tried to a jury verdict in favor of Stryker. The Michigan trial court entered judgment in Stryker's favor for $745,195.00 and dismissed the claims of Ridgeway and Stone Surgical. Ridgeway filed chapter 11 shortly after the verdict, retaining A&R as his bankruptcy lawyers.

Ridgeway and Stone Surgical later hired A&R partner Louis LaCour to appeal the trial court judgment.[3] A&R has billed Ridgeway $481,774 in fees and costs for its appellate work. The law firm does not seek payment from Stone Surgical for any of its fees for the appeal, even though Stone Surgical was a joint appellant.

Stryker's prepetition unsecured claim for attorney fees has not yet been determined and paid.[4] Until the debtor pays Stryker's claim in full, it is unnecessary to speculate about the ways

---

[2] Addendum to Proof of Claim 14-1, ¶30. Stryker and Howmedica also seek $2,639,255.99 in attorney fees as well as costs for litigating its claims, plus more than $47,696.72 in interest on the claim, yielding a total claim of $3,432,147.71. *Id.*

[3] The appeal was unsuccessful. The Sixth Circuit affirmed the trial court, 858 F.3d 383 (6th Cir. 2017) and the United States Supreme Court denied *certiorari* on January 8, 2018. ___ S.Ct. ___, 2018 WL 311358 (Mem).

[4] Stryker's unsecured claim for attorney fees is under advisement.

in which the confirmed plan may miscarry.[5]  The court thus confirms its oral ruling at the evidentiary hearing that Stryker has a pecuniary interest in the payment of A&R's fees and therefore standing to object to the application.[6]

## ANALYSIS

Stryker objects to A&R's fees on several grounds.  Its unresolved objections as of the evidentiary hearing were:[7]

1. A&R was not authorized to represent the chapter 11 debtor in his appeal and fees for that work should be disallowed.

2. Even if A&R's engagement included the appellate work, the bankruptcy estate should not bear all the fees for the appeal because A&R simultaneously represented Stone Surgical, a co-appellant and debtor's affiliate.

3. A&R is not entitled to payment at paralegal rates for administrative or clerical work.

4. A&R is not entitled to compensation for services for which time entries are redacted or vague or for which excessive time was billed.[8]

---

[5]  Stryker's standing aside, the court has an independent duty to review fee applications.  *In re Wise*, 365 B.R. 516, 527–28 (Bankr. E.D. Pa. 2007) (Bankruptcy Code sections 105 and 330 and Fed. R. Bankr. P. 2016 support court's duty to review counsels' fee applications *sua sponte* whether or not any party has objected); *see also In re Busy Beaver Bldg. Ctrs., Inc.,* 19 F.3d 883, 841-5 (3d Cir. 1994).

[6]  *In re Kaiser*, 525 B.R. 697, 705 (Bankr. N.D. Ill. 2014) ("An objecting party will only have standing to the extent that it has a pecuniary interest in the estate," *citing Cult Awareness Network, Inc. v. Martino (In re Cult Awareness Network, Inc.)*, 151 F.3d 605, 607–08 (7th Cir.1998); *In re C.P. Hall Co.,* 513 B.R. 540, 543 (Bankr. N.D. Ill. 2014) ("A creditor's interest in a bankruptcy case is pecuniary, and so a creditor is a 'party in interest' with standing to object to the claims of other creditors"); *In re Mushroom Transp. Co., Inc.*, 486 B.R. 148 (Bankr. E.D. Pa. 2013) (law firm had standing to object to chapter 7 trustee's special counsel's fee application which, if granted, would not have permitted full payment of allowed chapter 7 administrative expenses thereby prompting chapter 7 trustee to attempt to claw back fees previously awarded to chapter 11 administrative expense claimants).

[7]  Objection to the First Interim, Second Interim, and Final Applications for Compensation filed by Adams and Reese, LLP [P-424], pp.7-16.  A&R mooted one of Stryker's objections by withdrawing its motion to withdraw surplus funds from an escrow account set up for payment of Strkyer's claim [P-519].

[8]  The court has considered all of Stryker's objections and overruled all except those addressed in this memorandum opinion.

All but one of Stryker's challenges have merit.

### 1.  A&R Did Not Require Specific Permission to Represent Ridgeway on Appeal

The easiest challenge to dispose of is Stryker's complaint that A&R was not authorized to represent the debtor in its appeal of the adverse judgment to the Sixth Circuit.

A&R's application to be employed as Ridgeway's lawyers stated that, among other things, A&R was to appear in court to represent the debtor's interests and, more generally, to represent the debtor in all litigation.[9]  The order authorizing the firm's employment included the same language[10] so A&R had permission to represent the debtor in possession in the appellate court.

### 2.  A&R's Simultaneous Representation of the Debtor and His LLC is Problematic

The second challenge to A&R fees is more problematic.  Stryker argues that A&R is not entitled to full compensation from Ridgeway for representing both the debtor and his wholly owned business in the appellate court.

Professionals seeking to be employed by chapter 11 debtors in possession must disclose, among other things, "all of the person's connections with the debtor, creditors, any other party in interest, [and] their respective attorneys and accountants.…"  FED R. BANKR. P. 2014(a).  The duty to disclose those connections continues throughout the chapter 11 case.[11]

---

[9]  Application of Debtor for Entry of an Order Authorizing the Employment and Retention of Robin B. Cheatham and the Law Firm of Adams and Reese LLP on an Interim Basis and Setting Final Hearing [P-3], ¶¶10(b), (f) and (n).

[10]  Final Order Approving Application of Debtor for Entry of an Order Authorizing the Employment and Retention of Robin B. Cheatham and the Law Firm of Adams and Reese LLP [P-18].

[11] 3 COLLIER ON BANKRUPTCY ¶ 327.04 (Richard Levin & Henry J. Sommer eds., 16th ed.) ("Moreover, the duty of disclosure is a continuing one. Newly discovered information or any change in circumstances must be disclosed. An attorney has an affirmative duty to disclose such potential conflicts so that the appropriateness of employment will be subject to the independent judgment of the court."); *see also In re Harris Agency, LLC*, 451 B.R. 378, 390 (Bankr. E.D. Pa.), *aff'd sub nom. In re The Harris Agency, LLC*, 462 B.R. 514 (E.D. Pa. 2011) ("Most importantly, the duty to disclose does not end once the Rule 2014 Verified Statement has been filed; rather, there is an ongoing duty of counsel to inform the court of its connections and potential conflicts.").

A&R does not deny that it failed to amend its Rule 2014 disclosure to reveal its joint representation of Stone Surgical in the appeal.  Rather, it responds that its simultaneous dual representation is inconsequential for three reasons:

1.  Stryker, the objecting party, knew of the firm's joint representation.

2.  A&R was not obliged to disclose its undertaking for Stone Surgical because the debtor owned the company.

3.  A&R had no duty to disclose the dual representation because Stone Surgical is not a "party in interest" within the meaning of FED. R. BANKR. P. 2014(a).[12]

None of these arguments is persuasive.

Bankruptcy Code section 327 governs the hiring of professionals to be compensated from the chapter 11 bankruptcy estate.[13]  Section 327 required A&R to be a *disinterested person,* which is defined in Bankruptcy Code section 101(14)[14] as one that:

> (A) is not a creditor, an equity security holder, or an insider;
>
> (B) is not and was not, within 2 years before the date of the filing of the petition, a director, officer, or employee of the debtor; and
>
> (C) does not have an interest materially adverse to the interest of the estate or of any class of creditors or equity security holders, by reason of any direct or indirect relationship to, connection with, or interest in, the debtor, or for any other reason.

---

[12]  Debtor's Supplemental Brief in Support of Adams and Reese, LLP's Applications for Compensation [P-507], ¶16.

[13]  11 U.S.C. §327(a): "Except as otherwise provided in this section, the trustee, with the court's approval, may employ one or more attorneys, accountants, appraisers, auctioneers, or other professional persons, that do not hold or represent an interest adverse to the estate, *and that are disinterested persons*, to represent or assist the trustee in carrying out the trustee's duties under this title." (Emphasis added.)  In chapter 11 cases, debtors in possession have most of the powers and duties of trustees.  11 U.S.C. §1107(a).

[14]  11 U.S.C. §101(14).

A professional required by the Code to be disinterested runs a risk if it ceases to be a disinterested person at any point during its engagement in the chapter 11 case. If that happens, its employment may be terminated, it may lose the right to seek compensation from the bankruptcy estate and may even be ordered to disgorge prior payments from the estate.[15]

Critical to the analysis of A&R's disinterestedness is Stone Surgical's guaranty of payment of Ridgeway's fees to A&R. A&R *did* disclose that guaranty in its initial disclosure of the source of its compensation for representing the debtor in possession;[16] but it *did not* amend the disclosure after Stone Surgical hired it for the appeal. Its failure to amend the disclosure is important because Stone Surgical is an insider of Ridgeway within the meaning of Bankruptcy Code section 101(31).[17]

---

[15] See note 21, below.

[16] Affidavit of Robin B. Cheatham on Behalf of Adams and Reese LLP, Counsel for Debtors in Possession [P-3], ¶6.

[17] 11 U.S.C. §101(31)(A):

"The term 'insider' includes--(**A**) if the debtor is an individual—

   (**i**)      relative of the debtor or of a general partner of the debtor;
   (**ii**)     partnership in which the debtor is a general partner;
   (**iii**)    general partner of the debtor; or
   (**iv**)     *corporation of which the debtor is a director, officer, or person in control*[.]" (Emphasis added.)

