UNITED STATES BANKRUPTCY COURT

EASTERN DISTRICT OF LOUISIANA

IN RE:

|  |  |
|---|---|
| CHRISTOPHER MARTIN RIDGEWAY | CASE NO. 16-10643 |
|  | SECTION A – JUDGE DODD |
| DEBTOR | CHAPTER 11 |

**MEMORANDUM OPINION**

Debtor Christopher Martin Ridgeway objected to Stryker Corporation's and Howmedica Osteonics Corporation's proofs of claim (claims no. 14 and 15, respectively).[1]  This memorandum opinion sets forth the reasons the court allows Stryker and Howmedica (collectively "Stryker") recovery on a single, nonpriority, prepetition unsecured claim for $3,027,650.05.

## Table of Contents

CASE HISTORY ............................................................................................................... 3

  Pre-petition Litigation ................................................................................................ 3

  Bankruptcy and Post-Petition Motion Practice ......................................................... 5

  The Evidentiary Hearing ............................................................................................ 8

    I.  Stryker's Witnesses .............................................................................................. 9

    II.  Debtor's Witnesses ........................................................................................... 10

ANALYSIS ...................................................................................................................... 11

  Debtor's Objections .................................................................................................. 11

  Objections to the Contents of the Proofs of Claim .................................................. 13

    I.  Prima Facie Validity .......................................................................................... 13

    II.  Stryker is Entitled to Pre-Petition Interest on Its Claim for Attorney's Fees and Costs.. 15

    III.  Stryker Miscalculated the Amount Due on Exhibit J to its Proofs of Claim ................ 16

[1] The two proofs of claim are identical and stem from the extensive pre-petition litigation between the parties.  The debtor filed an initial objection, P-288, and a supplemental objection, P-384.  Stryker and Howmedica's joint responses to the objections are P-289 and P-393.

Attorney's Fees ........................................................................................................... 16

I. Stryker is Entitled to Attorney's Fees. ........................................................... 16

II. Reasonableness of Attorney's Fees. ............................................................. 18

a. Determination of number of reasonable hours ........................................... 19

i. Elimination of fees related to prosecution or defense of Stone Surgical claims ..... 21

ii. Elimination of fees related to prosecution or defense of Biomet or Steitzer claims. ................................................................................................................ 21

iii. Reductions for vague or block billed items ........................................... 22

iv. Reductions for attorney conferences .................................................... 22

v. Reductions for billing excessive hours .................................................. 23

b. A "reasonable" rate for Michael Wexler is $400 per hour ........................... 23

c. The evidence does not warrant adjustment of the lodestar calculation. ....................... 26

d. Fees for the "Second Discovery Dispute" .................................................. 27

III. "Common Core" Doctrine Allows Stryker to Recover Attorney's Fees ........................ 28

a. Stryker showed that a common core of facts existed between its claims against the debtor. ....................................................................................................... 29

b. The court struck the debtor's objections directed to the common core doctrine .......... 29

c. Had the debtor substantiated his objection as ordered, Stryker still showed that the Sixth Circuit applies the common core doctrine outside of the Civil Rights context. ...... 30

IV. The Debtor's Objection that Stryker Did Not Adequately Itemize Its Billing Statements to Delineate Time Spent on MUTSA Claims versus Time Spent on other Claims is Overruled. ................................................................................................... 33

V. Stryker is Entitled to Recover Pre-Petition Interest on its Damages Including Attorney's Fees and Costs ................................................................................................ 33

VI. Stryker May Not Recover Attorney's Fees Expended for Its Prosecution or Defense of Claims Against or Asserted by Stone Surgical, LLC, Biomet and Steitzer. ......................... 36

VII. General Billing Issues. ............................................................................ 36

Costs Objections ......................................................................................... 37

I. Rule 54 Costs (Excluding Discovery Dispute) ................................................ 37

a. The debtor's argument that Stryker is not entitled to costs under Rule 54 is not persuasive. ................................................................................................... 37

b. In the alternative, the debtor makes specific objections to the taxing of certain costs in Stryker's proofs of claim. ............................................................................ 38

II. Costs Component of $223,000 Discovery Dispute ......................................... 42

a. $4,485.15 in travel costs are allowed. ..................................................... 42

b. Rates charged to retrieve data from electronic devices are allowed. ........................ 44

c. Amount charged by third party to host data on its server is reasonable. .................... 45

CONCLUSION.................................................................................................................. 46

## CASE HISTORY

### *Pre-petition Litigation*

Stryker sued Ridgeway in the United States District Court for the Western District of Michigan in September 2013 for breach of fiduciary duty, breach of a contract that included a non-competition agreement, and misappropriating trade secrets.[2]  Two months later, Ridgeway and his wholly owned limited liability company, Stone Surgical, LLC, sued Stryker and Howmedica in federal court for the Eastern District of Louisiana.  That complaint alleged violations of the Louisiana Unfair Trade Practices Act, fraud, unjust enrichment and tortious interference with a business relationship and contract.  The Louisiana lawsuit was transferred to Michigan and consolidated for trial with Stryker's suit.

The litigation was especially contentious, with Stryker twice successfully moving to sanction Ridgeway for discovery violations.[3]  The first sanctions award came in April 2015[4] after the court found Ridgeway wrongfully failed to properly respond to discovery requests.  Stryker later filed a Rule to Show Cause against Ridgeway arguing that his production was incomplete and that he had either willfully destroyed relevant information or was withholding information wrongfully.[5]  The court eventually granted Stryker's motion, in part, sanctioning

---

[2]  Mich. Doc. no. 1 in W.D. Mich. Case no. 13-cv-01066, *Stryker Corporation et al. v. Ridgeway et al*.  The complaint also alleged wrongdoing by Biomet, Inc. (a Stryker competitor) and Richard Steitzer (another former Stryker employee).

[3]  Mich. Doc. nos. 214 and 641 in W.D. Mich. Case no. 13-cv-01066.

[4]  Mich. Doc. no. 214 in W.D. Mich. Case no. 13-cv-01066.

[5]  Mich. Doc. no. 232 in W.D. Mich. Case no. 13-cv-01066.

Ridgeway and ordering a forensic review of Ridgeway's electronic devices and e-mail accounts.[6] The forensic review revealed over 188,000 missing documents, some of which were responsive to propounded discovery requests, prompting Stryker to seek more sanctions.[7]  The court granted that motion in part, ordering the debtor to "pay the reasonable expenses, including attorneys' fees," that Stryker incurred with respect to Stryker's Rule to Show Cause (Mich. Doc. no. 232), the forensic examination of the debtor's electronic devices and e-mail account (Mich. Doc. no. 321), and Stryker's motion for sanctions (Mich. Doc. no. 445).[8]  It deferred determining the amount to which Stryker was entitled until after trial on the merits.[9]  The order also restricted the debtor's response to Stryker's fee petition "to challenging the reasonableness of specific fees and costs sought by Stryker in its petition."[10]

Following a jury verdict in Stryker's favor specifically finding that Ridgeway's misappropriation of trade secrets was "willful and malicious,"[11] the Michigan trial court rendered judgment against Ridgeway for $745,195 and dismissed Ridgeway and Stone Surgical's claims against Stryker.  Shortly after the verdict but before the district court could take up the issue of Stryker's attorney fees, Ridgeway filed chapter 11.  Both Ridgeway and Stone Surgical unsuccessfully appealed the trial court judgment.[12]

---

[6]  Mich. Doc. no. 317 in W.D. Mich. Case no. 13-cv-01066.

[7]  Mich. Doc. no. 445 in W.D. Mich. Case no. 13-cv-01066.

[8]  Stryker exhibit no. 12.

[9]  "Stryker shall, within fourteen days after the conclusion of the jury trial of this matter, file its petition for reasonable fees and costs that it is entitled to recover under this Order."  *Id.*

[10]  *Id.*

[11]  Stryker exhibit no. 15.

[12]  The Sixth Circuit affirmed the trial court, 858 F.3d 383 (6th Cir. 2017) and the United States Supreme Court denied *certiorari* on January 8, 2018.  138 S.Ct. 652 (2018) (Mem).

### *Bankruptcy and Post-Petition Motion Practice*

The debtor filed chapter 11 on March 23, 2016.  Stryker and Howmedica filed proofs of claim in this case for $3,432,147.71 each.  Each proof of claim included more than 1,400 pages of supporting material.  The creditors sought:

1. $745,195.00 in liquidated actual damages awarded by the Michigan jury.

2. $223,351.16 in unliquidated attorney's fees and costs related to Stryker's second request for sanctions in the parties' protracted discovery dispute (the "Second Sanctions Award Request").

3. $2,272,369.54 in unliquidated attorney's fees (excluding those for the initial sanctions award in the discovery dispute ("First Sanctions Award") and the Second Sanctions Award Request).

4. $143,535.29 in unliquidated costs (excluding the First Sanctions Award and the Second Sanctions Award Request).

5. $47,508.14 in unliquidated pre-judgment interest.

6. $188.58 for unliquidated post-judgment interest accrued before Ridgeway filed his bankruptcy petition.

7. "An unknown amount of post-judgment interest" accruing after the chapter 11 petition.[13]

Stryker's sought relief from the automatic stay[14] in order to liquidate its claims for attorney's fees, costs and interest in the Michigan district court, but the debtor opposed that

---

[13]  Addendum to Proof of Claim no. 14, p. 5.

[14]  Motion of Stryker Corporation and Homedica Ostenonics [*sic*] Corporation for Limited Relief from the Automatic Stay Pursuant to 11 U.S.C. §362(d)(1), P-220.

relief.[15]  The bankruptcy court denied the motion, instead opting to liquidate the claims itself.[16]

To begin the process, it directed the debtor to object to Stryker's proofs of claim by December 9,

2016.[17]  The debtor's timely initial objection took a broadbrush approach and explicitly claimed

the right to supplement his objection.[18]  A key element of the debtor's initial objection was

Stryker's reliance on the "common core" doctrine in calculating its claim for attorney's fees.

Stryker responded to the debtor's initial claim objection,[19] after which Chief Judge Elizabeth

Magner assigned the case to the undersigned.[20]  This court now faces the task of determining the

amount of attorney fees and other recoverable items the Michigan district court would have

awarded Stryker had that court taken up the issues.

  Earlier rulings that disposed of several pretrial issues bear on the outcome of the trial; a

summary of those proceedings is included for convenience.

