UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| IN RE: | CASE NO. |
| **CHRISTOPHER MARTIN RIDGEWAY** | **16-10643** |
| DEBTOR | SECTION A |
| | CHAPTER 11 |

### REASONS FOR DECISION

On October 23, 2018, hearing on the Motion to Release Escrow Funds ("Motion")[1] filed by Stryker Corporation and Howmedica Osteonics Corporation (collectively "Stryker"), came before the Court. At the conclusion of the hearing, the Court took the matter under advisement.

**I. Facts**

On September 30, 2013, Stryker filed suit against Debtor and others for damages arising from alleged patent infringement, use of trade secrets, breach of employment contract and other causes of action. On March 9, 2016, the United States District Court for the Western District of Michigan ("District Court") entered a partial judgment ("Michigan Judgment") in favor of Stryker and against Debtor for $745,195.00 in damages.[2] Prior to the entry of the Michigan Judgment, the District Court also entered an Order of Sanctions against Debtor for discovery abuses ("Sanction Order"). In both instances, the Court awarded attorneys' fees and costs neither of which were liquidated as of the bankruptcy filing.

---

[1] P-694.
[2] *Stryker Corp. v. Ridgeway*, 1:13-cv-01066, 2016 WL 7626229 (W.D. Mich. Mar. 9, 2016) c/w *Stone Surgical, LLC v. Stryker Corp.*, 1:14-cv-00889.

On March 23, 2016 ("Petition Date"), Christopher Ridgeway ("Debtor") filed a voluntary Petition for Relief under Title 11, chapter 11 of the United States Code. No trustee was appointed and Debtor administered his case as a debtor-in-possession.[3]

On or about May 20, 2016, Debtor appealed the Michigan Judgment.[4]

On July 27, 2016, Stryker filed a proof of claim for $3,432,147.71 ("Stryker Claim").[5] The claim is itemized:

1. $745,195.00 in liquidated actual damages;
2. $223,351.16 in attorney's fees and costs related to Sanctions Order;
3. $2,272,369.54 in attorney's fees related to the Michigan Judgment;
4. $143,535.29 in costs;
5. $47,508.14 in pre-judgment interest on the Michigan Judgment;
6. $188.58 for post-judgment interest to the Petition Date on the Michigan Judgment; and
7. "An unknown amount of post-judgment interest" accruing after the Petition Date.[6]

Debtor's Second Amended Plan of Reorganization ("Plan"), as immaterially modified on November 1, 2016, came up for confirmation on November 2, 2016. Under the terms of the Plan, the Stryker Claim was placed in class 9.[7] Because of Debtor's pending appeal on the Michigan Judgment and contemplated objection to the Stryker Claim, Class 9 was not paid in full on the

---

[3] P-1.
[4] P-588 at 19.
[5] Stryker and Howmedica filed Claim Nos. 14 and 15 respectively in identical amounts. By Stipulation, they acknowledge that only a single recovery is owed. P-289, at 11–12; *see also* P-588, at 20, ¶ 57.
[6] Addendum to Proof of Claim No. 14 at 5.
[7] P-234 at 13.

Effective Date.[8] The Stryker Claim was payable only after resolution of the appeal of the Michigan Judgment and Debtor's Objection to the Stryker Claim.[9]

The Plan provided:

Subject to the terms below, as of the Effective Date, $3,432,147.71, representing the amount enumerated as of September 27, 2016, in the Proof of Clam Nos. 14 and 15 filed by Stryker and Howmedica will be deposited in a dedicated interest bearing bank escrow account ("Escrow Account") . . . . Any payment to Stryker and Howmedica under the Plan on their Allowed Unsecured Claims will be provided from the amounts deposited into the Escrow Account as further described below.