That Stone Surgical is a limited liability company and not a corporation is a distinction without a difference. LLCs sufficiently resemble corporations to be treated as corporations within the meaning of *insider* and for the purpose of Bankruptcy Code disinterestedness analysis. As the leading bankruptcy treatise notes, "Typically, an LLC is owned by members who have the same protection from liability as shareholders of a corporation. Thus, although the members of an LLC are in some respects similar to partners in a partnership, they are not general partners. Even if they were partners, their protection from liability would render the entity the type of partnership association falling within subsection (A)(ii), thus making the limited liability company fall within the Code's definition of 'corporation.'" 2 COLLIER ON BANKRUPTCY ¶101.09 (Richard Levin & Henry J. Sommer eds., 16th ed.). *Accord*, *Brandt v. Tabet DiVito & Rothstein, LLC (In re Longview Aluminum, L.L.C.)*, 419 B.R. 351, 354 (Bankr. N.D. Ill. 2009). "[A] limited liability company … —an 'LLC'—is a 'corporation' as that term is used in the Bankruptcy Code. Section 101(9) of the Code defines 'corporation' broadly, to encompass both (1) an 'association having a power or privilege that a private corporation, but not an individual or a partnership, possesses' and (2) 'an unincorporated company.' An LLC fits both of these categories because it is an unincorporated company and because it affords its members the same limited liability extended to corporate shareholders."

Applicants for employment as chapter 11 debtor's counsel must disclose all connections with the debtor and other parties in interest.[18]  An application to retain counsel filed under 11 U.S.C. §327 and Fed. R. Bankr. P. 2014 must set forth any connection the applicant may have with the debtor, insiders or others that may render it other than *disinterested*.[19]  It is not for the applicant to decide what is appropriate for disclosure.[20]  Failure to disclose connections that bear on counsel's disinterestedness may have consequences during the case if the lack of disinterestedness, and the failure to disclose, later come to the court's attention.[21]  *Waldron v. Adams & Reese, L.L.P. (Matter of American Int'l Refinery, Inc.)*, 676 F.3d 455 (5th Cir. 2012).  The Fifth Circuit wrote in *American Int'l Refinery, Inc.*:

> The disclosure requirements of Rule 2014(a) are broader than the rules governing disqualification, and an applicant must disclose all connections regardless of whether they are sufficient to rise to the level of a disqualifying interest under Section 327(a)…. Courts may deny all compensation to professionals who fail to make adequate disclosure, and "counsel who fail to disclose timely and completely their connections proceed at their own risk because

---

[18]  Fed. R. Bankr. P. 2014.

[19]  *In re eToys, Inc.*, 331 B.R. 176, 189 (Bankr. D. Del. 2005) ("Disclosure 'goes to the heart of the integrity of the bankruptcy system.' Therefore, the duty to disclose under Bankruptcy Rule 2014 is considered sacrosanct because the complete and candid disclosure by an attorney seeking employment is indispensable to the court's discharge of its duty to assure the attorney's eligibility for employment under section 327(a) and to make an informed decision on whether the engagement is in the best interest of the estate." (internal citations omitted)).  Disclosure also prevents later challenges to compensation or continued employment based on an applicant's failure to disclose relevant information.

[20]  "The professional must disclose all facts that bear on its disinterestedness and cannot usurp the court's function by choosing, *ipse dixit*, which connections impact disinterestedness and which do not."  *In re C & C Demo, Inc.*, 273 B.R. 502, 507 (Bankr. E.D. Tex. 2001), quoting *In re Granite Partners, L.P.*, 219 BR 22, 35 (Bankr. S.D.N.Y. 1998); *In re Tomczak*, 283 B.R. 730, 735 (Bankr. E.D. Wis. 2002) ("Professionals are not permitted to 'pick and choose' which disclosures are irrelevant or trivial.")

[21]  *In re Leslie Fay Companies, Inc.*, 175 B.R. 525, 533 (Bankr. S.D.N.Y. 1994) ("All facts that may have any bearing on the disinterestedness of a professional must be disclosed.  Consistent with the duty placed on the professional, it is the responsibility of the professional, not of the court, to make sure that all relevant connections have been brought to light…. So important is the duty of disclosure that the failure to disclose relevant connections is an independent basis for the disallowance of fees or even disqualification." (internal citations omitted)).

> failure to disclose is sufficient grounds to revoke an employment
> order and deny compensation."

676 F.3d 465-6, citing *I.G. Petroleum, L.L.C v Fenasci (In re West Delta Oil Co,*

*Inc.)*, 432 F.3d 347, 355 (5th Cir. 2005).

A&R's detailed application to be hired as Ridgeway's lawyers[22] belies its claim that it

was not required to amend its disclosure to reveal its appellate representation of Stone Surgical.

The firm revealed there its connections with former and current creditors, listing no fewer than

eight current and former clients that are creditors in the case *including* Stryker Corporation.  If

A&R believed it had a duty to reveal those relationships when it took up representing the chapter

11 debtor in possession, *a fortiori* it should have revealed its relationship with Stone Surgical

once A&R undertook representing Stone on appeal.[23]

Finally, A&R makes an ill-judged argument that it needn't have disclosed its

representation of Stone because the LLC was not a party in interest.  A&R's digression to explore

the metes and bounds of that term is unnecessary: as a pre-bankruptcy guarantor of A&R's fees,

Stone was a surety.[24]  Stone Surgical held at all relevant times a contingent claim against the

debtor for reimbursement of payment on A&R's fees.[25]  Hence, it is a creditor and "party in

---

[22] Application of Debtor for Entry of an Order Authorizing the Employment and Retention of Robin B. Cheatham and the Law Firm of Adams and Reese LLP on an Interim Basis and Setting Final Hearing [P-3], Exhibit A, ¶16.

[23] Application to Employ [P-3], Exhibit A, paragraph 6 ("Adams and Reese has also received a guaranty for fees and costs incurred in connection with it serving as counsel for the Debtor from Stephanie Ridgeway, Stone Surgical, LLC and Stone Biotechnologies, LLC.").

[24] Suretyship is an accessory contract by which a person binds himself to a creditor to fulfill the obligation of another upon the failure of the latter to do so.  La. Civ. Code art. 3035.

[25] A surety who pays the creditor is entitled to reimbursement from the principal obligor.  La. Civ. Code art. 3049.

interest" in the debtor's case.[26]  A&R therefore should have supplemented its original Rule 2014 disclosure to reveal the firm's simultaneous representation of Stone Surgical in the appeal.

A&R apparently now suggests now that even if the Code and Rules required it to amend its disclosure, it only failed through "inadvertent oversight."  The firm explains that it didn't amend its disclosure in the bankruptcy case because Ridgeway independently contacted different A&R lawyers in the same office for bankruptcy and appellate representation.[27]  The argument is unpersuasive.

A professional's oversight does not excuse its failure to supplement prior disclosures relating to employment when the Code or Rules require it.[28]  Surely A&R's bankruptcy lawyers, who are familiar with the duties accompanying representation of a chapter 11 debtor in possession, learned of their colleague's representation in the appellate matter in time to seasonably amend the firm's Rule 2014 disclosure.

To summarize, A&R should have disclosed its taking on Stone's representation in the appeal court because Stone is an insider of the debtor and creditor through its guaranty of A&R's fees.  A&R is not a novice to these issues: it has suffered judicial reproach and reduction in compensation in at least one other case for a similar failure of disclosure.  *Matter of Am. Int'l Refinery, Inc.*, 676 F.3d at 465-6.

---

[26]  *See* 11 U.S.C. §101(5)(A) (*claim* means right to payment, whether or not contingent).  This contingent liability makes Stone Ridgeway's creditor; and 11 U.S.C. §101(10) (defining *creditor* as an entity that has a pre-bankruptcy claim against a debtor).

[27]  Debtor's Supplemental Brief in Support of Adams and Reese, LLP's Applications for Compensation [P-507], ¶¶18-19.

[28]  *E.g., Jensen v. U.S. Trustee (In re Smitty's Truck Stop, Inc.)*, 210 B.R. 844, 849 (B.A.P. 10th Cir. 1997) (Mere oversight does not excuse attorney's failure to file supplemental disclosure statement to correct omission of pre-petition retainer); *In re Lewis*, 309 B.R. 597, 605 (Bankr. N.D. Okla. 2004) ("The fact that the failure to properly disclose may have been the result of negligence or inadvertence does not 'vitiate the failure to disclose.'").

The next issue is the effect on A&R's fee applications of its failure to amend its Rule 2014 disclosure.  Bankruptcy courts have broad discretion in awarding fees when an applicant has failed to comply with the Bankruptcy Code and Rules' disclosure mandates.[29]

Apart from the issue of payment for A&R's services in connection with the appeal, Stryker offered no evidence supporting a finding that A&R acted in any way inconsistent with its undertaking for the debtor in possession, or specifically to benefit Stone Surgical or the other guarantors of its fees.  Another factor weighing against the imposition of a heavy sanction is the debtor's successful reorganization: Ridgeway eventually confirmed a plan providing for full payment of allowed claims with interest as well as an escrow for Stryker's prepetition unsecured claim.  Still, A&R has suffered a reduction in compensation before for failing to make required disclosures in a chapter 11 reorganization and is on notice of its consequences.[30]  Its failure to make required disclosures warrants a fee reduction of $25,000.