  During an April 3, 2017 telephone status conference the court denied the debtor's oral

motion to file an entirely new objection to Stryker's proof of claim.  Instead, to focus the parties'

dispute, it ordered Ridgeway to supplement his objection no later than May 15, 2017, by

identifying specific billing entries with which he took issue:

> Not later than May 15, 2017, debtor shall file and serve on Stryker
> and Howmedica's counsel **a list of time entries** in Stryker and
> Howmedica's counsel's billing statements that it contends are
> objectionable, **specifying for each entry** the debtor's basis for

---

[15]  Debtor's Response in Opposition to Motion of Stryker Corporation and Howmedica Osteonics Corporation for Limited Relief from the Automatic Stay Pursuant to 11 U.S.C. §362(d)(1), P-280.

[16]  Order denying Motion for Relief from Stay, P-341, (Magner, J.)

[17]  Order, P-282.

[18]  P-288.

[19]  Response in Opposition to Debtor's Objection to the Proofs of Claim of Stryker Corporation and Howmedica Osteonics Corp., P-289.

[20]  Order reassigning case, P-379.

> claiming that the debtor should not be liable for the charges
> relating to the time entry, with a concluding summary of the total
> amounts for each objection category.[21]

The debtor timely filed a supplemental objection[22] but in violation of the order failed to

identify entries he objected to under the common core theory.  The supplement also included

entirely new objections not raised in the debtor's initial objection.  Stryker filed both a response[23]

to the debtor's supplement and a Motion to Strike[24] the debtor's supplemental objection for

failure to comply with the court's April 7 order.  The court granted Stryker's Motion to Strike in

part and denied it in part after a July 5, 2017 telephone hearing,[25] the order providing in relevant

part that:

> those portions of the Debtor's Objection [P-288] asserting that
> Stryker is not entitled to recover attorneys' fees under the Common
> Core Doctrine are stricken except to the extent the Debtor's
> Objection identified specific, objectionable time entries;
>
> IT IS FURTHER ORDERED that the Motion is denied to
> the extent it requests the court to strike the Debtor's objection to
> Stryker's claims for reimbursement of costs; and
>
> IT IS FURTHER ORDERED that the Motion is denied
> without prejudice to the extent it requests the Court to strike the
> Debtor's objection to Stryker's proofs of claim on the basis that the
> pending Sixth Circuit Appeal must be a final order.[26]

---

[21]  April 7, 2017, Order following Telephone Status Conference, P-354 (emphasis supplied).

[22]  Christopher Martin Ridgeway's Supplemental Objection to Proofs of Claim Filed by Stryker Corporation and Howmedica Osteonics Corp., P-384.

[23]  Response to Debtor's Supplemental Objection to Stryker Corporation's and Howmedica Osteonics Corp.'s Proofs of Claim, P-393.

[24]  Motion to Strike Portions of Debtor's Objection to Stryker Corporation's and Howmedica Osteonics Corp.'s Proofs of Claim, P-391.

[25]  July 31, 2017, Order Granting in Part and Denying in Part Motion to Strike, P-438.  With the consent of all counsel the court also scheduled a November 30, 2017, evidentiary hearing (and set related prehearing deadlines) for the debtor's objection to Stryker's proofs of claim.

[26]  *Id.*  The parties did not submit a form of order on Stryker's Motion to Strike until nearly a month after the court's ruling.  Although the order to strike references only the debtor's initial objection, the court's ruling made plain that

The debtor filed both a notice of appeal[27] and a Motion for Reconsideration,[28] for which it sought an expedited hearing.[29]  The district court stayed the debtor's appeal of the motion to strike pending a ruling on the debtor's motion for reconsideration.[30]  After the bankruptcy court denied the debtor's motion for reconsideration of its ruling on the Motion to Strike,[31] the debtor filed a **second** notice of appeal,[32] which the district court denied as interlocutory.[33]  For the same reasons the district court also dismissed the debtor's original stayed appeal as moot.[34]

### *The Evidentiary Hearing*

Largely unproductive but acrimonious motion practice increased dramatically in the bankruptcy during the weeks preceding the evidentiary hearing.[35]  The hearing itself lasted all day and well into the evening, with both parties introducing volumes of evidence and extensive testimony.

---

portions of both the initial and supplemental objections were to be stricken for failure to comply with the April 7 order.  Neither party called the court's attention to or sought clarification of the omission from the order but neither reasonably could have misunderstood the court's intent.

[27]  P-446.

[28]  Reorganized Debtor's Motion and Incorporated Memorandum in Support for a New Trial or To Alter or Amend a Judgment under Bankruptcy Rule 9023 on the Order Granting in Part Motion to Strike, or, Alternatively, for Revision to that Order Pursuant to Bankruptcy Rule 7054, P-445.

[29]  Order Setting Expedited Hearing, P-451.

[30]  Order, P-5, in E.D. La. Case no. 17-cv-07857.

[31]  Order Denying Debtor's Motion to Reconsider, P-494.

[32]  P-501.

[33]  Order, P-18 in E.D. La. Case no. 17-cv-09597.

[34]  Order, P-21 in E.D. La. Case no. 17-cv-07857.

[35]  The debtor moved for a suspension of proceedings related to his objection to Stryker's proofs of claim, P-512, which the court denied, P-530.  The parties filed motions to compel, P-540 and 565, a motion for protective order, P-552, multiple motions to strike—P-559, 581 and 582—and a motion for sanctions, P-560, in the month leading up to the hearing, as well as a Motion to Reconsider, P-593, and a Motion to Enforce Pre-Trial Order, P-594, itself filed the morning of the hearing.

## I.  Stryker's Witnesses

At the evidentiary hearing, Stryker called as witnesses Michael Wexler, its lead counsel in the Michigan litigation, and Fred Dilly, a Michigan litigator qualified as an expert on reasonable hourly rates in the Western District of Michigan.

Wexler testified regarding Stryker's need for trade secret attorneys to protect its intellectual property and proprietary information.[36]  He explained that Stryker justified its expenditures for lawyers as supporting its aim to protect confidential business information including pricing, margins, compensation, contract terms, business strategies, technology, manufacturing processes and supplier information.[37]

Wexler explained that Stryker's claims against the debtor were intertwined with the debtor and Stone's counterclaims against it[38] and that Stryker's claims against Biomet and Steitzer[39] were intertwined with Stryker's claims against the debtor.[40]

Dilly was qualified to testify as an expert regarding the reasonableness of hourly rates for commercial litigation lawyers in the Western District of Michigan.  He testified that the reduced hourly rates Stryker seeks for its Chicago-based counsel are reasonable, as are the rates Stryker's local counsel charged for their work in the Western District of Michigan.[41]  Mr. Dilly cited several decisions awarding rates in commercial litigation in the Western District of Michigan

---

[36]  Trial transcript, P-629, pp. 281, line 13-282, line 1.

[37]  *Id.*

[38]  Trial transcript, P-629, pp. 299, line 19-301, line 24.

[39]  *See* n. 2.

[40]  Trial transcript, P-629, p. 292, lines 5-24 and p. 295, lines 1-2.

[41]  Trial transcript, P-629, pp. 179, line 22 – 182, line 2.

similar to those Stryker seeks,[42] further explaining how the experience and expertise of Stryker's attorneys factored into his assessment of a reasonable rate.[43]  Finally, Dilly challenged the accuracy of the State Bar of Michigan's 2014 survey of hourly rates, on which the debtor relied to support his argument that Stryker's lawyers' hourly rates were excessive.  Mr. Dilly explained that the survey is based on a response rate of 14.7%, with only 2,734 attorneys responding out of 18,610 practitioners in the vicinity.[44]  Thus he would discount sole reliance on those rates to determine reasonableness of Stryker's fees.

## II.  Debtor's Witnesses

The debtor's witnesses were Stephen Hessen, one of his Michigan lawyers; R. Patrick Vance, a Louisiana attorney qualified as an expert on the appropriateness and reasonableness of attorney's fees; and Louis LaCour, who represented the debtor in his appeal of the Michigan judgment.

The debtor initially retained Mr. Hessen's firm on an hourly basis but later converted their relationship to one under a contingency fee agreement.[45]  He conceded that the 2014 Michigan Survey was outdated[46] and that rates increased between the 2010 and 2014 surveys.  He also testified that he expected the rates to continue to increase.[47]  His testimony is entitled to lesser

---

[42]  Trial transcript, P-629, pp. 186, line 10 – 188, line 17.

[43]  Trial transcript, P-629, pp. 182, line 15 – 184, line 20.

[44]  Trial transcript, P-629, p. 189, lines 11-19.

[45]  Trial transcript, P-629, p. 68, lines 9-12.

[46]  Trial transcript, P-629, p. 100, lines 3-12.

[47]  Trial transcript, P-629, pp. 99, line 20 – 100, line 2.  Mr. Hessen also opined that based on what he learned while preparing for the evidentiary hearing, he believed he should raise his own hourly rate to $400.  Trial transcript, P-629, pp. 103, line 24 – 104, line 9.

weight than it might otherwise carry given his representation of the debtor in the Michigan litigation.

R. Patrick Vance, a Louisiana attorney, testified as an expert on the reasonableness of Stryker's overall fee request.  Mr. Vance opined that both the hourly rates and the hours spent by Stryker's lawyers were excessive.  In Mr. Vance's opinion, the Michigan litigation was not especially complex and did not require the number of professionals or the extent of services Stryker devoted to it.[48]

Finally, Louis LaCour, the debtor's appellate counsel in the Michigan litigation, testified that the debtor's and Stone's claims involved completely different facts from those in Stryker's lawsuit.  His testimony was unpersuasive in part because at the September 2017 hearing on Adams & Reese's application for fees, Mr. LaCour testified that the debtor's defense of Stryker's claims and Stone's counterclaim against Stryker involved a core of shared facts.[49]  LaCour's attempt to distinguish and limit the applicability of his comments at the earlier evidentiary hearing on Adams & Reese's fee application thus was unpersuasive and not entitled to any credibility.

## ANALYSIS

### *Debtor's Objections*

The debtor's scattergun objections to Stryker's proofs of claim included:

---

[48]  Trial transcript, P-629, p. 144, lines 5 -22.  Notably, Mr. Vance's testimony conflicted with that of Louis LaCour, the debtor's appellate counsel, at an earlier hearing.  Transcript of hearing held Sept. 1, 2017, P-498, p. 23, lines 2-8 (testimony of L. LaCour).

[49]  *Id.* at p. 27, lines 11-25.

1. The claims filed by Stryker and Howmedica Osteonics are substantively identical and should be disallowed to the extent they would grant double recovery if both were allowed.[50]

2. Any request for payment not expressly preserved in the proofs of claim is barred. Specifically, the debtor objects to interest on Stryker's $2.6 million attorney's fees and costs.[51]

3. The debtor should not have to pay post-petition interest on the claims.[52]

4. Stryker has not proven its right to payment of attorney's fees.

5. If Stryker is entitled to recover attorney's fees, the $495 hourly rate charged by Stryker's Michigan counsel, Michael Wexler, is "unreasonable."[53]

6. The "common core" doctrine, on which Stryker's claim for all the fees owed to its lawyers for their services in the Michigan litigation, is inapplicable because this is not civil rights litigation.