No later than thirty (30) days from the Effective Date of the Plan, The Debtor or Reorganized Debtor will in the Bankruptcy Court initiate . . . . objections . . . regarding any and all components of what Stryker and/or Howmedica assert should form part of their Allowed Unsecured Claims, including...any and all asserted right to post-Petition interest, . . . Post-Judgment Interest, Unliquidated Attorney Fees and Costs . . . Post Petition Interest, and Michigan Law Pre-Judgment Interest, and any other claims to interest, fees attorney fees or costs ("Debtor's Stryker Howmedica Objections").

Through Debtor's Stryker Howmedica Objections, Debtor or Reorganized Debtor will request that the Bankruptcy Court determine the Allowed amount of Stryker's and Howmedica's Unsecured Claims, subject to the Sixth Circuit Final Judgment (defined below), and any amounts of post-Petition interest, any other claimed amount of interest and/or attorney fees included and or associated therewith that the Bankruptcy Court determines must be paid for this Plan to comply with the Bankruptcy Code. Following the entry of final non-appealable orders or judgments on Debtor's Stryker Howmedica Objections Debtor or Reorganized Debtor will retain funds in the Escrow Account sufficient to satisfy the Allowed amount of Stryker's and Howmedica's Unsecured Claims . . . . subject to the Sixth Circuit Final Judgment (the"Provisional Stryker Escrow Amount").

\*\*\*

The Provisional Stryker Escrow Amount will be disbursed from the Escrow Account subject to and in accordance with the following procedures after the entry of a final nonappealable order or judgment entered in the Sixth Circuit Appeal . . .("Sixth Circuit Final Judgment").

---

[8] The Plan defined the Effective Date as: "[T]he time on the first Business Day (a) which is on or after the date of the entry of the Confirmation Order and (b) on which (i) no stay of the Confirmation Order is in effect and (ii) all conditions to the effectiveness of the Plan have been satisfied or waived as provided in Article XI, section 11.1, *et seq.*, but no later than 10 days from the date of the Confirmation order." P-325 at 7. The Effective Date was April 13, 2017.

[9] *Id*. at 34.

3

Therefore, Debtor proposed to deposit cash in an escrow account, in an amount sufficient to satisfy the principal, attorneys' fees and costs on the claim but not interest.[10] Debtor placed $4,250,000.00 into an Escrow Account, and executed an Escrow Agreement regarding those funds.[11] The Escrow Agreement was attached to the Plan as exhibit F, it was negotiated and dated in August of 2016.[12] Moreover, the Plan provided that Debtor use this exit financing contained in the Escrow Account to "make payments to the Allowed Claims in accordance with the terms and provisions of the Plan."[13] Of the $4,250,000.00 placed in the Escrow Account, $3,432,147.71 of it was placed in there as specific consideration of the amount alleged in the outstanding Stryker Claim.[14]

Stryker objected to the Plan alleging it violated the absolute priority rule. That objection was settled through an immaterial modification to the Plan defining the interest rates and periods of payment on the Stryker Claim.

The Court confirmed the Plan[15] in its amended form[16] on April 3, 2017[17] ("Confirmation Order") and the Plan became Effective on April 13, 2017.[18]

On December 9, 2016, Debtor objected to the amounts claimed for interest, attorneys' fees and costs ("Objection") detailed in the Stryker Claim.[19] The Bankruptcy Case was reassigned to

---

[10] P-234 at 33.
[11] P-325, Exh F; P-210, Exh. F.
[12] *Id.*
[13] P-325 at 41.
[14] *Id.* at 34.
[15] P-568 at 12: 21–22.
[16] P-569 at 13: 3–6.
[17] P-325.
[18] P-369.
[19] P-288.