### 3.  A&R is Not Entitled to Payment for Clerical Work at Paralegal Rates

Stryker also objected to payment for time A&R's paralegal staff expended performing clerical tasks.  A&R offered the testimony of Vicki Owens, its paralegal who worked on the Ridgeway matter, in response to the objection.  A table reflecting the services of Ms. Owens

---

[29]  *In re US Bentonite, Inc.*, 536 B.R. 948, 958 (Bankr. D. Wyo. 2015) ("Although the failure to disclose warrants total denial of compensation, this Court has wide discretion to determine whether full or partial denial or disgorgement of fees and expenses is appropriate."); *In re B.E.S. Concrete Prod., Inc.*, 93 B.R. 228, 237 (Bankr. E.D. Cal. 1988) (A court has discretion to deny fees for failure to comply with the disclosure requirements); and *C & C Demo, Inc.*, 273 B.R. at 508 ("The honest and comprehensive compliance by a proposed professional with these disclosure regulations plays such a vital role in maintaining the integrity of the bankruptcy system that a bankruptcy court is compelled to enforce them in an aggressive manner.  Bankruptcy jurisprudence is replete with references to the power, authority and duty of the bankruptcy court to police the disclosure requirements of the Bankruptcy Code and Rules with its sanction powers, including the option to order the disgorgement of all sums received by counsel and the forfeiture of all compensation paid to counsel in a particular case, regardless of whether the undisclosed connections were materially adverse or only of a *de minimis* nature.").

[30]  *Matter of American International Refinery, Inc.*, 676 F.3d 455, 465 (5th Cir. 2012), affirming 436 B.R. 364 (Bankr. W.D. La. 2010) (Summerhays, J.).

and—to a far lesser extent—other A&R paralegals, totaling 347.5 billable hours (or $31,275.00)[31] is Appendix 1 to this memorandum opinion.

Capable legal secretaries and paralegals are indispensable to a modern commercial law practice. However, "[t]he mere fact that a person has a paralegal certificate does not transport that person's work from clerical to paralegal, any more than it elevates such tasks as copying, organizing files, typing, or filing and delivering pleadings, if performed by a person who has a law degree and has been admitted to the bar, into legal work."[32] As one court has noted, "[t]he focus is on the particular task itself, and not on the title of the person who performed [the task]. To determine whether a paraprofessional's work is compensable, a court should look at the kind of services traditionally charged to overhead, the amount of discretion allowed to the paraprofessional, the experience or education required to accomplish the assignment, the responsibility delegated to the paraprofessional and the amount of supervision retained by the professional."[33]

Specialized training and judgment based on experience are not necessary for performing clerical tasks including typing or reproduction of correspondence; preparing documents for electronic filing and service; filing documents in the court's CM/ECF system; and preparation of mailings. Those clerical services are not separately billable; they are a component of the lawyer's hourly rate, much like utility service, rent and other office overhead. A&R billed 105

---

[31] 347.5 hours x $90.00/hour = $31,275.00.

[32] *Lalla v. City of New Orleans,* 161 F.Supp.2d 686, 710–711 (E.D. La. 2001); *See also Missouri v. Jenkins,* 491 U.S. 274, 288 n.10, 109 S.Ct. 2463, 105 L.Ed.2d 229 (1989) ("purely clerical or secretarial tasks should not be billed at the paralegal rate, regardless of who performs them"); *Interfaith Cmty. Org. v. Honeywell Int'l, Inc.*, 336 F. Supp. 2d 370, 393 (D.N.J. 2004), *aff'd in part, vacated in part* on other grounds, 426 F.3d 694 (3d Cir. 2005), *as amended* (Nov. 10, 2005) ("Generally, paralegal time devoted to clerical tasks is not reimbursable"); *Blakey v. Continental Airlines, Inc.,* 2 F.Supp.2d 598, 605 (D.N.J.1998) ("[A]dministrative tasks, such as arranging office space, should come under firm overhead and should not billed to the client as paralegal (or attorney) work.").

[33] *In re Nelson,* 2017 WL 449581 at *3 (Bankr. E.D. Wis. Feb. 1, 2017).

hours under the classification "General Administration, indexing, filing, service list maintenance." The descriptions of tasks performed include making copies, assembling binders, and researching task codes. These are *prima facie* examples of clerical tasks that should not have been separately billed at paralegal rates.[34]

A&R points to the bankruptcy court's prior awards of compensation to Stryker's local counsel for similar services. Its response omits whether the court awarded those fees over an objection of a party in interest; and in fact the records of the cases in which those awards were made do not reflect that any party objected to any of the cited applications for compensation. In contrast, Stryker objected to A&R's fee applications and thus brought the issue before the court.

A&R is not entitled to payment of paralegal rates for purely clerical or administrative tasks and the $31,275.00 it billed Ridgeway for paralegal time for that work is not allowable.

### 4.  A&R Fees Will Be Reduced for Unnecessarily Redacting Time Entries

Applications for compensation must disclose enough information about the applicant's services to support an award of fees. 11 U.S.C. §330; Local Rule 2016-1(B)(1).[35] The applicant bears the burden of establishing entitlement to an award by documenting the hours expended and hourly rates. *Louisiana Power & Light Co. v. Kellstrom*, 50 F.3d 319 (5th Cir. 1995). The applicant should maintain billing time records in a manner that will enable a reviewing court to identify distinct claims, *id.* at 324, and allow it to determine the reasonable number of hours

---

[34] In addition to showing time billed for clerical tasks, the billing statements also reflect a tendency toward "unit billing," which is inconsistent with the lodestar method of awarding fees. *E.g., In re Holub*, 129 B.R. 293, n.1 (Bankr. M.D. Fla. 1991). Many times Ms. Owens billed .5 hours *for each item* she filed into the court's CM/ECF system. For example, but by no means intended as an exclusive list, on June 21, 2016, she billed .5 hours each to electronically file two different documents; on July 7, 2016 she billed .5 hours each to electronically file three documents; and on April 12, 2017, she billed .5 hours for filing each of six documents.

[35] Local Bankruptcy Rule 2016-1(B)(1) require applicants for fees to submit "A listing of all time for which compensation is requested, whether it be attorney, paralegal, or law clerk; the amount of time devoted to the case on each date; *and the legal services performed in that time.*" (emphasis supplied).

expended on a matter.  *SCA Promotions, Inc. v. Yahoo!*, 2016 WL 8223206 at \*9 (N.D. Tex.

Nov. 21, 2016), *citing Watkins v. Fordice*, 7 F.3d. 453 (5th Cir. 1993).  A court may reduce or

even deny requested fees when the supporting documentation is too vague to permit meaningful

review.  *Id.; see also Louisiana Power & Light*, 50 F.3d at 324 ("[A] district court may reduce

the number of hours awarded if the documentation is *vague* or *incomplete*." (emphasis in

original)).

    Redaction of time records defeats all these requirements and in some cases has led courts

to disallow fees completely.  For example, in *Frazin v. Haynes and Boone, LLP, et al.* (*In re

Frazin*), 2017 WL 7050632*, *31 (N.D. Tex. 2017), the applicant's heavily redacted timesheets

left the court unable to determine, among other things, whether the services performed

reasonably required the time expended, involved any novel or difficult legal questions or

required the level of skill of the person performing them; whether the charges for the services are

similar to the customary charges of others performing similar services; or were performed under

any particular time constraints.  *Id.* at 32*.  See also SCA Promotions,* where the court reduced an

attorney's fee award by twenty percent where billing statements were heavily redacted, among

other deficiencies.

    The billing statements attached to A&R's applications and entered into evidence were

replete with redacted entries (totaling $192,886.50) that left the court and others unable to

evaluate the necessity of the services—and as a result, whether they should be allowed.[36]  The

court agreed, with A&R and Stryker's consent, to review the unredacted billing statements *in

camera*.  Its *in camera* review revealed that A&R unnecessarily redacted many time entries, most

---

[36]  The United States Trustee did not object to the redacted time entries in the applications for reasons that the record
does not reveal.

Case 16-10643   Doc 680   Filed 02/27/18   Entered 02/27/18 16:01:33   Main Document
Page 14 of 36

of which did not reveal any attorney-client confidences. Several redactions are of one word,

which context clearly indicates was not privileged information. By way of illustration:

| Date | Timekeeper | Hours /Cost | Redacted Narrative | Unredacted Narrative |
|------|-----------|-------------|--------------------|----------------------|
| 8/18/16 | McCune | 2.2 hrs $638 | Assimilate [redacted] from debtor for Disclosure Statement regarding work history, litigation. | Assimilate data from debtor for Disclosure Statement regarding work history, litigation. [37] |
| 2/07/17 | Cheatham | 4.9 hrs $2205 | Receive and review [redacted] of revised plan (.90); receive and review revised redlined Plan (1.40); further revisions to redlined Plan (1.50); receive and review further revised Plan (1.10) | Receive and review outline of revised plan (.90); receive and review revised redlined Plan (1.40); further revisions to redlined Plan (1.50); receive and review further revised Plan (1.10) [38] |

Many other similar entries bear similar redactions. Additionally, in literally scores of

time entries involving telephonic or other electronic communications, A&R redacted the identity

of the person the A&R professional contacted together with the subject of the communication.

The A&R professional may have telephoned a mechanic about an oil change, a cafe about a

lunch order or a barber about a haircut. The redacted billing statements gave Stryker, the United

States Trustee and the court nothing on which to evaluate whether the estate should bear the cost

of the time charged.[39]

---

[37] 2.20 hours x Patrick McCune's hourly rate of $290 = $638.00.

[38] 4.90 hours x Robin Cheatham's hourly rate of $450 = $2205.00.

[39] The excessive redactions evoke Joseph Heller's novel *Catch-22*, in which the hospitalized Yossarian breaks the monotony by censoring enlisted men's letters, blacking out adjectives, adverbs, articles and eventually even names and addresses of correspondents.