7. Alternatively, if Stryker is entitled to any attorney fees, then charges for its counsel's services prosecuting a Michigan Uniform Trade Secret Act (MUTSA) claim alone must

---

[50]  This objection has been mooted by Stryker and Howmedica's acknowledgement that they collectively are entitled to recover only on a single claim.  "Stryker Corp. and Howmedica submit that Claims 14 and 15 should both be allowed subject to limiting language clarifying that Stryker Corp. and Howmedica are entitled to a single recovery." P-289, pp. 12-13.

[51]  P-288, p. 18.

[52]  This objection also has been mooted.  The Order Confirming Debtor's Fourth Amended Plan of Reorganization as Orally Modified Pursuant to Fed. R. Bankr. P. 3019 provides for payment of post-petition interest on Stryker's attorney's fees and costs.  P-351.  Further, Stryker concedes that "post-Petition interest should not be included in the allowed amount of Stryker's Proof of Claim for purposes of Section 502.  Instead, the amount of Stryker's claim should be calculated and allowed without post-Petition interest.  Then, pursuant to the terms of the Debtor's Plan and the plan confirmation order, Stryker should be awarded post-Petition interest on the entire allowed amount of its Proof of Claim pursuant to Bankruptcy Code section 1129(b)."  P-289, ¶24.

[53]  P-288, p. 26.

be separated from other billing and if they cannot, they are not recoverable because Stryker "unreasonably" failed to separate them.[54]

8.  Stryker is not entitled to recover numerous costs itemized in its claim.[55]

9.  Stryker overstated its claim by $7,017.50 on Exhibit J due to a math error.[56]

10. The total hours "reasonably expended" on the litigation should be reduced by hours Stryker's counsel spent defending claims of the debtor's co-defendants Stone Surgical, Biomet and Steitzer.[57]

11. Stryker's attorney fees claim should be reduced due to vague time entries, block billing and attorneys billing for administrative work; as well as redundant, excessive or unnecessary billings.[58]

The objections fall into three broad groups: objections to the content of the proofs of claim, objections to attorney's fees, and objections to costs.  They are addressed serially.

### *Objections to the Contents of the Proofs of Claim*

#### *I.  Prima Facie Validity*

The debtor contends that Stryker's proofs of claim are not entitled to *prima facie* validity because the documents fail to adequately describe or preserve Stryker's claims.[59]  The debtor's challenge on this ground is meritless; indeed, it borders on frivolous.

---

[54]  P-288, p. 4.

[55]  P-384, pp. 13 and 15.

[56]  P-384, p.15.

[57]  P-384, p. 16.

[58]  P-384, p. 17-19.

[59]  P-288, p. 17.

Proofs of claim must comply with Fed. R. Bankr. P. 3001 and be filed on the "appropriate" Official Form.[60]  A proof of claim executed and filed in compliance with Fed. R. Bankr. P. 3001 is *prima facie* evidence of a claim's validity and amount.[61]  Rule 3001 provides that "if, in addition to its principal amount, a claim includes interest, fees, expenses, or other charges incurred before the petition was filed, an itemized statement of the interest, fees, expenses, or charges shall be filed with the proof of claim."[62]

The party objecting to a properly filed proof of claim carries the burden of supporting its objection with evidence of probative force equal to that of the allegations of the creditor's proof of claim.[63]  If the objecting party succeeds in overcoming the *prima facie* effect of the proof of claim, the ultimate burden of persuasion then rests on the claimant to prove the validity of the claim by a preponderance of the evidence.[64]

Stryker's detailed proofs of claim comply with Fed. R. Bankr. P. Rule 3001 and Official Form 410.  They comprise over 1,400 pages of supplemental materials and exhibits, including invoices and itemized time details for all attorneys for whom fees are claimed; its bill of costs; and a seventeen-page addendum giving further detail on elements of the claims.  Stryker amply corroborated the proofs of claim.

Because Stryker's claims are entitled to *prima facie* validity, the debtor bears the initial burden of proof on his claim objection.

---

[60]  Fed. R. Bankr. P. 3001(a).

[61]  Fed. R. Bankr. P. 3001(f).

[62]  Fed. R. Bankr. P. 3001(c)(2)(A).

[63]  *In re New Century TRS Holdings, Inc.*, 495 B.R. 625, 633 (Bankr. D. Del. 2013).

[64]  *In re Shelly A. Hughes*, 313 B.R. 205, 208-9 (Bankr. E.D. Mich. 2004).

## II.  Stryker is Entitled to Pre-Petition Interest on Its Claim
### for Attorney's Fees and Costs

Ridgeway contests Stryker's claim for pre-petition interest on its unliquidated fees and costs.

Fed. R. Bankr. P. 3001(c)(2)(A) provides that in cases where the debtor is an individual, "If, in addition to its principal amount, a claim includes interest, fees, expenses, or other charges incurred before the petition was filed, an itemized statement of the interest, fees, expenses, or charges shall be filed with the proof of claim."  Bankruptcy Rule 3001(c)(2)(D) establishes remedies for claims lacking information the rule requires though disallowance of the claim is not among them.

The debtor argues that Stryker's request for prepetition interest "is not preserved in, itemized in or described in" the proof of claim as required by Fed. R. Bankr. P. 3001. [65]  A cursory review of the proof of claim and addendum shows this to be half-correct.  Stryker meticulously documented all the elements of its claims against the debtor, and although neither the addendum nor the proof of claim explicitly urges the payment of pre-petition interest on attorney's fees and costs, the claim itself does set forth the legal basis for Stryker's recovery of pre-petition interest on its damages. [66]  Under controlling Sixth Circuit law, interest on a money judgment in a civil action runs from the date of filing the complaint and is based "on the entire amount of the money judgment, including attorney fees and other costs." [67]

---

[65]  P-288, p. 18.

[66]  Exhibit 2 to Proof of Claim No. 14, ¶ 68.  "Accordingly, Stryker is entitled to pre-judgment interest in the amount of $47,508.14 on the jury award of $745,195.00."

[67]  Mich. Comp. Laws §600.6013(8); *Perceptron, Inc. v. Sensor Adaptive Machines, Inc.*, 221 F.3d 913, 923 (6th Cir. 2000) ("We are convinced Michigan law requires that prejudgment interest be calculated in this case on the entire judgment from the date that the complaint was filed.  The prejudgment interest statute is remedial in nature and is to be construed liberally in favor of the prevailing party.")

Stryker adequately set forth its claim for pre-petition interest on attorney's fees and costs, elements of its damage award.  This aside, in the Sixth Circuit, the moving party claiming post-judgment interest based on statute need not attach additional documentation proving entitlement to the interest.[68]

### III.  Stryker Miscalculated the Amount Due on Exhibit J to its Proofs of Claim

Last, the debtor argues that the 2013 billing hours in Exhibit J to its proofs of claim are overstated by $7,017.50.  Stryker conceded the error in its Response to Debtor's Supplemental Objection to Stryker Corporation's and Howmedica Osteonics Corp.'s Proofs of Claim: "Stryker hereby voluntarily reduces its claim in the total amount of $7,067.50 based on a summing error of $7,017.50 in Stryker's claim for attorneys' fees (pointed out by debtor in his Supplement) and a $50 error in Stryker's claims for costs."[69]

Stryker's claim for these items will be reduced by $7,067.50.

### Attorney's Fees

### I.  Stryker is Entitled to Attorney's Fees.

Ridgeway strenuously argues that Michigan law makes an award of attorney's fees discretionary when a defendant has engaged in willful and malicious misappropriation, as the Michigan jury found the debtor did.[70]  He argues that Stryker has presented no argument, case law or facts to support the court's exercise of its discretion to award attorney's fees.  He reasons

---

[68]  *In re Jenny Lynn Mining Co.*, 780 F.2d 585, 586 (6th Cir. 1986) and *In re Krause*, No. 07-15395, 2011 Bankr. LEXIS 3391 at *22 (Bankr. E.D. Tenn. 2011).

[69]  P-393, p. 5, n. 5.

[70]  "If a claim of misappropriation is made in bad faith…or willful and malicious misappropriation exists, the court **may** award reasonable attorney's fees to the prevailing party." Mich. Comp. Laws Ann. § 445.1905 (emphasis added). *See also* n. 11, *supra*.

that this makes Stryker's proofs of claim for attorney fees "deficient" and thus Stryker has not met its burden of proof on this portion of its claim.[71]

Stryker counters that "every reported Michigan decision on this issue [whether to award attorney's fees in a MUTSA case] awarded attorneys' fees."[72]  Stryker also points to *In re Jonatzke,*[73] where the court awarded attorney's fees under MUTSA on a finding that the debtor's deliberate spoliation of evidence prevented the plaintiff from making its case.

> But even where, as here, all of the elements of Mich. Comp. Laws Ann. § 445.1905 are present, the statute does not automatically entitle a prevailing party to an award of attorney fees.  Instead, it states that the court "may" award attorney fees, thereby making it discretionary and not mandatory.  And even where the court exercises such discretion, the statute only permits an award of "reasonable" attorney fees.  The Court concludes that the Wayne County Circuit Court would have exercised its discretion and would have made an award of attorney fees to Synergeering under this statute.  Given the egregiousness of the Debtor's behavior as found in the State Court Opinion, it is inconceivable to this Court that the Wayne County Circuit Court would have declined to exercise its discretion under this statute.  To do so would have allowed the Debtor to avoid a finding that his MUTSA violations were "willful and malicious" by destroying the evidence necessary for Synergeering to prove those facts.[74]

Stryker's argument is persuasive in light of the obvious parallels between the *Jonatzke* case and this dispute, where the defendant withheld discovery for which the Michigan court twice imposed monetary sanctions.

---

[71]  P-288, p. 30.

[72]  P-289, ¶42, citing *DeGussa Admixtures, Inc. v. Burnett,* 277 Fed. Appx. 530, 532-4 (6th Cir. 2008); *DeGussa Admixtures, Inc. v. Burnett,* 471 F. Supp. 2d 848 (W.D. Mich. 2007); *I/O Test, Inc. v. Smiths Aerospace, Inc.,* No. 1:06-CV-117, 2007 WL 1238895, at *3 (W.D. Mich. April 27, 2007).

[73]  *Synergeering Group, LLC. v. Jonatzke (In re Jonatzke),* 478 B.R. 846 (Bankr. E.D. Mich. 2012).

[74]  *Id.* at 870.