Judge Douglas D. Dodd[20] for the purpose of resolving the Objection. On May 15, 2017, Debtor filed a supplemental Objection to the Stryker Claim.[21]

On May 24, 2017, the Sixth Circuit entered a judgment affirming the March 9, 2016 Michigan Judgment. On June 7, 2017, Debtor filed a Petition for Rehearing and Rehearing En Banc, which was denied by an order entered on July 12, 2017.[22] On October 10, 2017, Debtor filed a Petition for Writ of Certiorari in the United States Supreme Court,[23] and on January 8, 2018, the Supreme Court denied the Petition for Writ.[24]

On November 30, 2017, the Court held an evidentiary hearing on the Objection[25] and on July 27, 2018, Judge Dodd found that Stryker was "allowed recovery on a single, nonpriority, prepetition unsecured claim for $3,027,650.05" ("Fee Order").[26]

On August 10, 2018, the Debtor filed a Notice of Appeal regarding the Fee Order.[27] That appeal has been docketed with the United States District Court for the Eastern District of Louisiana as case number 2:18-cv-07651-ILRL-KWR. The appeal is still pending.[28]

Although the Fee Order is on appeal, Stryker filed this Motion.[29] Stryker asks the Court to enter an order authorizing the release of escrow funds, in the amount of the Fee Order award

---

[20] P-379. On August 30, 2018 an Order was entered reassigning this Bankruptcy Case to Judge Elizabeth Magner. P-696.
[21] P-384. Both the original and supplemental Objections are collectively referred to as "Objection."
[22] P-588 at 20.
[23] *Id.*
[24] *See Ridgeway v. Stryker Corp.*, 2018 U.S. LEXIS 456 (2018).
[25] P-601.
[26] P-685. A mathematical error reduced the reimbursement for travel costs by $3,384.65. The corrected award amount should be $ 3,031,034.7 but this Court is unable to adjust the amount owed under Rule 60 because the matter remains on appeal.
[27] P-688.
[28] United States District Court for the Eastern District of Louisiana as case no. 2:18-cv-07651-ILRL-KWR.
[29] P-694.

($3,027,650.05) plus post-petition interest.[30] The parties dispute whether the Plan allows for the release of escrow funds at this time.

## II. Law and Analysis

Section 1141(a) of the Bankruptcy Code states that "the provisions of a confirmed plan bind the debtor . . . and any creditor . . . whether or not the claim or interest of such creditor is impaired under the plan and whether or not such creditor . . . has accepted the plan."[31] Thus, the issue here is whether the Plan allows for the distribution of any of the escrow funds to Stryker.

According to the Plan,[32] the Confirmation Order,[33] and the Escrow Agreement, no distribution on account of the Stryker Claim is due until a final, non-appealable order is entered on the Objection to the Stryker Claim. Since a timely appeal was filed on the Fee Order, no final, non-appealable order exists.[34]

The Plan provides that the Escrow Account only makes payments to "allowed claims."[35] Section 1.4 of the Plan defines the term "Allowed" and establishes that when any "Claim" is "Disputed," an "Allowed" Claim is one that is allowed by "Final Order."[36] That same section defines "Final Order" as:

---

[30] Stryker requested this post-petition interest in its Motion to Liquidate Post-Petition Interest, which was filed separately, but contemporaneously, with the Motion to Release Escrow Funds. P-693. On November 30, 2018, this Court denied the Motion for Allowance of Post-Petition Interest. P-717.
[31] 11 U.S.C. § 1141(a); *see also Eubanks v. Fed. Deposit Ins. Corp.*, 977 F.2d 166, 170 (5th Cir. 1992) (holding that § 1141(a) "clearly provides that all parties to a confirmed plan are bound to its terms").
[32] P-325.
[33] P-351.
[34] P-688, Notice of Appeal filed by Debtor regarding the Fee Order. That appeal was docketed with the United States District Court for the Eastern District of Louisiana as case number 2:18-cv-07651-ILRL-KWR.
[35] P-325 at 41.
[36] *Id.* at 4.