A&R's redactions unnecessarily required the court's *in camera* review of its *unredacted* fee statements,[40] leading to a finding that most of the redacted entries did not merit redaction.

A&R contends that the redacted time entries were shielded from review by the attorney-client privilege or work product doctrine. However, it cannot rely on the attorney-client privilege on one hand and on the other seek payment for services it described incompletely.[41] Further, confidentiality of the information sought to be protected from disclosure is essential to a valid claim of attorney-client privilege or the work product doctrine. A&R's redactions are premised on the wrongheaded assumption that *any* description of *any* service in a billing statement is confidential. The firm is far too experienced in bankruptcy matters to have adopted that approach.

Associates working on the appeal with Mr. LaCour made most of the time entries that arguably did reveal appellate strategy or confidential information. For many of those entries, redaction may have been appropriate because the text of the billing statements gave details of strategy.[42]

---

[40] The court's indulgence in opting for an *in camera* review spared A&R from disallowance of all fees for services with redacted descriptions. *Compare In re Las Vegas Monorail Co.*, 458 B.R. 553, 559 (Bankr. D. Nev. 2011) (disallowing fees for redacted billing entries.); *Reid v. Unilever United States, Inc.*, 2015 WL 3653318 at *8 (N.D. Ill. June 10, 2015), *aff'd sub nom. Martin v. Reid*, 818 F.3d 302 (7th Cir. 2016) (disallowing payment for excessively redacted time entries); *Randolph v. Dimension Films*, 634 F. Supp. 2d 779, 800 (S.D. Tex. 2009) ("Redacted entries must be excluded if they do not provide sufficient information to classify and evaluate the activities and hours expended"); and *In re Frazin*, 2017 WL 7050632 at *31.

[41] *See Ideal Electr. Sec. Co. v. Int'l Fidelity Ins. Co.*, 129 F.3d 143, 152 (D.C. Cir.1997) (attorney's fee request waives the attorney-client privilege with respect to billing statements and rejects as inadequate *in camera* review of unredacted billing statements). *Compare Essex Builders Group, Inc. v. Amerisure Ins. Co.*, 2007 WL 700851 at 1–2 (M.D. Fla. Mar. 1, 2007) (privilege as to contents of billing records was waived upon placing those records at issue with motion for fees and denying a motion to submit the records under seal for *in camera* review).

[42] Even that conclusion is debatable because most of the proceedings in the appeals court had concluded by September 1, 2017, the date this court heard the fee applications. Mr. LaCour argued the appeal in the Sixth Circuit on February 1, 2017. The Sixth Circuit rendered its opinion affirming the district court on May 24, 2017 and denied the debtor and Stone's petition for *en banc* rehearing on July 12, 2017. A&R's original fee applications were filed June 12, 2017, and the amended applications on July 21, 2017. The debtor had not yet petitioned the Supreme Court for a writ of *certiorari* when the fee applications were filed. That petition was filed October 10, 2017 and denied January 8, 2018.

Most other redactions did not mask information that was confidential.  For example, A&R redacted descriptions of routine correspondence with the debtor forwarding notices filed in the bankruptcy case record, correspondence from other lawyers, transmitting for Ridgeway's signature monthly operating reports, or concerning various claims (none of which are either privileged or confidential).[43]

The better practice is to describe the professional's services carefully so as to give information adequate for both the court's and creditors' review without disclosing confidential information.  Indeed, some A&R timekeepers understood the need to preserve client confidences and work product while describing their activities sufficiently to enable review of the application.  For example, Scott Cheatham billed two hours on February 10, 2017 for correspondence with the debtor regarding issues concerning two motions and the plan.  The original description of the services was judicious and revealed no confidential information.  Similarly, on December 2, 2016, Patrick McCune billed half an hour for a conference call with the debtor concerning a disputed claim, sensibly describing his services without revealing strategy or confidences.  In both instances neither (1) the fact of the communications nor (2) that they related to motions, the plan and claims were privileged.  Still, A&R redacted the entries as it did the descriptions of literally hundreds of other entries.

A&R mistakenly relies on *Offshore Marine Contractors, Inc. v. Palm Energy Offshore, LLC*[44] to characterize its billing statements as privileged.  Judge Vance there held that descriptions in invoices that had been submitted for *in camera* review "provide a fairly fine-

---

[43]  A&R appears to have redacted descriptions of its communication with Ridgeway from every single time entry on the billing statements.

[44]  2014 WL 5039670 (E.D. La. Sept. 25, 2014).

grained picture of [the applicant's] litigation strategy"[45] and so were privileged.  In contrast, A&R's unredacted billing statements expose virtually no confidential information, much less its tactics or strategy.

To summarize, few of the redacted time entries touched on attorney-client or work product material.  A&R used a broad brush in redacting its billing statements, which the billing statements show were redacted by non-attorney staff, apparently without proper supervision or a lawyer's later review.  The applicant's injudicious redactions have wasted court resources spent reviewing the application.  They needlessly delayed this ruling and merit disallowance of compensation sought for preparing the fee application.

A&R charged $11,736.00 for 130.4 hours of secretarial time for preparation of the fee applications.[46]  An A&R lawyer should have edited the description of services to protect genuinely privileged information or at worst, reviewed the proposed redactions.[47]  A&R's indifference in favor of an *in camera* review has wasted the court's more limited time and resources and warrants a $10,000 reduction in its fees.

### FURTHER ADJUSTMENTS TO A&R'S COMPENSATION

*In camera* review of A&R's fee applications brought to light other issues with applications that merit reductions.

---

[45] *Id.* at 85.

[46] 130.4 hours x $90/hour = $11,736.00.  Ms. Owens charged a total of 95.7 hours for work on the billing statement for the period beginning December 2, 2016 and another 34.7 hours on the appellate billing statement for the period that begins January 10, 2017.

[47] *See Case v. Unified Sch. Dist. No. 233*, 157 F.3d 1243, 1254 (10th Cir. 1998) ("An award of reasonable attorneys' fees may include compensation for work performed in preparing and presenting the fee application." [internal citations omitted]).

### 1.  A&R'S Fees for Appellate Work were Excessive

A&R applied for nearly $1 million in legal fees for a personal chapter 11 case and an appeal, an impressive sum even considering the contentious litigation that led to the bankruptcy filing and continued through the reorganization.  A&R's charging the debtor $481,774.24 for its work appealing an adverse judgment of $745,195.00 is excessive.[48]  The testimony and billing records for the appellate work support that conclusion.

Mr. LaCour, lead appellate counsel, testified that for months he spent most of his time, as did two associates, occasionally with the help three more lawyers, to prepare and argue the appeal.  LaCour testified to the widely acknowledged need for knowledge of the trial court record to success on appeal but denied that A&R's fees for the work were excessive.  Mr. LaCour insisted that the time A&R devoted to the appeal was essential to master the trial court record and manage the appellate briefing and argument schedule.  Though no evidence supports a finding that A&R lawyers did not actually devote the time they billed to the appeal, Mr. LaCour's testimony justifying the extensive time spent on the appeal was not convincing.

A&R's argument that the appeal imposed unique timing challenges also is not convincing: all appeals save the most complex matters are governed by briefing deadlines in the Federal Rules of Appellate Procedure.  Nothing in the record supports a finding that Ridgeway and Stone Surgical's appeal was so complex.[49]

---

[48]  Mr. LaCour repeatedly testified at the hearing that Stone Surgical's role on appeal was nominal and that it was fair and reasonable to expect Ridgeway alone to shoulder the burden of paying for the appeal.  *But see* note 55, below.

[49]  A delay in assembling the record on appeal may afford an appellant some relief from time pressures but otherwise the briefing schedule is relatively swift.  *See* Fed. R. App. P. 31.  A&R actually enjoyed an extension of briefing during the appeal.  Order by 6th Cir. granting consolidation of cases and briefing schedule, Case No. 16-1434, P-23.  *See also* the court's Consolidated Briefing Schedule [P-24] moving the original appellant briefing deadline from June 17, 2016 [established in P-17] to August 1, 2016.

A review of the billing statements for the appellate work supports a finding that A&R lawyers imprudently spent excessive amounts of time handling the appeal. For example, Mr. LaCour himself charged 35.2 hours between December 2 and 12, 2016, preparing for oral argument on unsettled issues of law, using identical word for word descriptions for his services on each of those dates. Mr. LaCour studied briefs on issues for a total of 11.9 hours on December 13 and 14, his activities on both days described in the very same language. Between January 12 and 19, 2017, he billed 33.4 hours for analyzing the record on appeal. LaCour charged 26.3 hours between January 20 and 25, 2017, for services described almost identically on each day as "review briefs, cases, and prepare for argument," with another 36.1 hours preparing for oral argument in the three days from January 28 and February 1, 2017, the last of which was the date of the Sixth Circuit argument. These hours are in addition to time A&R's professionals devoted to appellate briefing: 393.4 hours. Even if calculated using the lowest hourly rate for any of the three lawyers participating in briefing,[50] A&R's charge for briefing the appeal would total $123,921.[51]

The billing statements also reveal charges for multiple conferences and telephone conferences about appeal matters among A&R lawyers on June 30; July 7, 11 and 12; August 8; and September 16 and 28, 2016. Louis LaCour and L. Oswalt Watson each billed .8 hours to the client for speaking with each other on "appellate outlook" on June 30, 2016. On July 7, 11, and 12, A. McLeod and L. Oswalt Watson each billed the client for time spent discussing with each other which arguments to use in the appellate brief. Further, on August 8 both lawyers charged

---

[50] L. Oswalt Watson's hourly rate for the initial application was $315. However, most of the fees were charged at a higher hourly rate.