Nor does public policy weigh in favor of the debtor's position.  The United States Supreme Court has stated that "The maintenance of standards of commercial ethics and the encouragement of invention are the broadly stated policies behind trade secret law.  The necessity of good faith and honest, fair dealing, is the very life and spirit of the commercial world.'" [75]  In contrast, a Michigan jury found that Ridgeway willfully and maliciously misappropriated trade secrets from Stryker, his former employer.

Ridgeway is not entitled to relief from responsibility for payment of his opponent's fees that incurred solely as a result of his misconduct.  The Michigan legislature has determined that in egregious circumstances involving misappropriation of trade secrets, the prevailing party may recover attorney's fees and costs.  This deviation from the standard rule of litigation—the American Rule, in which each party normally bears its own costs—acts as a deterrent to willful misappropriation.

Given the strong public policy in favor of safeguarding the development and operation of commerce, the record in the Michigan litigation and specifically the judgment holding the debtor liable for willful and malicious misappropriation of trade secrets, Stryker is entitled to attorney's fees under Mich. Comp. Laws Ann. § 445.1905.

## II.  Reasonableness of Attorney's Fees.

The next issue is the amount of fees Stryker may claim.

Courts chiefly use the lodestar approach to determine attorney-fee awards in cases where the prevailing party does not obtain a common fund but fees are otherwise authorized by statute or by judicial doctrines.[76]  This method requires the party seeking fees to substantiate its claim

---

[75]  *Kewanee Oil Co. v. Bicron Corp.,* 416 U.S. 470, 481 (1974).

[76]  10 Charles Alan Wright & Arthur R. Miller, FEDERAL PRACTICE AND PROCEDURE §2675.2 (3d ed. 2017).

with detailed attorney time records. The lodestar is calculated by multiplying a reasonable amount of time by a reasonable hourly rate.[77] Once the lodestar figure is established, the trial court may consider other factors and adjust the award upward or downward to achieve a reasonable result.[78]

### a. Determination of number of reasonable hours

The first multiplier in the lodestar calculation is determining the reasonableness of hours lawyers billed. This subsection addresses the reasonableness of the number of hours Stryker's lawyers billed for litigating with Ridgeway.[79] Stryker's proof of claim seeks not less than $2,272,369.54 in attorney's fees for 5,025.2[80] attorney hours litigating against the debtor and other parties to the Michigan litigation.

Calculating Stryker's lodestar fee is complicated by evidence. The debtor's expert, R. Patrick Vance, opined on the reasonableness of hours Stryker's lawyers expended but his report failed to give a final adjusted total number of hours (after removing duplicate entries to prevent double counting). Instead, he opined that the Stryker's fees should be reduced in the range of $194,137.40 to $756,699.05.[81] The expert's suggested monetary reduction (with minor adjustments explained below) is appropriate.

The debtor's initial objection to Stryker's claim did not specifically address the issue of reasonable hours, opting instead to lodge a sweeping objection to the attorney's fees based on the

---

[77] *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983). As with so many general rules, exceptions do exist, such as when local counsel is unavailable to handle the case. However, Stryker offered no convincing evidence for applying an exception to the general rule.

[78] *Geier v. Sundquist*, 372 F.3d 784, 792 (6th Cir. 2004) citing *Hensley v. Eckerhart,* 461 U.S. 424, 434 (1983).

[79] Whether Stryker is entitled to recover fees for all claims regardless of success on the merits is addressed under the "common core" portion of this opinion, *below*.

[80] Addendum to Proof of Claim no. 14, ¶57.

[81] Expert Report of R. Patrick Vance, Debtor's exhibit no. 153, p. 5.

common core doctrine and Stryker's lawyers alleged failure to differentiate work on separate claims in their billing statements.[82]

The court ordered Ridgeway to list specific time entries to which he objected, which included his objection relating to application of the common core doctrine.[83]  When he failed to do so, on Stryker's motion the court ordered those portions of the objection stricken.[84]  But it does not follow that Stryker is entitled to the presumption that all billed hours are reasonable. The court has an independent duty to review the fee application to determine the reasonableness of the fee requested.[85]  "In ascertaining the number of reasonable hours, the Court should exclude 'excessive, redundant or otherwise unnecessary' hours from the amount claimed."  *John Deere Co. v. Deresinski (In re Deresinski)*, 250 B.R. 764, 769 (Bankr. M.D. Fla. 2000), citing *Hensley v. Eckerhart*, 461 U.S. 424, 434 (1983).

Stryker submitted hundreds of pages of billing statements to support its fee application. The debtor's expert, Mr. Vance, reviewed some of those billing statements[86] carefully and much of his analysis supporting a reduction of Stryker's fee claim by about roughly $194,137.40 is persuasive.  Mr. Vance testified that the $194,137.40 proposed reduction is an adjusted decrease from the amounts detailed below to eliminate double counting of entries.  Vance's recommended

---

[82]  P-288, pp. 30-36.

[83]  See n. 21.

[84]  See n. 25.

[85]  *Matter of Mansfield Tire & Rubber Co.*, 65 B.R. 446, 455 (Bankr. N.D. Ohio 1986) ("[E]ven where there is no objection raised to a fee application, the trial court is to independently examine the application.")

[86]  Mr. Vance's report is based on a review of the exhibits attached to the debtor's objection to Stryker's claim.  "And what I did in my report is I went through each one of your exhibits that were attached to your objection and identified where I agreed and where I disagreed.  And then I kind of added it all up and that's how I can [*sic*] up with the $194,000 objection that I proposed."  Trial transcript, P-629, pp. 130, line 22 – 131, line 1 (Testimony of R. Patrick Vance).  The court struck Mr. Vance's supplemental report on Stryker's motion before commencement of the trial.  P-604.

reduction encompasses the $7,067.50 math error in Schedule J this opinion addresses elsewhere. Accordingly, his recommended reduction will further be adjusted to $187,069.90[87] to prevent a double reduction for this math error.

The $187,069.90 adjusted reduction proposed by Mr. Vance rests on the following conclusions:

### i. Elimination of fees related to prosecution or defense of Stone Surgical claims

Mr. Vance opined that Stryker's lawyers' hours should be reduced by 38.8 (for a total reduction of $11,509.70) because that attorney time related to the prosecution or defense of claims against Stone Surgical.[88]  The debtor's Objection identified forty-eight time entries in the proofs of claim.  Mr. Vance concurred with the debtor's objection on these entries, noting that on the 6.7 hours of those hours that identified Ridgeway, Stryker bore the burden of proving what part of the time was spent on claims against Ridgeway and what part was spent on Stone.  The court agrees with this analysis.

### ii. Elimination of fees related to prosecution or defense of Biomet or Steitzer claims.

Mr. Vance also opined that Stryker's attorney fee claim must be reduced $10,282.00 for hours its lawyers billed that related to the prosecution or defense of Biomet or Steitzer claims.[89] As with the entries related to Stone Surgical, discussed *above*, Vance correctly observed that 1.6 billed hours that identified Ridgeway as well as Biomet or Steitzer should have been broken out into discrete entries that identified the amount of time spent on each separate party.

---

[87]  This amount is Vance's recommended reduction of $194,137.40 less the $7,067.50 previously deducted from Stryker's claim.

[88]  Trial transcript, P-629, p. 135, lines 19-24.  *See also* exhibit 4 to Expert Report of R. Patrick Vance, Debtor's exhibit no. 153.

[89]  *See* exhibit 5 to Expert Report of R. Patrick Vance, Debtor's exhibit no. 153.

### iii.  Reductions for vague or block billed items

Though the debtor objected to $69,381.00 for services described in allegedly vague or so-called "block billed" entries, his expert did not support that reduction.[90]  "I highlighted time entries that in my view were not objectionable either because the time entry I thought was sufficiently descriptive, or the block billing was not objectionable because the amount of time that was recorded was so small that I didn't think it was worth making a federal case about."[91] Vance's opinion that it is appropriate to reduce Stryker's claim by $53,094.70 for vague or block billed items was persuasive and Stryker's fees will be reduced by $53,094.70 for that reason.

### iv.  Reductions for attorney conferences

The debtor sought a reduction of over $160,000 for Stryker's lawyers' billing for attorney conferences, which he claimed are redundant.  But his own expert again differed on the amount of hours that should be reduced on that basis.[92]  "I disagree philosophically with clients who think that it's inappropriate for conferences to take place, to be billed for conferences between two lawyers."[93]  Mr. Vance went on to opine that attorney conferences create efficiencies and that having two lawyers involved in a conference creates value by dividing labor and generating ideas.[94]  The debtor's expert's reasoning was persuasive and his recommended reduction of only $125,128.50 for the conferences was reasonable.[95]

---

[90]  *See* exhibit 6 to Expert Report of R. Patrick Vance, Debtor's exhibit no. 153.

[91]  Trial transcript, P-629, p. 137, lines 15-20.

[92]  *See* exhibit 7 to Expert Report of R. Patrick Vance, Debtor's exhibit no. 153.

[93]  Trial transcript, P-629, p. 139, lines 15-21.

[94]  *Id*. at pp. 139, line 21 – 140, line 1.

[95]  As opposed to the debtor's proposed reduction of $164,159.00.

### v. Reductions for billing excessive hours

Finally, the debtor urges that Stryker's fees should be reduced by 173.9 hours (totaling

$62,555.00) for "excessive" or "unnecessary" billed hours.[96]  Mr. Vance noted in his report that

"My experience in staffing cases both similar and far more complex than this one suggests

strongly that there were too many lawyers involved in the Stryker representation."[97]  Vance

adjusted his total proposed reduction to avoid double counting entries already deducted in earlier

portions of his report.[98]

Stryker did not present sufficient persuasive evidence to counter the expert's opinion so

Stryker's claim will be reduced a further $62,555 for billing excessive hours.

Considering the evidence, Stryker's claim will be reduced by $187,069.90 to reflect a

total claim amount based on a "reasonable" number of hours.

### b. A "reasonable" rate for Michael Wexler is $400 per hour

The second multiplier in the loadstar calculation is the hourly rate.  A reasonable hourly

rate is "the fee generally assessed for comparable work in the area.  In order to determine what

constitutes comparable work, courts have looked at the prevailing rates charged in the

community for similar work, the availability of adequate local counsel, customary billing rates,

the experience of the attorney, and the complexity of the work."[99]

---

[96]  *See* Exhibit 10 to Expert Report of R. Patrick Vance, Debtor's exhibit no. 153.

[97]  Expert Report of R. Patrick Vance, Debtor's exhibit no. 153, p. 13.

[98]  Trial transcript, P-629, p. 140, lines 16-22.

[99]  10 Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure §2675.2 (3d ed. 2017).