(a) an order or judgment of a court of competent jurisdiction as to which the time to appeal, file a writ of mandamus, petition for certiorari or move for re-argument, reconsideration, new trial or rehearing has expired and as to which no appeal, writ of mandamus, petition for certiorari or other proceeding for reargument, reconsideration or rehearing shall then be pending; or
(b) in the event that an appeal, writ of mandamus, petition for certiorari or motion for re-argument, reconsideration, new trial or rehearing has been sought with respect to an order or judgment, such order or judgment shall have been affirmed by the highest court to which such order or judgment may be appealed, and/or certiorari and mandamus shall have been denied and the time to take any further appeal, petition for writ of mandamus or certiorari or move for re-argument, reconsideration, new trial or rehearing shall have expired . . . ."[37]

Section 4.9 of the Plan provides that of the $4,250,000.00 placed in the Escrow Account, $3,432,147.71 was deposited as specific consideration of the amount alleged in the Stryker Claim and that "[a]ny payment to Stryker and Howmedica under the Plan on their Allowed Unsecured Claims will be provided from the amounts deposited in the Escrow Account ."[38] Specifically, section 4.9 of the Plan states: "The Provisional Stryker Escrow Amount will be disbursed from the Escrow Account . . . after the entry of a . . . 'Sixth Circuit Final Judgment.'"[39] The Plan also defines "Provisional Stryker Escrow Amount" as:

> Through Debtor's Stryker Howmedica Objections, Debtor or Reorganized Debtor will request that the Bankruptcy Court determine the Allowed amount of Stryker's and Howmedica's Unsecured Claims, subject to the Sixth Circuit Final Judgment (defined below), and any amounts of post-Petition interest, any other claimed amount of interest and/or attorney fees included and or associated therewith that the Bankruptcy Court determines must be paid for this Plan to comply with the Bankruptcy Code. Following the entry of ***final non-appealable orders or judgments*** on Debtor's Stryker Howmedica Objections Debtor or Reorganized Debtor will retain funds in the Escrow Account sufficient to satisfy the Allowed amount of Stryker's and Howmedica's Unsecured Claims, including any post-Petition interest, Post-Judgment Interest, Unliquidated Attorney Fees and Judgment Interest, and any other claimed amount of interest, fees, costs, and/or attorney fees that the Bankruptcy

---

[37] *Id.* at 8.
[38] *Id.* at 4.
[39] *Id.* at 35.

7

> Court determines must be paid, if any, subject to the Sixth Circuit Final Judgment (The "Provisional Stryker Escrow Amount").[40] (Emphasis supplied)

Moreover, the Escrow Agreement and its attached exhibits provide that any request for distribution to Stryker must either identify "the Plan provision" and section in the final, confirmed Plan itself authorizing the particular dollar amount distribution requested;[41] or attach a copy of one or more "final, non-appealable orders, judgments, or decrees," fixing the particular dollar amount distribution requested, "entered by the Bankruptcy Court or such other court possessing jurisdiction to adjudicate Stryker's claim which fixes the amount of such Stryker Distribution."[42] Indeed, the final, confirmed Plan contained no provisions to pay particular amounts to Stryker on the Effective Date, and required that any payment be proceeded by entry of final, non-appealable orders establishing the amount of such payments.[43]

Additionally, the Confirmation Order states: "Until such time as Stryker's and Howmedica's Claims are fully adjudicated pursuant to entry of a final, non-appealable order by a court as provided in Section 4.9 of the Debtor's Modified Fourth Amended Plan of Reorganization . . . the Debtor and/or Reorganized Debtor shall maintain sufficient funds in . . . the Escrow Account to satisfy," the amount asserted in the Stryker Claim, as well as interest specifically described in the Confirmation Order.[44]

Even so, Stryker argues that funds should be distributed because the Court has not approved a stay of the Fee Order, or supersedeas bond. Neither is required nor necessary. The Plan itself bars the distribution that Stryker seeks, which renders a stay or supersedeas bond gratuitous.

---

[40] *Id.* at 34–35.
[41] P-325-6 at 5, Section 5(b), Exh. C, Option 1.
[42] *Id.* at 5, Section 5(b), Exh. C, Option 2.
[43] P-325 at 30–37.
[44] P-351 at 5.