[51] This sum does not include A&R's charges for preparing the petition for a writ of certiorari to the United States Supreme Court, which took place after the court confirmed the debtor's plan and therefore was not included in the applications.

the client .5 hours for discussing between themselves a motion to compel Stryker to produce

privileged e-mails.  In early September, A. McLeod and L. Oswalt Watson again each billed the

client .5 hours to discuss A&R's reply to Stryker's objection and on September 28 they each

billed the client .7 hours for discussing waiver arguments raised by Stryker.  For both attorneys

to charge time for conferring between themselves is excessive.  *In re King*, 546 B.R. 682, 727

(Bankr. S.D. Tex. 2016).  *See also In re Office Prod. of Am., Inc.*, 136 B.R. 964, 977 (Bankr.

W.D. Tex. 1992) ("Even when an intraoffice conference is justified, only one attorney may

charge for it unless the necessity for each attorney's participation is explained.")  Charges for all

but one of the participants' time for these intra-office conferences are disallowed.

To summarize, "the court's supervisory power is not limited to the situation in which the

fees are ethically excessive.  Courts can limit fee requests that exceed the outer limit of

reasonableness, where the fee 'has resulted in such an enrichment at the expense of the client that

it offends a court's sense of fundamental fairness and equity.'  A fee can exceed the outer limit of

reasonableness 'without necessarily being so "clearly excessive" as to justify a finding of a

breach of ethics.'"[52]

The evidence supports awarding A&R a fee of $300,000 for prosecuting the appeal on

behalf of both Ridgeway and Stone Surgical.[53]

### 2.  Stone Surgical Must Bear Half the Fees for the Appeal

The next issue is the portion that the estate should bear.  Stryker contends that Stone

Surgical should pay half of the fees A&R seeks for its appellate work because A&R represented

---

[52]  *United States v. Overseas Shipholding Grp., Inc.*, 625 F.3d 1, 9 (1st Cir. 2010).

[53]  *E.g.,* La. Prof. Conduct Rule 1.5(a)(4) prohibits a lawyer from collecting unreasonable fees and uses the amount involved in the dispute and the results obtained to inform a finding of reasonableness.  *See also Migis v. Pearle Vision, Inc.*, 135 F.3d 1041, 1048 (5th Cir. 1998) (failure to give adequate consideration to the result obtained relative to the fee award was abuse of discretion).

both Ridgeway and Stone[54] in the appellate court.  In response, A&R maintains that Stone

Surgical was only nominally a party in the Michigan litigation, though it concedes that Stone

would have benefitted had the court of appeals reversed the trial court.[55]  A&R argues against

dividing the total sought between Ridgeway and Stone but offers no specific suggestion for

reducing the debtor's share of the bill.[56]

   Stone is a classic free rider: it seeks to pay nothing for A&R's services on appeal even

though success on appeal would revive a presumably valuable claim against Stryker and

---

[54] Stone Surgical does not have separate representation in this chapter 11 case although it played an important role in the debtor's confirmed plan.  Specifically, the debtor, his wife and Stone Surgical bound themselves *in solido* to pay all amounts due under consolidated promissory notes secured by debtor's property.  See P-325, p. 20.  Thus A&R's clients' interests may conflict on the issue of payment of legal fees, especially if the debtor cannot for some reason pay.  *See In re Bergdog,* 7 B.R. 890, 891 (Bankr. D. Hawaii 1980) ("By taking payment from stockholders of the Debtor and by obtaining a guarantee of further payments from these individuals for services rendered to the Debtor, the Attorney for the Debtor will be in a conflict of interest situation"); *In re Senior G & A Operating Company, Inc.,* 97 B.R. 307 (Bankr. W.D. La. 1989) (holding that guaranty of debtor's attorneys' fees may raise a question about counsel's duty of undivided loyalty to the Debtor).  *Compare Matter of American International Refinery, Inc.*, 676 F.3d 455, 461-3 (declining to adopt *per se* rule that guarantee of fees by insider creates a conflict and requiring an examination of the totality of the circumstances).

[55] A&R Supp. Memo [P-507] at ¶14.  Mr. LaCour testified that Stone was a "tag along" in the litigation and A&R still discounts Stone's role in the litigation and appeal.  Its volte-face on the issue is perplexing given its earlier filings in this case portraying Stone's role in the litigation and ensuing appeal: "Stone Surgical, which filed its own action [Mich. Doc. 340] against Stryker\Howmedica, now consolidated into the Michigan Action, ***remains actively engaged in that litigation***.  Following the Judgment on May 9, 2016, Stone Surgical filed an appeal of the same, which is now consolidated with a similar appeal of the Debtor before the Sixth Circuit."  Debtor's Supplemental Objection to Proof of Claim Filed by Stryker Corporation and Howmedica Osteonics Corp. [P-384], pp. 2-3 (emphasis supplied).

[56] A&R Supp. Memo [P-507] at ¶15: "[T]he Court … should not merely cut the compensation in half.… Instead, A&R's compensation should only be reduced by any amount the Court finds was unnecessary to its representation of Ridgeway alone."  In any case, the evidence supports a finding that A&R could not suggest an appropriate allocation of fees between Ridgeway and Stone even if it desired to (or could do so ethically): Mr. LaCour testified that it "never made sense" to divide work on the appeal between Stone and Ridgeway because the issues for both parties were identical.

Howmedica.[57]  Stone Surgical stood to benefit had its appeal succeeded and permitted it to

pursue $165 million in state law claims, and so it should bear part of the cost of the appeal.[58]

Assessing half of the fees to Stone is neither unreasonable nor unfair to A&R or Stone.

The latter personally guaranteed A&R's fees for the Ridgeway engagement; the former bargained

to accept payment from Stone Surgical if for any reason Ridgeway or his bankruptcy estate were

unable to pay the fees.  Accordingly, of the $300,000 the court deems reasonable for the appeal,

A&R is entitled to payment of $150,000 from Ridgeway; it may seek the balance from Stone

Surgical.

## CONCLUSION

In summary, the court by separate order today awards A&R on a final basis fees of

$402,238.00 and $17,489.52 in costs for its work on the debtor's bankruptcy, and fees of

$150,000.00 and $3,580.87 in costs for its work on the debtor's appeal.

Baton Rouge, Louisiana, February 27, 2018.

<u>**s/ Douglas D. Dodd**</u>
DOUGLAS D. DODD
UNITED STATES BANKRUPTCY JUDGE

---

[57]  Supplemental Brief in Support of Stryker Corporation's and Howmedica Osteonics Corp.'s Objections to Adams and Reese's Application for Compensation [P-503], ¶3: "In the Sixth Circuit Appeal, Stone sought to resurrect claims in the amount of *$165 million* previously dismissed by the District Court whereas Debtor was only challenging Stryker's $3.45 million Proof of Claim." (emphasis in original).

[58]  Stryker's and Howmedica's Supplemental Brief in Support of Objection to Application for Compensation [P-503], ¶3.

V. Owens billed clerical hours breakdown

| | |
|---|---|
| PrepReviewEfilings | 94.7 |
| Correspondence | 30.8 |
| TeleConf/Meetings | 6.8 |
| Trial Prep / Depo | 12.1 |
| Discovery | 0.9 |
| Plan | 34.1 |
| Admin and Misc. | 143.6 |
| **SUBTOTAL:** | **323.0** |

Other paralegal billed clerical hours breakdown

| | |
|---|---|
| A. Kelley | 24.5 |
| **SUBTOTAL:** | **24.5** |
| **GRAND TOTAL:** | **347.5** |