Debtor objects only to the $495 rate charged by Stryker attorney Michael Wexler as "unreasonable"[100] based on the rates published by the Michigan State Bar in its 2014 Economics of Law Practice in Michigan.[101]   That document shows $495 was in the top 95th percentile of hourly billing rates then in the Grand Rapids, Michigan area.  The debtor maintains that courts ordinarily determine reasonable rates by considering rates prevailing in the community where the court is located for similar services by lawyers of reasonably comparable skill, experience and reputations.[102]   Because Stryker's claims were tried in federal court in Grand Rapids, the debtor maintains that Grand Rapids is the "community" the court should consider in determining a reasonable rate.

Stryker urges a broader definition of "community," arguing that "community" in the context of determining reasonable rates is the Western District of Michigan.[103]   This interpretation of the scope of "community" is consistent with the Sixth Circuit's opinion in *Adcock-Ladd v. Secretary of Treasury*:

> The Sixth Circuit has resolved that, when a counselor has voluntarily agreed to represent a plaintiff in an out-of-town lawsuit, thereby necessitating litigation by that lawyer primarily in the alien locale of the court in which the case is pending, **the court should deem the "relevant community" for fee purposes to constitute the legal community within that court's territorial jurisdiction**; thus the "prevailing market rate" is that rate which lawyers of comparable skill and experience can reasonably expect to command within the venue of the court of record, rather than

---

[100]  P-288, p. 26.  Debtor did not specifically challenge the reasonableness of fees charged by Stryker attorneys other than Mr. Wexler.  The hourly rates for the time of those lawyers all are reasonable.

[101]  Debtor's Exhibit 162, available electronically at P-624 in the bankruptcy case record.  The Michigan litigation and trial took place between 2013 and 2016, therefore the 2014 publication on attorney rates, though useful as an illustrative tool, was not necessarily indicative of contemporary local rates when much of the trial work was performed.

[102]  P-288, p 26.

[103]  P-298, ¶34.

> foreign counsel's typical charge for work performed within a
> geographical area wherein he maintains his office and/or normally
> practices, at least where the lawyer's reasonable "home" rate
> exceeds the reasonable "local" charge.

*Adcock-Ladd v. Sec'y of Treasury*, 227 F.3d 343, 350 (6th Cir. 2000)(emphasis added), *citing*

*Hudson v. Reno,* 130 F.3d 1193, 1208 (6th Cir. 1997), *cert. denied,* 525 U.S. 822, 119 S.Ct. 64,

142 L.Ed.2d 50 (1998).  Other federal courts in the Western District of Michigan have awarded

hourly attorney's fees near $400.[104]

Considering the Sixth Circuit's ruling that the community for the purpose of calculating

reasonable attorney fees under the lodestar method is the district in which the court sits, $400 is a

reasonable hourly rate for Mr. Wexler's services in the Michigan litigation.

According to the addendum to Stryker's proofs of claim, the total attributable to Mr.

Wexler's services is $592,366.5.[105]  In applying the reductions recommended in the debtor's

expert report, this total will be reduced by 127.3 hours.[106]  This yields a total number of billable

hours for Mr. Wexler of 1069.4.  The adjusted billable hours multiplied by the authorized $400

rate yields a total amount for Mr. Wexler of $427,760.  Accordingly, Stryker's proofs of claim

will be reduced by $164,606.50 to account for the adjusted hourly rate this opinion authorizes for

Mr. Wexler.

---

[104]  *See Waldo v. Consumers Energy Co.,* 2012 U.S. Dist. LEXIS 45058 (W.D. Mich. March 30, 2012)(awarding $400 per hour); *Huizinga v. Genzink Steel Supply & Welding Co.*, 984 F. Supp.2d 741 (W.D. Mich. 2013)(awarding $375 per hour); *In re Stover*, 439 B.R. 683 (W.D. Mich. 2010)(awarding $450 and $400 per hour); and *Streamline Packaging Sys. V. Vinton Packaging Grp., Inc.,* 2008 U.S. Dist. LEXIS 5523, at *6 (W.D. Mich. Jan. 25, 2008) (Awarding $390 per hour).

[105]  This amount is equal to the 1196.7 billable hours sought multiplied by his requested rate of $495 per hour.  *See* Addendum to Proof of Claim no. 14, p. 13.

[106]  Debtor's exhibit no. 153.

*c. The evidence does not warrant adjustment of the lodestar calculation.*

Having established the lodestar, the court is authorized to adjust the amount up or down in extreme cases based on other factors.  These factors are generally those outlined in the Fifth Circuit opinion *Johnson v. Ga. Highway Express* that are not otherwise subsumed in the initial lodestar calculation.[107]  The Supreme Court has held that upward adjustment is only warranted in "exceptional" cases:[108]

> [W]hen an attorney first accepts a case and agrees to represent the client, he obligates himself to perform to the best of his ability and to produce the best possible results commensurate with his skill and his client's interests. Calculating the fee award in a manner that accounts for these factors, either in determining the reasonable number of hours expended on the litigation or in setting the reasonable hourly rate, thus adequately compensates the attorney, and leaves very little room for enhancing the award based on his post-engagement performance. In short, the lodestar figure includes most, if not all, of the relevant factors constituting a "reasonable" attorney's fee, and it is unnecessary to enhance the fee for superior performance in order to serve the statutory purpose of enabling plaintiffs to secure legal assistance.

*Id.* at 565–66.  Nothing in this record requires an upward adjustment in the fees awarded.

Nor does the record support a reduction in fees beyond those already discussed in this opinion.  Stryker prevailed on its breach of contract, misappropriation of trade secrets, and breach of fiduciary duty claims.[109]  It also successfully defended all of the debtor's and Stone's

---

[107]  *Geier v. Sundquist*, 372 F.3d 784, 792 (6th Cir. 2004) citing *Hensley v. Eckerhart,* 461 U.S. 424, 434 (1983).

[108]  *Pennsylvania v. Delaware Valley Citizens' Council for Clean Air*, 478 U.S. 546, 565 (1986), *supplemented*, 483 U.S. 711, 107 S. Ct. 3078, 97 L. Ed. 2d 585 (1987)("Although upward adjustments of the lodestar figure are still permissible, such modifications are proper only in certain 'rare' and 'exceptional' cases, supported by both 'specific evidence' on the record and detailed findings by the lower courts.")

[109]  Stryker's exhibit no. 15.

counter claims against it.[110]  No further reduction from those already taken in this opinion is warranted.

### d.  Fees for the "Second Discovery Dispute"

The debtor also argues that Stryker should be awarded the same $300 hourly rate for lawyers' services in connection with the "Second Discovery Dispute"[111] that the Michigan magistrate judge awarded it in the First Discovery Dispute.[112]  The debtor reasons that the court's ruling established a "community market rate" of $300 per hour in that dispute; and because three of the same five Stryker lawyers worked on the Second Discovery Dispute, the $300 per hour rate should also be applied to the Second Discovery Dispute.

The debtor's argument fails to take into account the debtor's continued bad behavior which necessitated the Second Discovery Dispute.  The United States Supreme Court has held that attorney's fees may be awarded as a sanction when a party has "acted in bad faith, vexatiously, wantonly, or for oppressive reasons."[113]  "It is well established under Supreme Court and Sixth Circuit precedents that a court's inherent power to sanction serves a punitive purpose, based on the need to deter misconduct and vindicate the court's authority."  *Williamson v. Recovery Ltd. P'ship*, 826 F.3d 297, 305 (6th Cir. 2016), *cert. denied sub nom. Robol v. Dispatch Printing Co.*, 137 S. Ct. 1106 (2017).

---

[110]  *Id.*

[111]  A term Stryker uses to describe the parties' fight over discovery found to have been previously withheld.  See W.D. Mich. Case no. 13-cv-01066 docket nos. 317 and 321 for initial discovery orders and docket no. 641 for the Second Discovery Dispute.

[112]  Mich. Doc. No. 294 and 295 in W.D. Mich. Case no. 13-cv-01066.

[113]  *Chambers v. NASCO, Inc.*, 501 U.S. 32, 46 (1991) citing *Alyeska Pipeline Service Co. v. Wilderness Society*, 421 U.S. 240, 258-259 (1975).

Ridgeway violated his discovery obligations as well as the Michigan court's March 18, 2015 compulsion order and engaged in "bad faith conduct that resulted in prejudice to Stryker."[114]   Coupled with the magistrate judge's finding that the debtor engaged in bad faith conduct and defied court order, this supports a conclusion that the Michigan district court would have awarded Stryker more in attorney's fees had the debtor's bankruptcy not barred Stryker from liquidating its fees related to the Second Discovery Dispute.[115]   Accordingly, Stryker is entitled to $350 per hour for lawyers' services awarded in connection with the Second Discovery Dispute.

Stryker's original claim sought compensation for attorney's fees for the dispute totaling $108,091.90.[116]   Based on Stryker's Petition for Fees and Costs Pursuant to Magistrate Judge Green's February 1, 2016 Order & Opinion,[117] it seeks payment for 283.9 attorney hours expended in the discovery dispute.  A recalculation of the requested hours at $350 per hour results in Stryker's claim for attorney's fees for the Second Discovery Dispute being reduced by $8,726.90.

### III.   "Common Core" Doctrine Allows Stryker to Recover Attorney's Fees

Stryker's proof of claim seeks $2,272,369.54 for unliquidated attorneys' fees and $143,535.29 in unliquidated costs.[118]   The sums account for the majority of all fees it incurred in prosecuting all its claims against the debtor, not just the fees charged for prosecuting the

---

[114]   Stryker exhibit no. 12.

[115]   "IT IS FURTHER ORDERED that, as an accommodation to all parties based on the impending trial date, the calculation of the amount Stryker is entitled to recover from Ridgeway is being deferred.  Stryker shall, within fourteen days after the conclusion of the jury trial of this matter, file its petition for reasonable fees and costs that it is entitled to recover under this Order." *Id.*

[116]   Proof of Claim no. 14, Exhibit D, part 1, p. 10.

[117]   *Id.*

[118]   Both figures exclude sums related to the first and second sanctions awards in the case.

successful MUTSA claim.  Stryker bases its claim for all its fees from the Ridgeway litigation, rather than solely the MUTSA claim, on the "common core" doctrine.

### a. Stryker showed that a common core of facts existed between its claims against the debtor.

The common core doctrine is a judge-made doctrine that allows a plaintiff who succeeded in prosecuting some of its claims, though not all, to recover attorney's fees on unsuccessful claims if the successful and unsuccessful claims have a "common core" of fact or related legal concepts.

A threshold issue for applying the common core doctrine is whether a common core of facts or related legal theories connects a party's claims against another.  Stryker established that a common core of facts connected its claims against Ridgeway.