Additionally, Stryker argues that it is due disbursement because section 4.9 of the Plan states:

> [T]he Provisional Stryker Escrow Account will be dispersed pro rata between Stryker and Howmedica on or before sixty (60) days following the Sixth Circuit Final Judgment.[45]

Stryker's reliance on this portion of the Plan is misplaced and overlooks its context. The portion of the Plan, from which this sentence is taken, contemplates that a non-appealable order, regarding the Sixth Circuit Appeal, would be entered after the Provisional Stryker Escrow Amount is determined by a final, non-appealable order. While the Sixth Circuit Appeal has been reduced to a final judgment, the determination of the Provisional Stryker Escrow Amount which includes the resolution of the Objection, has not been finalized.

Stryker also asks for partial payment in the event this Court finds that appeal on the Objection bars complete disbursal of the Escrow Account. It relies on *Allen F. Johnson, LLC v. Port Sec. Int'l, LLC*, for its proposition that some of the amounts constituting its Claims can and should be disbursed:

> Where an appeal of a portion of a divisible judgment has no potential to alter or affect in any way the unappealed divisible portions of the judgment, there is no bar to a prevailing party seeking to enforce or collect the divisible unappealed judgment parts.[46]

Specifically, Stryker argues that Debtor has not appealed the Bankruptcy Court's award of, and is no longer challenging the following amounts in the Stryker Claim:

> (a) $745,195 based on the Michigan Jury Verdict; $207,606.76 in attorneys' fees and costs based on the Second Sanctions Order entered against the Debtor in the Michigan Action; (c) $106,647.01 in costs; and (d) $47,508.14 for pre-judgment interest.[47]

---

[45] P-325 at 35.
[46] 642 F. Supp. 2d 533, 537 (E.D. Va. 2009).
[47] P-712 at 2.

9

*Allen F. Johnson*, holds that one part of a judgment can be enforced while another part is being appealed provided the judgment on one claim was separate and distinct from the second claim, and that appeal had no potential to alter or affect the unappealed divisible portions.[48]

Stryker's argument fails to recognize the distinctions between this case and the facts relevant in *Allen F. Johnson*. The Fee Order provides a single amount as Stryker's Allowed Claim, $3,027,650.05. The Fee Order is on appeal, and while Stryker is correct that components of the claim have not been challenged, the Fee Order does not delineate or divide the award by component. A single claim and a single numeric award are subject to appeal and therefore not divisible. Even if the Fee Order could be easily divided into distinct components, this Court does not have the authority to split the Fee Order. "Where the prevailing party in the lower court appeals from that court's judgment, the appeals suspends the execution of the decree."[49]

Alternatively, Stryker asks the Court to modify the Plan to allow for a partial disbursal.[50] Section §1127(e) authorizes a court to modify the plan "at any time after confirmation of the plan but before the completion of payments under the plan." The provision is permissive and a court is under no obligation to modify the Plan. The Court declines to modify the Plan to allow Stryker a partial payment on its Claim because (1) the Objection to the Claim is on appeal and (2) payment of a portion of the Stryker Claim may impair Debtor's right to pursue the appeal.

---

[48] 642 F. Supp. 2d at 537.
[49] *TVA v. Atlas Machine & Iron Works, Inc.*, 803 F.2d 794 (4th Cir. 1986) (citing *Bronson v. Lacrosse & Milwaukee R.R. Co.*, 68 U.S. (1 Wall) 405 (1863)).
[50] P-712 at 5.

### III. Conclusion

Stryker is not yet entitled to any distribution under the Plan, and this Court declines to modify the Plan to provide a partial distribution. Stryker's Motion to Release Escrow Funds is DENIED. A separate Order in accord with these Reasons will be entered.

New Orleans, Louisiana, December 19, 2018.

Hon. Elizabeth W. Magner
U.S. Bankruptcy Judge