PREP/REVIEW/E-FILING

| Name | Date | Time | Summary |
|------|------|------|---------|
| V. Owens | 4/7/16 | 0.5 | e-file |
| V. Owens | 4/14/16 | 3.0 | Notice of hearing; COS; e-file |
| V. Owens | 4/20/16 | 0.8 | Notice of hearing and COS |
| V. Owens | 4/21/16 | 0.5 | e-file |
| V. Owens | 4/27/16 | 0.5 | e-file |
| V. Owens | 5/5/16 | 1.5 | COS and e-file |
| V. Owens | 6/2/16 | 0.5 | e-file |
| V. Owens | 6/3/16 | 3.2 | Notice of hearing; COS; e-file |
| V. Owens | 6/7/16 | 1.0 | COS and e-file |
| V. Owens | 6/10/16 | 4.0 | Notice of hearing; COS; e-file |
| V. Owens | 6/17/16 | 1.1 | COS and e-file |
| V. Owens | 6/21/16 | 1.9 | CoS on Ex Parte, efile, CoS on commencement, efile |
| V. Owens | 7/6/16 | 1.0 | Notice of hearing and COS |
| V. Owens | 7/7/16 | 3.5 | Notice of hearing; COS; e-file |
| V. Owens | 7/7/16 | 1.5 | e-file |
| V. Owens | 7/11/16 | 1.5 | e-file |
| V. Owens | 7/19/16 | 0.5 | e-file |
| V. Owens | 7/20/16 | 1.9 | COS and e-file |
| V. Owens | 7/21/16 | 3.0 | COS and e-file |
| V. Owens | 7/26/16 | 0.7 | Prep: CoS, efile rejection of executory contracts |
| V. Owens | 8/3/16 | 0.4 | Formatting motions |
| V. Owens | 8/8/16 | 2.0 | COS and e-file |
| V. Owens | 8/9/16 | 0.8 | COS and e-file |
| V. Owens | 8/12/16 | 2.3 | COS and e-file |
| V. Owens | 8/16/16 | 1.5 | e-file |
| V. Owens | 8/19/16 | 1.0 | COS and e-file |
| V. Owens | 8/23/16 | 1.0 | Notice of hearing and COS |
| V. Owens | 8/24/16 | 1.0 | Notice of hearing and COS |
| V. Owens | 8/25/16 | 4.5 | Notice of hearing; COS; e-file |
| V. Owens | 8/26/16 | 6.3 | Notice of hearing; COS; e-file |
| V. Owens | 8/30/16 | 0.5 | e-file Answer and Aff Defenses |
| V. Owens | 9/2/16 | 1.0 | COS and e-file |
| V. Owens | 9/6/16 | 1.0 | COS and e-file |
| V. Owens | 9/7/16 | 0.5 | e-file |
| V. Owens | 9/20/16 | 2.3 | Format objection and e-file |
| V. Owens | 9/21/16 | 1.0 | COS and e-file |
| V. Owens | 9/22/16 | 1.0 | e-file |
| V. Owens | 9/23/16 | 2.1 | Notice of hearing; COS; e-file |
| V. Owens | 9/30/16 | 2.0 | COS and e-file |
| V. Owens | 10/4/16 | 2.0 | COS and e-file |
| V. Owens | 10/6/16 | 1.1 | COS and e-file |
| V. Owens | 10/18/16 | 1.8 | COS and e-file |
| V. Owens | 10/19/16 | 1.1 | COS and e-file |
| V. Owens | 11/7/16 | 1.0 | COS and e-file |
| V. Owens | 11/9/16 | 0.7 | e-file |
| V. Owens | 11/14/16 | 1.1 | COS and e-file |
| V. Owens | 11/29/16 | 1.0 | COS and e-file |
| V. Owens | 12/5/16 | 0.9 | COS and e-file |
| V. Owens | 1/25/17 | 1.0 | COS and e-file |
| V. Owens | 2/8/17 | 3.3 | COS; e-file; formatting docs; create exhibit cover sheets |
| V. Owens | 2/10/17 | 4.3 | COS; e-file; formatting docs |
| V. Owens | 2/13/17 | 1.0 | COS and e-file |

PREP/REVIEW/E-FILING

| Name | Date | Time | Summary |
|------|------|------|---------|
| V. Owens | 2/14/17 | 1.7 | COS and e-file |
| V. Owens | 2/15/17 | 1.1 | COS and e-file |
| V. Owens | 2/20/17 | 2.8 | COS; e-file; create exhibit labels |
| V. Owens | 3/2/17 | 2.2 | e-file |
| V. Owens | 3/8/17 | 1.0 | COS and e-file |
| V. Owens | 3/20/17 | 0.1 | COS and e-file |
| V. Owens | 3/31/17 | 0.2 | Format order |
| V. Owens | 4/4/17 | 1.0 | COS and e-file |
| | **Total** | **94.7** | |

# CORRESPONDENCE
Page 26 of 36

| Name | Date | Time | Summary |
|------|------|------|---------|
| V. Owens | 3/24/16 | 0.6 | Prep of email to Client |
| V. Owens | 4/4/16 | 0.6 | Email for review, comment, and revision of motions |
| V. Owens | 4/7/16 | 0.1 | Correspondence with Chambers Re: Exparte |
| V. Owens | 4/8/16 | 0.6 | Prep of email to Client re: status and updates |
| V. Owens | 4/11/16 | 0.2 | Prep of email to Client re: status and to Mr. Miller |
| V. Owens | 4/14/16 | 2.1 | Review of all client emails and organized docs into database |
| V. Owens | 4/15/16 | 0.1 | Prep of Email to Chambers |
| V. Owens | 4/20/16 | 0.3 | Prep of Emails to Mr. Caron |
| V. Owens | 4/21/16 | 0.6 | Retrieval of docs and emailed to Mr. Caron and Mr. Miller |
| V. Owens | 4/26/16 | 0.2 | Prep of email to Client and Mr. Miller |
| V. Owens | 4/27/16 | 0.2 | Email Chambers and Mr. Miller |
| V. Owens | 4/29/16 | 0.1 | Monthly operating report sent to Mr. Miller |
| V. Owens | 5/2/16 | 0.2 | Email to client in prep for meeting |
| V. Owens | 5/4/16 | 0.1 | Email to Chambers |
| V. Owens | 5/5/16 | 0.1 | Email to counsel |
| V. Owens | 5/6/16 | 0.1 | Email to Chambers |
| V. Owens | 5/17/16 | 0.2 | monthly expenses from client to Mr. Lloyd |
| V. Owens | 5/19/16 | 0.1 | email to client doc review before meeting |
| V. Owens | 6/1/16 | 0.1 | Email to counsel |
| V. Owens | 6/2/16 | 0.3 | Stipulation with T. Manthey, Waguespack, and Chambers |
| V. Owens | 6/9/16 | 0.2 | Email to client and Mr. Miller |
| V. Owens | 6/15/16 | 0.1 | Email to counsel |
| V. Owens | 6/17/16 | 0.2 | Email to Chambers |
| V. Owens | 6/20/16 | 0.1 | Email to Mr. Lloyd |
| V. Owens | 6/22/16 | 0.1 | Email to counsel |
| V. Owens | 6/30/16 | 0.1 | Email to Mr. Gros |
| V. Owens | 7/1/16 | 0.2 | Email to counsel |
| V. Owens | 7/5/16 | 0.2 | Email to Client |
| V. Owens | 7/7/16 | 0.8 | Emails to Creditors and Client |
| V. Owens | 7/8/16 | 0.1 | Email to counsel |
| V. Owens | 7/19/16 | 0.4 | Emails to counsel to Review and revise |
| V. Owens | 7/20/16 | 0.4 | Emails to counsel to Review and revise |
| V. Owens | 7/21/16 | 0.4 | Emails to counsel to Review and revise |
| V. Owens | 8/3/16 | 0.7 | Emails to counsel to Review and revise and to Chambers |
| V. Owens | 8/4/16 | 0.1 | Email to counsel |
| V. Owens | 8/5/16 | 1.4 | Email to counsel and Client Re: Financial Statements |
| V. Owens | 8/9/16 | 0.3 | Email to counsel for Review and revise |
| V. Owens | 8/10/16 | 0.1 | Email to counsel |
| V. Owens | 8/12/16 | 0.1 | Email to Chambers |
| V. Owens | 8/15/16 | 0.2 | Email to counsel |
| V. Owens | 8/16/16 | 0.1 | Email to Chambers |
| V. Owens | 8/18/16 | 0.1 | Email to Client |
| V. Owens | 8/19/16 | 0.1 | Email to Mr. Fullmer |
| V. Owens | 8/22/16 | 0.2 | Email to counsel x2 |
| V. Owens | 8/23/16 | 0.1 | Email to Ms. Nobles |
| V. Owens | 8/24/16 | 0.1 | Email to Ms. Nobles |

CORRESPONDENCE

| Name | Date | Time | Summary |
|------|------|------|---------|
| V. Owens | 8/26/16 | 0.2 | Email to Chambers x2 |
| V. Owens | 8/29/16 | 0.1 | Email to Ms. Nobles |
| V. Owens | 8/30/16 | 0.2 | Email to counsel and Mr. Waguespack |
| V. Owens | 8/31/16 | 0.1 | Email to Ms. Nobles |
| V. Owens | 9/2/16 | 0.4 | Email to Chambers x4 |
| V. Owens | 9/6/16 | 0.2 | Email to counsel x2 |
| V. Owens | 9/7/16 | 0.3 | Email to counsel and Chambers x2 |
| V. Owens | 9/13/16 | 0.1 | Email to Chambers |
| V. Owens | 9/14/16 | 0.1 | Email to Chambers |
| V. Owens | 9/15/16 | 0.4 | Emails to Client, Mr. Gros, and counsel |
| V. Owens | 9/16/16 | 0.1 | Email to Counsel |
| V. Owens | 9/19/16 | 0.2 | Email to Client |
| V. Owens | 9/20/16 | 0.1 | Email to Chambers |
| V. Owens | 9/21/16 | 0.5 | Email to Mr. Miller with compiled Operating Reports |
| V. Owens | 9/22/16 | 0.1 | Email to Chambers |
| V. Owens | 9/23/16 | 0.2 | Email to Chambers x2 |
| V. Owens | 9/26/16 | 0.1 | Email to Chambers |
| V. Owens | 9/27/16 | 0.4 | Email to Chambers x3 |
| V. Owens | 9/28/16 | 0.2 | Email to Mr. Waguespack and Counsel |
| V. Owens | 9/30/16 | 0.1 | Email to Chambers |
| V. Owens | 10/1/16 | 0.1 | Email to Client and Mr. Gros |
| V. Owens | 10/3/16 | 0.3 | Email to Chambers and emails to counsel |
| V. Owens | 10/13/16 | 0.5 | Email to Counsel for Review and revise |
| V. Owens | 10/17/16 | 0.1 | Email to Chambers |
| V. Owens | 10/18/16 | 0.2 | Email to Ms. Nobles and Ms. Wheat |
| V. Owens | 10/25/16 | 0.4 | Email to Client and Chambers |
| V. Owens | 10/27/16 | 0.2 | Forwarding Email from Counsel to Mr. Fuller |
| V. Owens | 10/28/16 | 0.6 | Email to counsel for Review and revise |
| V. Owens | 11/7/16 | 0.1 | Email to Clerk of Court |
| V. Owens | 11/8/16 | 0.1 | Email to Bankruptcy Court |
| V. Owens | 11/9/16 | 0.1 | Email to Chambers |
| V. Owens | 11/15/16 | 0.1 | Email to Counsel |
| V. Owens | 11/21/16 | 0.3 | Email to counsel for Review and revise |
| V. Owens | 12/5/16 | 0.2 | Email to Counsel |
| V. Owens | 12/13/16 | 0.8 | Email to Mr. Miller with compiled Operating Reports |
| V. Owens | 12/14/16 | 0.2 | Email to Counsel |
| V. Owens | 12/15/16 | 0.5 | Email to Client |
| V. Owens | 12/16/16 | 0.2 | Email to Mr. Miller with compiled Operating Reports |
| V. Owens | 12/19/16 | 1.0 | Email to Counsel |
| V. Owens | 1/3/16 | 0.2 | Email with Monthly Operating Reports |
| V. Owens | 1/3/17 | 0.1 | Email to Counsel |
| V. Owens | 1/9/17 | 0.2 | Email to Client |
| V. Owens | 2/2/17 | 0.1 | Email to Whalen Documents via Counsel |
| V. Owens | 2/7/17 | 0.5 | Email to Ms. Scott |
| V. Owens | 2/10/17 | 0.2 | Email to Client |
| V. Owens | 2/14/17 | 0.1 | Email to Ms. Bosworth |