Stryker's lead counsel in the Michigan litigation testified that Stryker's claims against the debtor were intertwined with the debtor and Stone's counterclaims against it.[119]  Perhaps even more persuasive is that the debtor's own appellate counsel testified at the September 2017 hearing on Adams & Reese's application for fees that the debtor's defense of Stryker's claims and Stone's counterclaim against Stryker involved a core of shared facts.[120]  Mr. LaCour's attempt at the evidentiary hearing on the debtor's objection to Stryker's proof of claim to distinguish and limit the applicability of his earlier testimony was unpersuasive and not entitled to any weight.

### b. The court struck the debtor's objections directed to the common core doctrine.

The debtor challenged Stryker's application of the common core doctrine to its claim for attorney fees relating to the MUTSA action but failed to identify specific time entries

---

[119] *See* n. 38.

[120] *See* n. 49.

objectionable on the common core theory by the date established by this court's order for doing so.  As a result, the court struck the debtor's objections to application of the common core that did not cite specific objectionable time entries.[121]  Nor did his supplemental objections concerning the common core doctrine cite specific objectionable time entries on this issue.[122]

In summary, Ridgeway's objection to the attorney fee claims based on the inapplicability of the common core doctrine to Stryker's fee request is overruled.

   *c.  Had the debtor substantiated his objection as ordered, Stryker still showed that the Sixth Circuit applies the common core doctrine outside of the Civil Rights context.*

The common core doctrine's[123] roots lie in the United States Supreme Court decision in *Hensley v. Eckerhart*,[124] which involved claims under 42 U.S.C. §1988.  The *Hensley* court set out guidelines for awarding attorney fees when a prevailing plaintiff is only partially successful, acknowledging the unfairness of awarding all attorney fees to a plaintiff that does not succeed in proving all its claims:

> If…a plaintiff has achieved only partial or limited success, the product of hours reasonably expended on the litigation as a whole times a reasonable hourly rate may be an excessive amount.  This will be true even where the plaintiff's claims were interrelated, nonfrivolous, and raised in good faith.[125]

---

[121]  *See* n. 25.

[122]  *See* n. 22.

[123]  However, the Supreme Court has required more than a nominal level of success for the doctrine to apply. *Farrar v. Hobby*, 506 U.S. 103, 115 (1992) ("[W]hen a plaintiff recovers only nominal damages because of his failure to prove an essential element of his claim for monetary relief…the only reasonable fee is usually no fee at all.").

[124]  461 U.S. 424 (1983).

[125]  *Id.* at 436.

*Hensley* admonished trial courts to consider the degree of success and make equitable adjustments to attorney fee requests when a plaintiff's unsuccessful claims are related to the successful ones:

> There is no precise rule or formula for making these determinations.  The district court may attempt to identify specific hours that should be eliminated, or it may simply reduce the award to account for the limited success.  The court necessarily has discretion in making this equitable judgment.  This discretion, however, must be exercised in light of the considerations we have identified.[126]

The Supreme Court in *City of Riverside v. Rivera* later refined its *Hensley* holding, concluding that Congress did not intend to adopt a strict rule that attorney's fees under §1988 be proportionate to the damages awarded:[127]

> As an initial matter, we reject the notion that a civil rights action for damages constitutes nothing more than a private tort suit benefiting only the individual plaintiffs whose rights were violated.  Unlike most private tort litigants, a civil rights plaintiff seeks to vindicate important civil and constitutional rights that cannot be valued solely in monetary terms.  And, Congress has determined that "the public as a whole has an interest in the vindication of the rights conferred by the statutes enumerated in § 1988, over and above the value of a civil rights remedy to a particular plaintiff...."[128]

Stryker did not make a civil rights claim nor does the general public have a direct interest in Stryker's vindication of its statutory and contractual rights.  Rather, its claim more nearly resembles the "private tort suit" Justice Brennan used as a foil in *Rivera* to explain why attorney's fees in civil rights litigation were not necessarily tied to success on the merits.

---

[126]  *Id.* at 436.

[127]  *City of Riverside v. Rivera*, 477 U.S. 561 (1986) (affirming attorney's fee award of $245,456.25 when plaintiffs were each only awarded $33,350 in compensatory and punitive damages).

[128]  *City of Riverside v. Rivera*, 477 U.S. 561, 574 (1986) citing *Hensley* at 444.

Stryker cites *Degussa Admixtures, Inc. v. Burnett*[129] as authority for not limiting applicability of the common core doctrine to civil rights cases but extending it to litigation including MUTSA claims.  The *Degussa* court awarded attorney fees in a MUTSA action based on a finding that the plaintiff, a former employer of defendant Burnett, had sued in bad faith. Importantly, *Degussa* came from the United States District Court for the Western District of Michigan —the same court that rendered judgment in Stryker's favor and against Ridgeway. And the *Degussa* court is not alone: other federal courts in the Sixth Circuit have applied the common core doctrine in lawsuits not involving civil rights claims.  For example, in *Edwards Moving & Rigging, Inc., v. Barnhart Crane & Rigging Co.*,[130] the court employed the doctrine to award fees in a breach of contract case.  Another court in the circuit used the doctrine in a state law retaliation action.  *Braun v. Ultimate Jetcharters, Inc.*[131]  Still another applied common core to award attorney fees in a case involving claims under the Uniform Services Employment and Reemployment Act.  *Hance v. Norfolk S. Ry. Co.* [132]  Finally*,* the district court in the Middle

---

[129]  2007 WL 1041188 (W.D. Mich. Apr. 4, 2007).

[130]  2015 WL 7681261at *5 (W.D. Tenn. Nov. 25, 2015)( "[Plaintiff's] claims for breach of contract and tortious interference with contract are based on a 'common core' of facts and related legal theories.")

[131]  2014 WL 3749418, at *14 (N.D. Ohio July 30, 2014), amended, 2015 WL 1472040 (N.D. Ohio Mar. 31, 2015), *aff'd sub nom. Braun v. Ultimate Jetcharters, LLC*, 828 F.3d 501 (6th Cir. 2016) ("The same factual allegations supporting the dismissed claims formed the core of plaintiff's successful state law retaliation claim, and these same facts were sufficient to warrant a jury award of compensatory and punitive damages at trial….Given the fact that the claims are so thoroughly intertwined, the Court cannot—and will not—reduce the award to account for unsuccessful claims.")

[132]  2007 WL 3046355, at *7 (E.D. Tenn. Oct. 16, 2007) ("Having analyzed all of Hance's claims, the Court finds that each of the three Counts relates to the defendants' alleged wrongful termination of Hance's employment, with the facts surrounding Hance's dismissal forming a 'common core of facts' that effectively intertwines the three related claims. Accordingly, the Court finds that Counts I, II, and III are related, and, therefore, that it would be inappropriate to treat Counts I and II as distinct claims and to disallow any time spent on those claims.")

District of Tennessee used the common core doctrine in a breach of contract case. *Cummings Inc. v. BP Prod. N. Am., Inc.*[133]

Nothing suggests that the Michigan trial court would not, consistent with Sixth Circuit law and precedent in the trial court's district, have held that the common core doctrine supports Stryker's recovery of a reasonable attorney's fee for prosecuting all its claims against Ridgeway. Accordingly, Stryker would have been entitled to claim attorney fees for the Michigan litigation under the common core theory even had Ridgeway identified specified time entries to which it objected on that basis.

### IV. The Debtor's Objection that Stryker Did Not Adequately Itemize Its Billing Statements to Delineate Time Spent on MUTSA Claims versus Time Spent on other Claims is Overruled.

Given the determination that the common core doctrine applies to Stryker's claims, the debtor's objection that Stryker did not adequately itemize its billing statements to delineate time spent on each individual claim against the debtor is overruled.

### V. Stryker is Entitled to Recover Pre-Petition Interest on its Damages Including Attorney's Fees and Costs

The debtor also challenged Stryker's right to pre-petition interest on its attorney's fees and costs. Pre-petition interest is allowable to the extent and at the rate permitted under applicable non-bankruptcy law, including the law of contracts.[134] A claimant must show an independent statutory or contractual basis for entitlement to interest to include the sum in a claim.[135]

Stryker's claim for interest rests on Michigan law, which provides in relevant part that "Interest … is calculated on the entire amount of the money judgment, including attorney fees

---

[133] 2010 WL 796825, at *7 (M.D. Tenn. Mar. 3, 2010) ("[W]hile there is some distinction between the operative facts used to prove each claim, there is no question that the claims arose from a 'common core of facts' and are 'based on related theories.'")

[134] *In re Consumers Realty & Dev. Co., Inc.*, 238 B.R. 418, 425 (B.A.P. 8th Cir. 1999).

[135] *Id.*

and other costs."[136]  The debtor argues that "there is no 'money judgment' in this case that includes attorney's fees and costs."[137]  This argument fails for two reasons.

First, Stryker was not required to plead attorney's fees as an element of the damages it sought for misappropriation of a trade secret.  MUTSA provides:

> Except to the extent that a material and prejudicial change of position prior to acquiring knowledge or reason to know of misappropriation renders a monetary recovery inequitable, a complainant is entitled to recover damages for misappropriation. Damages can include both the actual loss caused by misappropriation and the unjust enrichment caused by misappropriation that is not taken into account in computing actual loss.  In lieu of damages measured by any other methods, the damages caused by misappropriation may be measured by imposition of liability for a reasonable royalty for a misappropriator's unauthorized disclosure or use of a trade secret.[138]

Although § 445.1904 does not identify attorney fees as an element of damages for misappropriation, the following section of MUTSA, § 445.1905, specifically authorizes a discretionary award of attorney's fees in cases involving willful and malicious misappropriation.[139]  The Michigan jury's finding that Ridgeway engaged in willful and malicious misappropriation was not disturbed on appeal so Stryker is entitled to recover its attorney's fees.

---

[136]  Mich. Comp. Laws §600.6013(8): "…for complaints filed on or after January 1, 1987, interest on a money judgment recovered in a civil action is calculated at 6-month intervals **from the date of filing the complaint** at a rate of interest equal to 1% plus the average interest rate paid at auctions of 5-year United States treasury notes during the 6 months immediately preceding July 1 and January 1, as certified by the state treasurer, and compounded annually, according to this section.  **Interest under this subsection is calculated on the entire amount of the money judgment, including attorney fees and other costs**." (emphasis added)

[137]  P-288, p. 18.

[138]  Mich. Comp. Laws Ann. § 445.1904.

[139]  "If a claim of misappropriation is made in bad faith…or willful and malicious misappropriation exists, the court may award reasonable attorney's fees to the prevailing party." Mich. Comp. Laws Ann. § 445.1905.