CORRESPONDENCE

| Name | Date | Time | Summary |
|------|------|------|---------|
| V. Owens | 2/15/17 | 0.8 | Prepared multiple emails and motions |
| V. Owens | 3/1/17 | 0.7 | Email to chambers |
| V. Owens | 3/2/17 | 0.6 | Email to chambers |
| V. Owens | 3/7/17 | 0.2 | Email to Client |
| V. Owens | 3/9/17 | 0.3 | Email to Mr. Ridgeway |
| V. Owens | 3/15/17 | 0.1 | Email to Mr. Fugarino re: Whitney claim |
| V. Owens | 3/20/17 | 0.8 | Email to Chambers (multiple) |
| V. Owens | 3/27/17 | 0.1 | Email to Clerk of Court |
| V. Owens | 3/31/17 | 0.1 | Email to Chambers |
| V. Owens | 4/3/17 | 0.2 | E-mail to counsel |
| V. Owens | 4/5/17 | 0.1 | Email to Ms. Wesley |
| V. Owens | 4/10/17 | 0.1 | Email to Mr. Fugarino re: Whitney claim |
| V. Owens | 4/11/17 | 0.3 | Email to confirm post petition obligation |
| V. Owens | 4/13/17 | 1.1 | Email to Ms. Wesley |
| | **Total** | **30.8** | |

## PHONE CONF/MEETINGS

| Name | Date | Time | Summary |
|------|------|------|---------|
| V. Owens | 4/8/16 | 0.5 | Phone conversation |
| V. Owens | 4/11/16 | 1.0 | Meeting with Counsel |
| V. Owens | 4/20/16 | 0.5 | Phone conversation |
| V. Owens | 4/21/16 | 0.2 | Phone conversation |
| V. Owens | 4/29/16 | 0.4 | Phone conversation |
| V. Owens | 7/7/16 | 0.2 | Phone conversation |
| V. Owens | 7/8/16 | 0.1 | Phone conversation |
| V. Owens | 7/11/16 | 0.1 | Phone conversation |
| V. Owens | 8/26/16 | 0.3 | Phone conversation |
| V. Owens | 8/29/16 | 0.1 | Phone conversation |
| V. Owens | 9/23/16 | 0.1 | Phone conversation |
| V. Owens | 9/27/16 | 0.5 | Phone conversation |
| V. Owens | 10/3/16 | 0.2 | Phone conversation |
| V. Owens | 10/5/16 | 0.1 | Phone conversation |
| V. Owens | 10/18/16 | 0.1 | Phone conversation |
| V. Owens | 11/4/16 | 0.3 | Phone conversation |
| V. Owens | 12/5/16 | 0.1 | Phone conversation |
| V. Owens | 2/7/17 | 0.3 | Phone conversation |
| V. Owens | 2/8/17 | 0.2 | Phone conversation |
| V. Owens | 2/20/17 | 0.6 | Phone conversation |
| V. Owens | 2/21/17 | 0.1 | Phone conversation |
| V. Owens | 3/7/17 | 0.1 | Phone conversation |
| V. Owens | 3/9/17 | 0.1 | Phone conversation |
| V. Owens | 3/13/17 | 0.1 | Phone conversation |
| V. Owens | 4/5/17 | 0.2 | Phone conversation |
| V. Owens | 4/11/17 | 0.2 | Phone conversation |
| V. Owens | 4/13/17 | 0.1 | Phone conversation |
| | **Total** | **6.8** | |

TRIAL PREP/DEPOSITIONS

| Name | Date | Time | Summary |
|------|------|------|---------|
| V. Owens | 7/19/16 | 0.5 | Exhibit Preparation |
| V. Owens | 9/2/16 | 1.2 | Exhibit Preparation |
| V. Owens | 10/5/16 | 0.7 | Preparation of Documents |
| V. Owens | 10/31/16 | 4.5 | Retrieval and Duplication of Exhibits |
| V. Owens | 11/1/16 | 3.1 | Retrieval and Duplication of Exhibits |
| V. Owens | 11/28/16 | 0.3 | Exhibit Preparation |
| V. Owens | 1/5/17 | 0.9 | Retrieval of docs |
| V. Owens | 2/13/17 | 0.9 | Retrieval of docs |
|  | **Total** | **12.1** |  |

| Name | Date | Time | Summary |
|------|------|------|---------|
| V. Owens | 8/22/16 | 0.9 | scan documents |
| | **Total** | **0.9** | |

| Name | Date | Time | Summary |
|------|------|------|---------|
| V. Owens | 9/13/16 | 7.1 | Prepare cover sheets; proof read doc for grammatical and formatting errors |
| V. Owens | 9/14/16 | 8.2 | Format revisions; proof read; e-file |
| V. Owens | 9/26/16 | 2.9 | prepare cover sheets and collate with correct exhibit |
| V. Owens | 9/27/16 | 10.1 | Generated redlines; document revisions; add cover sheet to exhibit |
| V. Owens | 10/28/16 | 0.5 | e-file |
| V. Owens | 2/7/17 | 2.9 | Generate exhibit cover sheets; e-file |
| V. Owens | 2/8/17 | 0.8 | Generate exhibit cover sheets |
| V. Owens | 2/21/17 | 0.5 | e-file |
| V. Owens | 4/11/17 | 1.1 | Access FL property tax website for contact info and find amount debtor owes |
| | **Total** | **34.1** | |

| Name | Date | Time | Summary |
|------|------|------|---------|
| V. Owens | 5/23/16 | 0.8 | COS and e-file |
| V. Owens | 5/4/16 | 1.5 | Formatting motions; COS; e-file |
| V. Owens | 3/23/16 | 0.5 | e-file |
| V. Owens | 3/24/16 | 1.3 | Notice of hearing; COS; e-file |
| V. Owens | 7/6/16 | 1.0 | Notice of hearing and COS |
| V. Owens | 7/11/16 | 2.0 | Preparation of Mailing Matrix and Efile |
| V. Owens | 10/31/16 | 1.1 | Review Billing statements from Mar-Sept 2016 |
| V. Owens | 11/1/16 | 3.9 | Review Billing statements from Mar-Sept 2016 |
| V. Owens | 11/18/16 | 2.1 | Notice of hearing; COS; summaries |
| V. Owens | 3/23/16 | 0.4 | e-file |
| V. Owens | 3/23/16 | 0.5 | e-file |
| V. Owens | 4/11/16 | 1.0 | Scan docs; review and redact info from initial debtor interview |
| V. Owens | 4/29/16 | 0.5 | e-file |
| V. Owens | 5/2/16 | 0.2 | Retrieve doc and copy |
| V. Owens | 5/6/16 | 1.3 | Review SOFA/Schedules and highlight |
| V. Owens | 5/23/16 | 0.5 | e-file |
| V. Owens | 6/21/16 | 2.0 | Notice; e-file; update matrix |
| V. Owens | 7/1/16 | 1.0 | Notice and e-file |
| V. Owens | 7/6/16 | 1.0 | COS and e-file |
| V. Owens | 8/9/16 | 0.8 | COS and e-file |
| V. Owens | 8/10/16 | 0.5 | e-file |
| V. Owens | 9/28/16 | 0.4 | Amend, Review, and revise schedules and statements |
| V. Owens | 5/20/16 | 1.0 | e-file operating report for March and April |
| V. Owens | 8/3/16 | 4.3 | Prepare narrative for amended operating report for March-June |
| V. Owens | 8/19/16 | 0.5 | e-file |
| V. Owens | 8/22/16 | 0.5 | e-file |
| V. Owens | 9/12/16 | 1.0 | e-file |
| V. Owens | 9/13/16 | 0.5 | e-file |
| V. Owens | 9/23/16 | 0.5 | e-file |
| V. Owens | 10/25/16 | 0.5 | e-file |
| V. Owens | 3/24/16 | 0.3 | Copy application to employ; notice |
| V. Owens | 3/31/16 | 0.3 | Retrieval of documents |
| V. Owens | 4/1/16 | 0.2 | Retrieval of documents |
| V. Owens | 4/4/16 | 0.4 | Access UST website for procedures and forms |
| V. Owens | 4/14/16 | 0.5 | Copies and notice |
| V. Owens | 4/20/16 | 0.2 | Update proof of claims |
| V. Owens | 4/21/16 | 0.5 | Copy and notice motion |
| V. Owens | 4/22/16 | 0.6 | Retrieval of documents |
| V. Owens | 4/25/16 | 0.6 | Retrieval of documents |
| V. Owens | 4/26/16 | 0.1 | Redact and label exhibits and motions |
| V. Owens | 4/27/16 | 0.1 | Retrieval of documents |
| V. Owens | 5/2/16 | 0.1 | Retrieval of documents |
| V. Owens | 5/4/16 | 0.5 | Copy and notice motion |
| V. Owens | 5/5/16 | 0.9 | Make copies; notice parties; compare old and new mailing matrices |
| V. Owens | 5/16/16 | 0.3 | Retrieval of documents |
| V. Owens | 5/18/16 | 0.4 | Retrieval of documents |
| V. Owens | 5/20/16 | 0.6 | Retrieval of documents |
| V. Owens | 5/23/16 | 0.9 | Make copies; notice parties; retrieve documents |
| V. Owens | 5/24/16 | 0.2 | Retrieval of documents |
| V. Owens | 5/25/16 | 0.3 | Retrieval of documents |
| V. Owens | 5/26/16 | 0.2 | Retrieval of documents |