The debtor himself preempted the trial court's calculation of attorney's fees by filing for bankruptcy and opposing Stryker's effort to have the automatic stay lifted to allow the trial court to rule on a request for attorney fees and costs.  Had the Michigan court not been stayed from ruling on that request, it likely would have been resolved already by a court more familiar with the parties' litigation and Michigan law.  Any award would have undeniably been a part of the judgment against the debtor, and entitled to pre-judgment interest under Michigan law.

Second, the debtor's objection to pre-petition interest on the basis that there is no "money judgment" that includes attorney's fees is an attempt to parse the otherwise plain language of Michigan's statute, which unambiguously includes attorney's fees and costs as part of a judgment.[140]  To read the statute to require that a money judgment include attorney's fees and costs in order to be eligible for pre-judgment interest would read out the part of the statute that expressly includes those items in the money judgment.  "Statutory language is read according to its ordinary and generally accepted meaning.  If the statute's language is plain and unambiguous, we assume the Legislature intended its plain meaning; therefore, we enforce the statute as written and follow the plain meaning of the statutory language."[141]  Accordingly, an award of pre-judgment interest on attorney's fees and costs is not discretionary and Stryker is entitled to recover it.

---

[140]  *See* n. 141.

[141]  *Grossman v. Brown,* 470 Mich. 593, 598 (Mi. S. Ct. 2004).

*VI.  Stryker May Not Recover Attorney's Fees Expended for Its Prosecution or Defense of Claims Against or Asserted by Stone Surgical, LLC, Biomet and Steitzer.*

The debtor objects to payment of Stryker's attorney's fees for prosecuting its claims against the debtor's wholly owned limited liability company, Stone Surgical, LLC, as well as its claims against other defendants Biomet and Steitzer.[142]

Stryker responds that "Stryker excluded from [its proof of claim] any fees relating to its defense of the debtor's counterclaims and Stone's claims, and its prosecution and defense of the Biomet/Steitzer-specific claims, any fees sought previously through other fee petitions, and all amounts billed by attorneys at Seyfarth Shaw other than Mr. Wexler, Mr. Beyer, Mr. Stiehl, and Ms. Marsh."[143]  Stryker contends that the remaining claims against Stone share a "common core" of fact with those against the debtor, and as a result the common core doctrine allows Stryker to recover them.

Stryker would stretch the common core doctrine out of reason; the court declines to accept its invitation to do so.  Further, Stryker's fees already have been reduced for its claims against Stone, Biomet, and Steitzer, addressed elsewhere in this opinion.[144]

*VII.  General Billing Issues.*

In addition to his general billing objections that Stryker's attorneys engaged in "block billing" and overstaffing,[145] the debtor argues that a junior attorney on the case billed for performing administrative work.  The debtor compiled a list of entries for services performed by a junior lawyer for Stryker that he contends should have been performed by a secretary or

---

[142]  P-384, p. 16.

[143]  P-393, ¶52.

[144]  *See* pp. 21-22, *supra.*

[145]  The court has already made reductions for these objections when it adopted certain recommendations of the debtor's expert witness.  *See* pp. 22-23, *supra.*

paralegal.[146]  However, the debtor's own expert witness disagreed with this objection in its entirety:  "My opinion is that the work performed was appropriate for a junior lawyer and as such, I do not agree with the debtor's objections to the fees listed on Exhibit 9."[147]

The debtor's objection to $34,470 in charges performed by a junior lawyer representing Stryker is overruled; those amount are allowed.

### Costs Objections

The debtor raised for the first time in his Supplemental Objection challenges to some of Stryker's costs.

### I.  Rule 54 Costs (Excluding Discovery Dispute)

#### a.  The debtor's argument that Stryker is not entitled to costs under Rule 54 is not persuasive.

The debtor challenges Stryker's entitlement to $143,535.29 in costs under Fed. R. Civ. P. 54, which provides in part: "Unless a federal statute, these rules, or a court order provides otherwise, costs--other than attorney's fees--should be allowed to the prevailing party."[148]  The rule must be read in conjunction with 28 U.S.C. §1920, which governs taxable expenditures.[149] Stryker bears the burden of supporting its request with evidence of the costs incurred and if applicable, proof that the challenged amount was necessarily incurred.[150]

The debtor argues that the Bill of Costs attached to the proof of claim is the one against Stone Surgical, not against debtor.  Thus he argues Stryker has not proved entitlement to costs in

---

[146]  See exhibit no. 9 to debtor's supplemental objection, P-384.

[147]  Debtor's exhibit no. 153, p. 16.

[148]  Fed. R. Civ. P. 54(d)(1).

[149]  *Crawford Fitting Co. v. J. T. Gibbons, Inc.*, 482 U.S. 437, 441–42 (1987) ("[28 U.S.C. §]1920 enumerates expenses that a federal court may tax as a cost under the discretionary authority found in Rule 54(d). It is phrased permissively because Rule 54(d) generally grants a federal court discretion to refuse to tax costs in favor of the prevailing party.").

[150]  *Kellogg Brown & Root Int'l v. Altanmia Commer. Mktg. Co.*, 2009 WL 1457632, *7 (S.D. Tex. 2009).

its proofs of claim in the debtor's bankruptcy. But this alone does not support disallowing Stryker's costs because a plaintiff prevailing against multiple parties enjoys a presumption that liability for taxable costs is joint and several.[151]

The debtor has presented no persuasive evidence that specific costs are attributable solely to Stone and should not be assessed against him.[152] Nor does the trial court record support divvying the costs: the Michigan district court "expressly held that '[a]ll of the issues at stake in Stone's lawsuit were also relevant to the lawsuit against [the debtor].'"[153]

The debtor's objection on this ground is overruled for failing to overcome the presumption of joint and several liability for costs in the Michigan litigation.

> ### b. In the alternative, the debtor makes specific objections to the taxing of certain costs in Stryker's proofs of claim.

The debtor alternatively argues that even if Stryker is entitled to recover its costs, it is not entitled to recover several specific costs.

(1) Debtor's first specific objection is that there is a difference of $450 between what costs Stryker is claiming from the debtor and those it is claiming from Stone. Stryker attributes $400 of that sum to filing fees.[154] Stryker also reduced its claim for fees by $50, noting that "Stryker's Proof of Claim incorrectly asserts the cost is $450. Stryker hereby reduces its request

---

[151] *Anderson v. Griffin*, 397 F.3d 515, 522-3 (7th Cir. 2005). *But see In re Paoli R.R. Yard PCB Litigation*, 221 F.3d 449 (3d Cir. 2000) (joint and several liability is not appropriate when a nonprevailing party's costs can be easily disaggregated from, and are less than, other parties' costs.)

[152] Stryker responds that it has not been paid any of the costs the trial court assessed against Stone; and that the debtor has escrowed the entire amount of Stryker's proof of claim, which includes the full amount sought for costs against both Stone and the debtor. P-393, ¶29.

[153] Stryker's Response to Debtor's Supplemental Objection to Stryker Corporation's and Howmedica Osteonics Corp.'s Proofs of Claim, P-393, ¶29, quoting *Stryker Corporation et al. v. Ridgeway et al.*, 2016 WL 6275329, at *3 (W.D. Mich. 2016).

[154] Stryker's Response to Debtor's Supplemental Objection to Stryker Corporation's and Howmedica Osteonics Corp.'s Proofs of Claim, P-393, ¶¶30-31.

accordingly."[155]  In support of its claim for $400 in fees, Stryker argues that "while it is typically

incumbent on a the [*sic*] party seeking costs pursuant to Federal Rule of Civil Procedure, Rule 54

to provide documentation showing the costs incurred, federal courts make an exception where

reimbursement is sought for a filing fee."[156]

      Stryker has proven its right to recover $400 in filing fees from the debtor.

      (2)  The debtor urges that Stryker be allowed no more than half the $12,412.97 it

requested, seeking a reduction of 50% for witness and transcript fees, fees for

summons/subpoena service, and copying costs.[157]  He argues that 28 U.S.C. §1920 allows a

court to decline to award costs.[158]  Secondly, he points to the Michigan court's award of only one

half of the costs sought against Stone.[159]  The debtor's argument fails in light of the court's

finding of joint and several liability between the debtor and Stone for taxable costs.[160]

      (3)  The debtor challenges as unnecessary allowance of costs for video depositions and

stenographic recording.[161]  But Stryker counters that Judge Bell, who presided in the Michigan

---

[155]  *Id.*, p. 13, n. 10.

[156]  *Id.*, ¶31.  *See Lee v. Santiago*, 2013 WL 4830951, at *5 (S.D.N.Y. Sept. 10, 2013) ("Court fees that are reflected on the Court's docket are sufficiently substantiated"); *Hester v. Norris*, 2009 WL 1286851, at *1 (E.D. Ark. May 8, 2009) (awarding costs after court took judicial notice that the docket sheet reflects that by Order of the Court the amount of the filing fee was $350.00); and *Music v. United States*, 17 F. Supp. 3d 1327, 1329 (N.D. Ga. 2014) (even though not requested, court took judicial notice that plaintiff paid a $350 filing fee to file action and awarded that cost as damages against defendant).

[157]  P-384, p. 11.

[158]  *In re Cardizem CD Antitrust Litig.*, 481 F.3d 355, 359 (6th Cir. 2007) ("[T]he discretion that Rule 54(d)(1) gives courts…is discretion to decline requests for costs, not discretion to award costs that § 1920 fails to enumerate.")

[159]  P-384, p. 10.

[160]  *See* pp. 37-38, *supra.*

[161]  P-384, p. 11.

litigation,[162] held that it is appropriate to tax costs for both stenographic and nonstenographic recording of depositions when no party objects to the method of recording at the time the deposition is noticed.[163] Because no evidence established that Ridgeway objected to the manner of recording any of the depositions in the Michigan litigation when they were noticed,  Stryker is entitled to the costs it seeks for the depositions.

(4)  Ridgeway contests Stryker's $26,759.58 claim for "exemplification and copying costs" and argues that the amount should be reduced to less than $7,000.[164] He contends that "while scanning a page may be permitted to be compensated under 28 USC §1920, further processing of electronic images and extracting information from the same does not qualify as exemplification or copying under section 1920."[165] The debtor's argument is bolstered by Judge Bell's opinion, which noted "Due to the inclusion of costs related to processing and converting documents into a searchable format, and the lack of meaningful information to distinguish the cost of scanning documents from the cost of processing them, Court [*sic*] will reduce the remaining costs…by half, resulting in $12,941.53. "[166] Stryker is allowed a claim of $12,941.53 for copying and exemplification costs.