| Name | Date | Time | Summary |
|------|------|------|---------|
| V. Owens | 6/2/16 | 0.4 | Retrieval of documents |
| V. Owens | 6/7/16 | 2.4 | Retrieve docs and make copies |
| V. Owens | 6/10/16 | 0.9 | Make copies; notice parties |
| V. Owens | 6/15/16 | 0.1 | Retrieval of documents |
| V. Owens | 6/17/16 | 0.6 | Make copies; notice parties |
| V. Owens | 6/21/16 | 1.5 | Make copies; compare docs |
| V. Owens | 6/27/16 | 0.1 | Retrieval of documents |
| V. Owens | 7/1/16 | 0.2 | Review court website and retrieve docs |
| V. Owens | 7/7/16 | 0.4 | Make copies; notice parties |
| V. Owens | 7/11/16 | 1.2 | Make copies |
| V. Owens | 7/13/16 | 0.8 | Upload all documents to shared drive |
| V. Owens | 7/15/16 | 0.1 | Retrieval of documents |
| V. Owens | 7/19/16 | 1.2 | Retrieval of documents |
| V. Owens | 7/19/16 | 1.3 | Retrieval of documents |
| V. Owens | 7/20/16 | 1.2 | Make copies; notice parties |
| V. Owens | 7/21/16 | 2.4 | Make copies |
| V. Owens | 7/27/16 | 2.8 | Retrieval of documents |
| V. Owens | 7/29/16 | 0.1 | Retrieval of documents |
| V. Owens | 8/3/16 | 0.5 | Retrieval of documents |
| V. Owens | 8/5/16 | 0.5 | Retrieval of documents |
| V. Owens | 8/8/16 | 1.5 | Retrieve docs and make copies |
| V. Owens | 8/9/16 | 3.8 | Retrieve docs and make copies |
| V. Owens | 8/10/16 | 0.8 | Make copies |
| V. Owens | 8/12/16 | 0.4 | Retrieval of documents |
| V. Owens | 8/16/16 | 2.7 | Review docket sheets; format doc |
| V. Owens | 8/17/16 | 0.1 | Retrieval of documents |
| V. Owens | 8/23/16 | 0.3 | Assemble and label exhibits |
| V. Owens | 8/24/16 | 2.5 | Retrieval of documents |
| V. Owens | 8/25/16 | 2.6 | Retrieve docs; make copies; assemble and label exhibits |
| V. Owens | 8/26/16 | 1.1 | Make copies and notice parties |
| V. Owens | 8/30/16 | 0.9 | Assemble and label exhibits |
| V. Owens | 9/1/16 | 2.3 | Retrieve docs and review file |
| V. Owens | 9/2/16 | 1.3 | Retrieve docs and make copies |
| V. Owens | 9/6/16 | 1.5 | Make copies; generate redline |
| V. Owens | 9/7/16 | 0.1 | Scan docs |
| V. Owens | 9/8/16 | 0.1 | Retrieval of documents |
| V. Owens | 9/9/16 | 0.5 | Retrieval of documents |
| V. Owens | 9/13/16 | 1.8 | Assemble exhibits and prepare to e-file |
| V. Owens | 9/15/16 | 0.8 | Receive proof of claim |
| V. Owens | 9/16/16 | 0.6 | Review docket |
| V. Owens | 9/19/16 | 1.0 | Retrieval of documents |
| V. Owens | 9/21/16 | 0.7 | Make copies and notice parties |
| V. Owens | 9/22/16 | 0.8 | Make copies; assemble exhibits |
| V. Owens | 9/23/16 | 1.0 | Make copies |
| V. Owens | 9/26/16 | 1.8 | Retrieval of documents |
| V. Owens | 9/28/16 | 0.9 | Generate redlines |
| V. Owens | 9/29/16 | 3.4 | Make copies |
| V. Owens | 10/3/16 | 2.9 | Make copies |
| V. Owens | 10/4/16 | 0.6 | Make copies and notice parties |
| V. Owens | 10/5/16 | 1.1 | Retrieve docs; create mailing labels |
| V. Owens | 10/6/16 | 0.9 | Make copies |

| Name | Date | Time | Summary |
|------|------|------|---------|
| V. Owens | 10/11/16 | 0.2 | Retrieval of documents |
| V. Owens | 10/13/16 | 0.2 | Retrieval of documents |
| V. Owens | 10/18/16 | 0.8 | Make copies and notice parties |
| V. Owens | 10/19/16 | 0.9 | Make copies and notice parties |
| V. Owens | 10/27/16 | 0.1 | Retrieval of documents |
| V. Owens | 10/28/16 | 1.1 | Scan docs; prep court run sheet |
| V. Owens | 11/2/16 | 0.2 | Retrieval of documents |
| V. Owens | 11/7/16 | 0.6 | Makes copies and notice parties |
| V. Owens | 11/9/16 | 0.9 | Make copies and notice parties |
| V. Owens | 11/14/16 | 0.7 | Make copies and notice parties |
| V. Owens | 11/28/16 | 2.5 | Retrieval and review of documents |
| V. Owens | 11/29/16 | 0.4 | Make copies |
| V. Owens | 1/31/17 | 1.0 | Efile affidavits for Mr. Lacour and Mr. Hassen |
| V. Owens | 4/12/17 | 3.9 | Format objection; e-file |
| V. Owens | 4/12/17 | 0.5 | Review documentation |
| V. Owens | 12/9/16 | 1.7 | Revision of Ch. 11 task codes to comply with complex fee procedure |
| V. Owens | 2/1/17 | 0.1 | Revised task codes, in order of frequently used |
| V. Owens | 1/9/17 | 1.0 | e-file |
| V. Owens | 2/9/17 | 0.5 | e-file |
| V. Owens | 3/27/17 | 0.3 | Review Admin Procedures on requesting transcript |
| V. Owens | 4/13/17 | 0.4 | Attend loan closing |
| V. Owens | 12/5/16 | 0.4 | Make copies and notice parties |
| V. Owens | 1/30/17 | 0.1 | Retrieval of documents |
| V. Owens | 2/8/17 | 0.1 | Receive docs and store in database |
| V. Owens | 2/8/17 | 2.6 | Make copies; add exhibit cover sheets |
| V. Owens | 2/10/17 | 5.0 | Make copies; retrieve docs; access court website to find hearing dates |
| V. Owens | 2/13/17 | 0.6 | Make copies and notice parties |
| V. Owens | 2/14/17 | 2.2 | Search web for creditor contact info; exhibit cover sheets; make copies |
| V. Owens | 2/15/17 | 0.6 | Make copies and notice parties |
| V. Owens | 2/20/17 | 1.8 | Retrieve docs; make copies; notice parties |
| V. Owens | 3/2/17 | 1.3 | Make copies |
| V. Owens | 3/7/17 | 1.2 | Search emails and database records for doc; format doc |
| V. Owens | 3/8/17 | 0.6 | Makes copies |
| V. Owens | 3/20/17 | 0.6 | Make copies and notice parties |
| V. Owens | 3/27/17 | 0.7 | Prepare Transcript request |
| V. Owens | 4/4/17 | 0.6 | Make copies and notice parties |
| V. Owens | 4/5/17 | 0.2 | Retrieval of documents |
| V. Owens | 4/7/17 | 2.4 | Retrieve and review documents |
| V. Owens | 4/10/17 | 0.6 | Review file and retrieve appraisals |
| V. Owens | 4/11/17 | 1.3 | Search file and database for creditor account numbers |
| V. Owens | 4/12/17 | 1.9 | Modify mailing matrix; copy docs and notice parties |
| **Total** | | **143.6** | |

| Name | Date | Time | Summary |
|------|------|------|---------|
| A. Kelley | 6/9/16 | 3.4 | Review and Prepare Exhibit Documents and add to appeal database |
| A. Kelley | 6/10/16 | 6.4 | Review and Prepare Exhibit Documents and add to appeal database |
| A. Kelley | 6/13/16 | 6.5 | Review and Prepare Exhibit Documents and add to appeal database |
| A. Kelley | 6/14/16 | 7.5 | Review and Prepare Exhibit Documents and add to appeal database |
| A. Kelley | 6/15/16 | 0.7 | Review and Index Exhibit Documents and add to appeal database |
| | **Total** | **24.5** | |