---

[162] The case was reassigned to Judge Paul L. Maloney on February 1, 2017 (Mich. Case no. 13-cv-01066, P-788), but at that point there were no remaining issues before the court and the debtor had already appealed to the Sixth Circuit (Mich. Case no. 13-cv-01066, P-785).

[163] *Stryker Corporation et al. v. Ridgeway et al.*, 2016 WL 6275329, at *4 (W.D. Mich. 2016).

[164] P-384, p. 12.

[165] P-384, p. 12 citing Mich. Doc. 7 and *Country Vinter of N.C., LLC v. E. & J Gallo Winery, Inc.*, 718 F.3d 249, 258-62 (4th Cir. 2013).

[166] *Stryker Corporation et al. v. Ridgeway et al.*, 2016 WL 6275329, at *7 (W.D. Mich. 2016). Judge Bell went on to further reduce the $12,941.53 based on his finding that Stone was liable for only half of the total awarded. Unlike Judge Bell, this court has concluded that the debtor and Stone are jointly and severally liable for the costs, therefore the $12,941.53 award will not be further reduced.

(5) Finally, the debtor argues that Stryker is not entitled to $57,972.50 in costs for having a vendor prepare and display trial exhibits.[167]  He argues that that 28 U.S.C. §1920[168] does not identify multi-media presentations as a recoverable cost and that courts can award only items the statute allows.  Stryker counters that the presentation was necessary to facilitate presentation of evidence to the jury.[169]  It also notes that the debtor had his own trial graphics team assisting with his evidentiary presentation.[170]

Stryker premises its argument for the allowance of the charges on Fifth Circuit law.[171] Stryker also notes that the Michigan courtroom was wired for technology and the court encouraged the parties' use of technology for displaying evidence to the jury.  Stryker reasons that because the court encouraged the use of technology to present evidence, those costs should be taxable under §1920(4).

"Recoverable 'exemplification' costs also may include the expense of a computerized, multi-media system employed to present exhibits to the jury, if that system is reasonably necessary for the presentation of information (as opposed to an extravagance or a mere

---

[167]  P-384, p. 12.

[168]  The debtor actually argues that such costs are prohibited by "11 U.S.C. §1920" [*sic*] but the court interprets his argument as one under 28 U.S.C. §1920.

[169]  P-393, ¶41.

[170]  *Id.*, ¶42.

[171]  *J.T. Gibbons, Inc. v. Crawford Fitting Co.*, 760 F.2d 613, 615 (5th Cir. 1985)(allowing recovery of costs for audiovisual equipment and operation at trial when court requested it); *aff'd*, 790 F.2d 1193 (5th Cir. 1986)(*en banc*), *aff'd sub nom. Crawford Fitting Co. v. J.T. Gibbons, Inc.*, 482 U.S. 437 (1987); *Pioneer Natural Res. USA, Inc. v. Diamond Offshore Drilling, Inc.*, 2009 WL 4020563 at *5 (E.D. La. 2009)(pretrial order authorized video trial support and given the complexity of the case the proceeding could not have been conducted efficiently without it); *Finisar Corp. v. DirecTV Group, Inc.*, 2006 WL 2699732 at *2 (E.D. Tex. 2006)(audio/visual trial support allowed as taxable cost, albeit at reduced rate, where court stressed need for efficiency and both sides used trial technicians).

convenience)."[172]  When determining Stryker's request for attorney fees and costs against Stone Surgical (which duplicates Stryker's request in its proofs of claim), Judge Bell determined that Stryker's multi-media presentation was "necessarily obtained."[173]  However, Judge Bell did not accept Stryker's claim for $57,972.50 for a "relatively simple and functional" presentation,[174] and instead awarded Stryker "no more than two-thirds of the amount claimed" to keep the costs in line with the "limited scope of exemplification costs allowed in this Circuit."[175]

Federal trial courts may allow the taxation of multi-media presentations.  Judge Bell's first-hand knowledge of the trial graphics presentation and his well-reasoned analysis on the issue offers the best evidence of what the Michigan court would allow as costs and is consistent with applicable precedents.  Stryker is therefore allowed $38,648.34 on this portion of its claim for costs.[176]

## II.  Costs Component of $223,000 Discovery Dispute

The debtor objects to the costs component of the discovery dispute with Stryker on several grounds.

### a.  $4,485.15 in travel costs are allowed.

Debtor argues that the $4,485.15 Stryker seeks in travel costs for the discovery dispute is unnecessary because local counsel could have handled the hearings.  Stryker counters with the

---

[172] 10 MOORE'S FEDERAL PRACTICE §54.103 (Matthew Bender 3d ed. 2018).  *See also Cassell v .Brennan*, 2016 WL 7116190 at *2, (W.D. Ky. 2016) ("[A]s a general rule, the expenses of generating demonstrative aids are taxable 'when necessarily obtained for use in the case.'").

[173] *Stryker Corporation et al. v. Ridgeway et al*, 2016 WL 6275329 at *7, (W.D. Mich. 2016).

[174] *Id*.

[175] *Id*. at *8.

[176] The court derived this figure by multiplying by two Judge Bell's *pro rata* amount charged to Stone ($19,324.17), to place the award in line with this court's holding on joint and several liability for costs between Stone and the debtor.

argument that Seyfarth Shaw was Stryker's primary counsel and as such had "intimate knowledge" of the complex discovery issues in play. Prosecuting the debtor for discovery violations required attendance at hearings on June 1, 2015, July 14, 2015, and July 24, 2015, as well as attendance at the motion for terminating sanctions on February 1, 2016.[177] In its original application for costs stemming from the debtor's discovery violations, Stryker noted that for the June 1 and February 1 hearings it sought reimbursement only for counsel arguing the case (Mr. Wexler on June 1 and Mr. Beyer on February 1), though the two lawyers traveled to both hearings.[178]

Stryker contends that an award of costs for its primary counsel to travel from Chicago, Illinois, to Grand Rapids, Michigan, is consistent with other rulings in Michigan federal district courts, citing *Fleming v. Bhd. of the Maint. of Way Emples. Div of the Int'l Bhd. Of Teamsters*[179] and *City of Detroit v. TXU Energy Retail Co., LP.*[180]

The *Fleming* court awarded attorneys from Grand Rapids, Michigan, $979.50 in travel and parking expenses for litigating in the Eastern District of Michigan. It wrote that "These items are non-taxable under the Court's Bill of Costs Handbook, but have nonetheless been deemed by other courts to be recoverable as part of a reasonable attorney fee, on the ground that they are necessary and proper to the practice of law and routinely billed to the client."[181] Similarly, in *TXU Energy* the defendant sought $16,379.86 in legal research and costs related to

---

[177] Stryker's exhibit no. 14, p. 9.

[178] *Id*. at p. 6.

[179] 2011 U.S. Dist. LEXIS 25660 (E.D. Mich. March 14, 2011).

[180] 2007 U.S. Dist. LEXIS 102807 (E.D. Mich., Feb. 20, 2007).

[181] 2011 U.S. Dist. LEXIS 25660 at *11 (E.D. Mich. March 14, 2011).

travel.  The court awarded the requested fees where "Defendants' legal costs were reasonably and directly incurred as a result of Plaintiff's bad faith conduct, and should be properly awarded."[182]

The magistrate judge in this case concluded that Ridgeway engaged in bad faith conduct[183] and ordered the debtor (with no mention of Stone) to pay the "reasonable expenses" that Stryker incurred to prosecute its show cause motion, its motion for sanctions, and the costs related to forensic examination of Ridgeway's electronic devices.[184]  Additionally, the order specifically limits the debtor to challenging the "reasonableness of specific fees and costs," not the necessity of the fees and costs as the debtor urges here.[185]

Stryker adequately documented the travel expenses its counsel incurred to prosecute the show cause and sanctions motions against Ridgeway and an award is consistent with the holdings of other trial courts in the Sixth Circuit.  Stryker thus is allowed $4,485.15 in travel costs associated with the discovery disputes.

### b.  Rates charged to retrieve data from electronic devices are allowed.

The debtor objects to the hourly rate of $318 charged by George Kelly and Vestige to retrieve data from debtor's electronic devices.  Urging a reduction, the debtor challenges the rate as higher "than some attorneys" and unreasonable,[186] though at trial he offered no evidence of what a reasonable rate for these services would be.

Confounding the logic of the debtor's argument is the fact that these charges were incurred as a direct result of the debtor's bad faith efforts to conceal discoverable information.

---

[182]  2007 U.S. Dist. LEXIS 102807 at *10 (E.D. Mich., Feb. 20, 2007).

[183]  Stryker exhibit no. 12.

[184]  *Id*.

[185]  *Id*.

[186]  P-384, p. 15.

Ridgeway cannot have concealed discoverable information and now complain at the cost of uncovering it.  The Michigan court appears to have followed the same logic, explicitly requiring Ridgeway to pay the costs for Mr. Kelley's services in performing his forensic review.[187]

The costs incurred for retrieving data from the debtor's electronic devices are therefore allowed as requested.

*c.   Amount charged by third party to host data on its server is reasonable.*

Debtor contests as excessive third-party contractor DTI's charge of $32,949.82 to "simply host the electronic data on its servers" and urges the court to reduce the amount allowed.[188]  The charge for hosting electronic data was not discretely broken out in Stryker's proofs of claim; however, a review of the invoices submitted to substantiate the proofs of claim shows 15 receipts from DTI totaling $81,515.65.[189]  As with his challenge to Stryker's payment for recovering discoverable data from electronic devices, the debtor fails to explain why the amount is unreasonable or to offer evidence of a reasonable charge for the services.[190]

Once again, the debtor's own misconduct in withholding discoverable information is directly related to the expenses sought.  The debtor has failed to offer any law or evidence to show how the costs Stryker seeks are "unreasonable."  Stryker's $32,949.82 claim for these services is allowed in full.

---

[187]  Stryker exhibit nos. 12 and 14, p. 5.

[188]  P-384, p. 15.

[189]  Proof of Claim no. 14, Exhibit G, part 5, pp. 13-27.

[190]  The debtor appears to have abided by the Michigan court's ruling that his objections to fees and costs be limited to reasonableness, so this opinion focuses solely on the debtor's objection that the rate charged is unreasonable and expressly does not consider whether the expenses are properly taxed as costs under 28 U.S.C. §1920.

## CONCLUSION

For these reasons, by separate order Stryker Corporation and Howmedica Osteonics Corporation are allowed recovery on a single, nonpriority, prepetition unsecured claim for $3,027,650.05.

Baton Rouge, Louisiana, July 27, 2018.

<u>**s/ Douglas D. Dodd**</u>
DOUGLAS D. DODD
UNITED STATES BANKRUPTCY JUDGE